```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ACORN (THE NEW YORK ASSOCIATION
OF COMMUNITY ORGANIZATIONS FOR
REFORM NOW), et al.,

                        Plaintiff(s),                       ORDER
                                                            CV 05-2301  (JFB) (WDW)
        -against-

COUNTY OF NASSAU, et al.,

                        Defendant(s).
----------------------------------------------------------X
```
**WALL, Magistrate Judge:**

By letter dated January 3, 2007, plaintiffs moved to compel certain deposition testimony and documents from defendants the Incorporated Village of Garden City and the Garden City Board of Trustees (collectively, "Garden City"), their employees, and consultants. *See* Docket Entry ("DE") [58]. The Garden City defendants submitted opposition, DE [60], and a conference before the undersigned was held at which the court requested additional briefs from the parties. DE [64]. Those submissions have been received and reviewed by the court.

This case involves the rezoning of the former "Social Services site" located at 101 County Seat Drive in Garden City. Plaintiffs seek discovery regarding Garden City's "true reasons for blocking the proposed zoning that would have permitted construction of more affordable multi-family housing, and whether justifications enunciated were simply a pretext for discriminatory animus." *See* Letter Motion, DE [58] at 2. Defendant Garden City seeks to assert "legislative privilege" on behalf of members of the Board of Trustees, as well as Michael Filippon, the Garden City Building Superintendent, Robert Schoelle, the Garden City Village Administrator, and personnel from the firm of Buckhurst, Fish and Jacquemart, Inc. ("BFJ"),

retained by Garden City as a land use/zoning specialist.  *See* Letter in Opp., DE [60] at 2.

The issue of the extent to which legislative privilege is available in this case first arose during the deposition of Frank Fish of BFJ.  During that proceeding, Garden City asserted the legislative privilege on several occasions, at which point Mr. Fish's attorney directed him not to answer.  Mr. Fish's attorney at one point stated that the legislative privilege "is not our privilege to assert, and we are respecting Garden City's right to raise the privilege and holding off on answering any questions until so directed."  Fish Dep. at 45:9-13.  In their motion to compel, plaintiffs indicate that Mr. Fish was instructed not to answer questions about the following issues:

1. BFJ's development of zoning proposals for the site;

2. Garden City's objections to BFJ's proposed zoning, and the basis for these objections by both Garden City and its residents;

3. involvement by local community organizations in the rezoning of the site;

4. Garden City's rezoning of the property previously owned by Doubleday & Co.; and

5. Garden City's hiring of a public relations consultant regarding the Social Services site rezoning.

Garden City's position is that testimony regarding any non-public communications between or among Board members and BFJ personnel, Mr. Fillippon, and/or Mr. Schoelle are protected from disclosure by legislative privilege.  Garden City has indicated that it will, consistent with this position, instruct all witnesses not to answer such questions until it has received direction from the court.  Plaintiffs have moved to compel the testimony of Mr. Fish as well as testimony from future deponents on the grounds that the legislative privilege does not apply, or if it does apply,

that it has been waived. For the following reasons, plaintiffs' motion is granted in part and denied in part.

**DISCUSSION**

Since this case arises under the Fair Housing Act and thus involves federal questions, any asserted privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. Generally, testimonial privileges are not favored because they "contravene the fundamental principle that 'the public . . . has the right to every man's evidence.'" *Trammel v. United States,* 445 U.S. 40, 50 (1980)(quoting *United States v. Bryan,* 339 U.S. 323, 331 (1950)). Garden City asserts legislative privilege as to any testimony or document production that would reveal the deliberative process underlying the decision made by the Board regarding the re-zoning of the Social Services site.

The concept of legislative privilege arises from, and is often discussed interchangeably with, the concept of legislative immunity. Legislative immunity, which provides absolute immunity from suit, has been extended to protect local legislators from suit for acts taken in their legislative capacity. *Searingtown Corp. v. Incorporated Village of North Hills,* 575 F. Supp. 1295, 1298 (E.D.N.Y. 1981).[1] As to legislative privilege, "the purpose in preventing inquiry into motivation of legislative acts is to shield legislators from civil proceedings which disrupt and question their performance of legislative duties to enable them to devote their best efforts and full attention to the 'public good.'" *Id.* at 1298-99 (citations omitted). The Supreme Court has,

---

[1] Since there are no individual defendants named in the complaint, there are no claims for legislative immunity in the instant case.

however, "rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege." *Manzi v. DiCarlo,* 982 F. Supp. 125, 129 (E.D.N.Y. 1997)(citing *United States v. Gillock,* 445 U.S. 360, 374 (1980)). The legislative privilege is qualified, not absolute, "'and must therefore depend on a balancing of the legitimate interests on both sides.'" *Rodriguez v. Pataki,* 280 F. Supp. 2d 89, 96 (S.D.N.Y. 2003), *aff'd* 293 F. Supp. 2d 302, (quoting *Fla. Ass'n of Rehab. Facs. v. Fla. Dep't of Health & Rehab. Servs.,* 164 F.R.D. 257, 267 (N.D. Fla. 1995)). The threshold issue raised by plaintiffs is whether legislative privilege can be applied in this particular case.

**I. Applicability of Qualified Legislative Privilege**

The only privilege raised by Garden City is legislative privilege.[2] As this is a qualified privilege, the court must balance the extent to which the production of the disputed evidence would have a chilling effect on the Garden City Board against those factors favoring disclosure. "Among the factors that a court should consider in arriving at such a determination are: '(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.'" *Rodriguez,* 280 F. Supp. 2d at 100-01 (quoting *In re*

---

[2]Garden City has not asserted a deliberative process privilege, perhaps in light of the uncertainty as to whether such a privilege is available in the legislative context. *See, e.g., Manzi,* 982 F. Supp. at 130 (stating that the application of the deliberative process privilege to state legislators "remains an 'open question.'"). Since that question is not currently before it, the court makes no determination as to whether that privilege is available to the Garden City defendants. Courts addressing the question of legislative privilege have, however, utilized criteria established in deliberative process privilege cases. *See Rodriguez,* 280 F. Supp. 2d at 100-01; *Manzi,* 982 F. Supp. at 130.

*Franklin Nat'l Bank Secs. Litig.,* 478 F. Supp. 577, 583 (E.D.N.Y. 1979)).

The plaintiffs in this case claim that Garden City's zoning decision was motivated by discriminatory animus. Defendants in opposition do not seriously challenge the relevancy of the information sought, but rather suggest that it should be protected by legislative privilege. The court finds that the discovery sought is clearly relevant to the claims at issue.

The most significant factors to be considered in this case are the availability of other evidence and the seriousness of the litigation. To prevail in their case, plaintiffs will have to prove the discriminatory intent of the defendants. Plaintiffs' needs are in conflict with a legislator's need to be free to act without worry about inquiry into deliberations. The tension between these two conflicting needs has been previously noted --"even where the plaintiff must prove invidious purpose or intent, and judicial inquiry into legislative motive cannot be avoided, as in a racial discrimination cases such as *Village of Arlington Heights,* the Supreme Court has indicated that only in 'some extraordinary instances [legislators] might be called to the stand at trial to testify concerning the purpose of the official action, *although even then such testimony frequently will be barred by privilege.*'" *Orange v. County of Suffolk,* 855 F. Supp. 620, 623 (E.D.N.Y. 1994)(quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 268 (1977)(emphasis added)).

Plaintiffs suggest that given the seriousness of this litigation concerning fair housing rights, this may be one of the extraordinary cases in which plaintiffs' needs override the testimonial privilege. In support of their argument, plaintiffs rely exclusively on the *Manzi* case in which the court found that the privilege, asserted as to two documents which were unrelated to the passage of legislation, fell in the face of that plaintiff's need to protect her statutory rights.

*Manzi,* 982 F. Supp. at 130. However, neither plaintiffs' submissions nor the court's own research has identified a single case in which the seriousness of the litigation overrode the assertion of legislative privilege as to testimony regarding a legislator's motivations. Moreover, plaintiffs cannot point to any independent evidence of a discriminatory motive that would convince the court that this is an "extraordinary instance" in which such inquiry should be allowed. Although the court recognizes the difficulty of plaintiffs' burden of proving discriminatory intent, they have not produced a compelling reason sufficient to overcome the legislative privilege.

Although testimony regarding a legislator's stated motivation might be the most direct form of evidence, there are other paths of discovery available to plaintiffs. Although assertion of a legislative privilege may bar inquiry into deliberations, it would not bar inquiry regarding the materials and information available at the time a decision was made. *See Arlington Heights,* 429 U.S. at n. 20 (noting that plaintiffs "were allowed, both during the discovery phase and at trial, to question Board members fully about materials and information available to them at the time of decision"). Substantial documentary evidence has also been made available to plaintiffs.

The court has considered the remaining two factors, the role of the government in the litigation and the possible chilling effect on legislators, and finds that they do not tip the balance significantly in favor of either party. Balancing all the factors, the court concludes that legislative privilege may be asserted in this case.

## II. Assertion of Qualified Legislative Privilege

Having concluded that legislative privilege may be asserted in this case, the court turns to consideration of who is entitled to assert that privilege. The legislative privilege "is a personal

one and may be waived or asserted by each individual legislator." *Marylanders for Fair Representation, Inc. v. NAACP, Inc.,* 144 F.R.D. 292, 298 (D. Md. 1992). Thus, "it is not up to the [Board] to assert or waive the privilege; the [Board members] must do so for themselves." *Almonte v. City of Long Beach,* 2005 WL 1796118, at n. 2 (E.D.N.Y. July 27, 2005). Plaintiffs have not challenged Garden City's assertion of privilege on behalf of the individual Board members, and the court will assume, for purpose of this motion, that the privilege is being asserted on behalf of them individually. It must be noted, however, that there may well come a time in this litigation where each Board member will need to appear and individually determine whether to assert legislative privilege as to his or her testimony. *See A Helping Hand LLC v. Baltimore County, Md.,* 295 F. Supp. 2d 585, 590 (D. Md. 2003) (noting that plaintiff was free to serve deposition notices on each legislator "and to require each of those persons to assert the privilege on his own behalf").

Assuming legislative privilege has been properly asserted, the court addresses plaintiffs' argument that the privilege has been waived as to communications made in the presence of non-legislators. As with many testimonial privileges, the legislative privilege may be waived as to communications made in the presence of third parties. *Almonte v. City of Long Beach,* 2005 WL 1971014, at *3 (E.D.N.Y. Aug. 16, 2005). Thus, the court must determine whether the presence of certain non-legislators caused a waiver in this matter.

    A. Fillippon and Schoelle

Plaintiffs argue that the presence of Michael Fillippon and/or Robert Schoelle at any meeting, or the dissemination of any document to either of them, causes a waiver as to that evidence. Defendants claim that Fillippon and Schoelle are akin to legislative staff members in

7

that they work closely with the Garden City Board in its decision-making process and that therefore their presence does not effect a waiver of privilege. Where a legislative aide or staff member performs functions that would be deemed legislative if performed by the legislator himself, the staff member is entitled to the same privilege that would be available to the legislator. *See U.S. v. Gravel,* 408 U.S. 606 (1972).[3] As one court noted, "it is literally impossible . . . for Members of Congress to perform their legislative tasks without the help of aides and assistants; that the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos." *Id.* at 616-17. Although Schoelle and Fillippon work for the Village and not exclusively for the Board members, the court will examine the extent to which they act as legislative staff members.

Schoelle, Garden City's Village Administrator, has submitted an affidavit describing his duties as prescribed in the Code of the Village of Garden City, including the making of reports and recommendations to the Board of Trustees. Schoelle Aff., ¶2, DE [69-2]. Schoelle further notes that the Board members are elected officials who perform their official duties on a part time, volunteer basis, and that he acts as a "liaison between the Board members and those involved in various legislative activities." *Id.* ¶3. Fillippon, the Superintendent of the Village's Building Department, has also submitted an affidavit regarding his duties, including the making of recommendations regarding zoning laws or for the adoption of new laws. Fillippon Aff., ¶2, DE [69-3].

---

[3] Although this case construes privileges and immunities under the Speech and Debate Clause of the United States Constitution, the rationale employed is applicable to state and local legislators as well. For the sake of brevity, the court will not repeat the line of cases and reasoning that lead to this conclusion. A review of that reasoning can be found in *Rodriguez,* 280 F. Supp. 2d at 94-96.

As defendants note, the Board members perform their legislative functions on a voluntary, part time basis. In such a situation, it is impracticable if not impossible for such a legislator to perform his duties without assistance. Defendants have established that in the Village of Garden City, such assistance is given by Village employees including the Village Administrator and the Superintendent of the Building Department. *Cf. Almonte,* 2005 WL 1796118, at * 3 (citing lack of evidence to support proposition that City Manager had a legislative role). Michael Fillippon and Robert Schoelle are determined to be legislative staff members and as such, may assert legislative privilege as to their acts performed in furtherance of their legislative duties. Accordingly, the presence of either does not act as a waiver of the privilege.

B. BFJ Firm

Garden City also claims that any communications with the BFJ consulting firm should be protected by legislative privilege. Plaintiffs argue that BFJ employees are not legislators, staffers or Village employees, but rather outside advisors who not only are not entitled to legislative privilege, but whose presence waives any such privilege held by the Board members.

In support of its position that BFJ personnel are covered by legislative privilege, Garden City cites a single Appellate Division case, *Campaign for Fiscal Equity, Inc. v. State,* 265 A.D.2d 277 (1st Dep't 1999). In that case, the court found that inquiry into communications between an official with the State Education Department and state legislators was barred by legislative privilege. This case is distinguishable, in part because it involved communications between the executive and legislative branches of government, not between the legislator and non-government persons. Moreover, the holding in that case and the limited discussion of the court's

reasoning is, by itself, simply insufficient to support the expansion of legislative privilege suggested by defendants. The court finds the *Rodriguez* case to be of more value.

In *Rodriguez*, the state legislature created a Task Force on Demographic Research and Reapportionment ("LATFOR") to provide technical assistance with respect to the task of redistricting congressional districts. *Rodriguez*, 280 F. Supp. 2d at 92. LATFOR consisted of six members, four legislators and two non-legislators, had a staff, was authorized to hold public and private hearings, and had all the powers of a legislative committee. *Id.* LATFOR published its proposed redistricting plan which was later adopted by the New York State Legislature. The plaintiffs in *Rodriguez* "sought information concerning the process by which the 2002 redistricting maps were drawn and subsequently adopted by the Legislature." *Id.* at 93. In examining the question of whether the activities of LATFOR were covered by legislative privilege, the court noted that LATFOR's workings were "more akin to a conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up a legislation–a session for which no one could seriously claim privilege." *Id.* at 101. The court ultimately granted plaintiffs' motion to compel to the extent it sought information pertaining to the operation of LATFOR, but denied the motion to the extent it sought information concerning "the actual deliberations of the Legislature-or individual legislators-which took place outside LATFOR, or after the proposed redistricting plan reached the floor of the Legislature." *Id.* at 102-03. The legislative privilege did not bar all inquiry into the workings of LATFOR, an entity with far greater legislative ties than BFJ.

Presumably, the Board members had not pre-determined their positions, and retained BFJ to provide them with information from which they could begin their deliberations regarding the

10

rezoning of the Social Services site. From the record currently before the court, it is unclear whether BFJ issued its own report or whether its activities were limited to commenting upon plans for the site issued by Nassau County. Not unlike LATFOR, which had a much stronger legislative mandate and powers, BFJ presumably investigated and prepared a report from which legislation was introduced. Communications prior to the issuance of the report are more like conversations between legislators and knowledgeable outsiders and therefore are discoverable. Accordingly, the court finds that until such a report, if any, was presented to the Board, no privilege existed. Taking the presentation of a report upon which legislation was based as the necessary starting point of the Board's deliberations, any communications subsequent to that event that reflect a legislator's deliberation or motivation are deemed to be covered by legislative privilege. If necessary, the court will make a determination regarding production of post-report documents on a case by case basis after in camera review.

The court notes that a contrary ruling would allow a legislator to cloak any communication with legislative privilege by simply retaining an outsider in some capacity. While legislators are certainly free to seek information from outside sources, they may not assume that every such contact is forever shielded from view. Defendants have not cited any caselaw that suggests otherwise, and the court is simply unwilling to approve such an unprecedented expansion of the qualified legislative privilege.

### III.  Documents Submitted for In Camera Review

Defendants have submitted documents withheld on the basis of privilege for the court's review. The court has, by this order, established essentially a temporal marker for the assertion of legislative privilege as to work performed by BFJ. Accordingly, defendants shall provide the

undersigned with a date upon which BFJ submitted its report to the Board. At that time, the court will issue further rulings regarding the documents submitted for in camera review.

## CONCLUSION

Plaintiffs' motion to compel is granted in part and denied in part. Plaintiffs' request to compel testimony and document production over the assertion of legislative privilege is denied. Legislative privilege is available to protect inquiry into the actual deliberation and motivations of legislators in this case.

Plaintiffs' request to compel testimony and document production on the grounds that legislative privilege has been waived is granted as to any communications or documents produced or shared with BFJ personnel prior to issuance of its report, if any, to the Board. Any BFJ documents prepared subsequent to that date shall be reviewed in camera for a determination of privilege consistent with the rulings made above. Plaintiffs' request is denied on the additional grounds asserted by them.

Dated: Central Islip, New York
September 25, 2007

SO ORDERED:

 /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge