UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ACORN (THE NEW YORK ASSOCIATION
OF COMMUNITY ORGANIZATIONS FOR
REFORM NOW), et al.,

                     Plaintiff(s),                  **ORDER**
                                                        CV 05-2301 (JFB) (WDW)

    -against-

COUNTY OF NASSAU, et al.,

                     Defendant(s).
----------------------------------------------------------X
**WALL, Magistrate Judge:**

      Before the court is plaintiffs' letter application seeking sanctions "including the finding of adverse inference, striking of the pleadings, costs and/or any other sanctions" against defendant Nassau County for its abuse of the discovery process. *See* Docket Entry ("DE") [116]. Nassau County submitted opposition, DE [121], and oral argument was held. For the reasons set forth herein, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

      Plaintiffs commenced this action in May 2005, served the Complaint in June 2005, and served an Amended Complaint on November 30, 2005. Defendant Nassau County moved to dismiss the Amended Complaint in March 2006, and that motion was denied on July 21, 2006. An initial scheduling conference before the undersigned was held on September 6, 2006.

      During discovery, plaintiffs raised several concerns regarding the sufficiency of Nassau County's discovery responses. In May 2008, plaintiffs served requests for interrogatories on Nassau County regarding its document retention policies and its production of documents in this case. On May 28, 2008, the undersigned issued an order granting plaintiffs' motion to compel

Nassau County's responses to those interrogatories and directed that the responses be served by June 4, 2008. DE [115]. Nassau County complied with that order and served its responses.

According to plaintiffs, the response to one of the interrogatories indicated that although Nassau County was served with the original complaint on June 16, 2005, it did not instruct any of the departments named in the complaint to preserve documents until September 12, 2006. *See* Smith Decl., Ex. 3, Deft's Resp. to Interrog. No. 2, DE [117]. In response to another interrogatory concerning its efforts to locate electronic documents other than e-mails, Nassau County stated that it "does not possess either the resources or the technology to locate and access non-e-mail electronic documents created by such programs as Word, Excel or PowerPoint." *Id.* Deft's Resp. to Interrog. No. 6.

Upon reviewing the responses to interrogatories, plaintiffs made the current request for sanctions against the County on two grounds – the County's alleged failure to institute a litigation hold with regard to this action and to suspend routine document destruction, and the County's failure to conduct a search of electronic documents for potentially responsive materials. Plaintiffs seek an order directing that an adverse inference instruction be given to the jury at trial, striking of pleadings, costs and/or other sanctions.

## DISCUSSION

### I. Spoliation of Evidence – Failure to Implement a Litigation Hold

Plaintiffs allege that Nassau County failed to preserve evidence relevant to the instant litigation by failing to institute a litigation hold, thus leading "to the destruction of countless responsive documents." Pls' ltr at 1, DE [116]. They argue that failure to implement a litigation hold amounts to gross negligence and supports a finding of spoliation and the imposition of

2

sanctions.

Generally, spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). If the evidence is relevant to a party's claim, its spoliation "can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake v. UBS Warburg LLC ("Zubulake V),* 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998)). "A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake V,* 229 F.R.D. at 430. The court will address those elements in turn.

a. Duty to Preserve Evidence

The duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC ("Zubulake IV"),* 220 F.R.D.212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). Once the duty to preserve arises, a litigant is expected, at the very least, to "suspend its routine document and retention/destruction policy and to put in place a litigation hold." *Zubulake IV,* 220 F.R.D. at 218*; see also Doe v. Norwalk Cmty Coll.,* 2007 U.S. Dist LEXIS 51084, at *14

(D. Conn. July 16, 2007)(a party needs to take affirmative acts to prevent its system from routinely destroying information).

The duty to preserve in this case arose, at the latest, when the County was served with the complaint in June 2005. At oral argument, Mr. Reissman indicated that Esther Miller of the County Attorney's office "immediately sent the complaint to the County Executive's Office, Department of Real Estate and Planning and the ... Nassau County Planning Commission" and that "she gave them a verbal hold." 7/11/08 Hrg Tr. ("Tr.") at 11:19-23. Mr. Reissman went on to suggest that it was "difficult to pinpoint who the individuals were at the inception of the complaint . . . who [were] responsible for what actions" and the County "couldn't just put a blanket hold throughout the County." *Id.* at 12:8-16. Defendant has not provided an affidavit from Ms. Miller indicating the timing of her "verbal hold" or to whom she relayed it. Additionally, the County has not provided any evidence that Ms. Miller, or anyone else in her office, conducted any follow-up to ensure that her instructions were being followed.

Nassau County implemented a formal litigation hold in September 2006. Regarding the passage of time between the service of the complaint in June 2005 and the formal litigation hold in September 2006, defendant states that "[i]mmediately following Judge Bianco's decision denying the County's motion [to dismiss], the County began investigating the substance of plaintiff's claims. It was only then the County was able to ascertain the individuals within the County who potentially had knowledge about the allegations of the Complaint." Ltr in Opp. p. 2, DE [121]. At argument, Mr. Reissman pointed to the "nebulous nature of the complaint coupled

with the motion and the stay of discovery granted by Judge Wexler"[1] as reasons why a full litigation hold was not implemented. Tr. at 15:19-24. The County argues that its actions were all taken in good faith and that "[n]othing was destroyed willfully and plaintiff has proved absolutely nothing relevant was destroyed." *Id.* at 16:1-2.

Beyond the question of whether there was a "verbal hold" in place in 2005, there is no indication that Nassau County took any steps whatsoever to prevent the routine destruction of documents prior to September 2006 at the earliest. The court cannot credit the County's argument that it was unable to glean from the complaint which particular agencies would likely possess discoverable information. If, as the County alleges, Ms. Miller was able to perform such an analysis leading to her "verbal hold" on several departments, then there is no apparent reason why the same analysis could not have been used to prevent the routine destruction of documents in those departments. At the very least, any documents prepared by or for County employees in the "key departments" should have been preserved. *See Toussie v. County of Suffolk,* 2007 WL 4565160, at *6 (E.D.N.Y. Dec. 21, 2007).

The court further notes that although the County suggests that it acted promptly after the motion to dismiss was decided, its responses to interrogatories show a somewhat different story. Judge Bianco's Memorandum & Order was issued on July 21, 2006, but Nassau County did not contact the departments at issue to implement a litigation hold until September 12, 2006, after almost two months had passed. *See* Deft's Resp. to Interrog. Nos. 2, 3. Further, the County apparently did not take any action regarding the location, protection, or restoration of electronic

---

[1]This case was reassigned to Judge Bianco prior to the actual filing of the motion to dismiss.

materials until December 22, 2006, five months after the motion to dismiss had been decided, and over a year and a half after the complaint was served. *See* Deft's Resp. to Interrog. No. 5.

No matter how it is dressed up or characterized--as confusion or inconvenience or indifference or incompetence--the County's position is that it had no obligation to preserve discoverable materials until <u>after</u> the motion to dismiss was decided. This position is indefensible and is in direct contradiction with clearly established law. The court finds that from June 2005 until September 2006, the County breached its duty to preserve.

b. Culpable State of Mind

A party seeking spoliation sanctions must also show that "the records were destroyed with a culpable state of mind." *Zubulake V,* 229 F.R.D. at 430 (citing *Byrnie v. Town of Cromwell,* 243 F.3d 93 (2d Cir. 2001)). In this circuit, this prong of the spoliation test can be "satisfied by showing that evidence was knowingly . . . or negligently" destroyed. *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 108 (2d Cir. 2002)(citation omitted). The plaintiffs argue that the County's failure to implement a litigation hold amounts to gross negligence and thus, supports a finding of spoliation.

Plaintiffs' position is well-supported by case law holding that the failure to implement a litigation hold at the outset of litigation amounts to gross negligence. *See Toussie,* 2007 WL 4565160, at *8; *Chan v. Triple 8 Palace, Inc.,* 2005 WL 1925579, at * 7 (S.D.N.Y. Aug. 11, 2005); *Zubulake IV,* 220 F.R.D. at 221. In fact, once a litigation hold is implemented, counsel is required to oversee compliance with the litigation hold and to monitor the party's efforts to retain and produce relevant documents. *Zubulake V,* 229 F.R.D. at 432.

Nassau County admits there was no "formal" hold, but claims that a "verbal" hold was

communicated to the agencies associated with the complaint by Ms. Miller. The County did not submit an affidavit from Ms. Miller, and there is nothing in the record to indicate exactly who received this direction or when it was received. Significantly, there is no indication that Ms. Miller or anyone else in the County Attorney's Office followed up to ensure that relevant documents were being retained. The court finds the County's failure to implement a proper litigation hold amounts to gross negligence.

Although Nassau County claims it instituted a verbal litigation hold on several agencies, it is undisputed that it failed to direct its systems personnel to suspend the routine destruction of e-mails and other electronic data. Its stated reason for this failure is that such a direction would be "impossible . . . because to do so would entail putting a halt to the entire Countywide I.T. policy of re-using electronic tapes to store data." Opp. Ltr, p.2.[2] Despite its failure to explicitly suspend destruction of electronic data, the County does have an automatic back-up system. This system, however, is not airtight and appears to have at least one gap.

Plaintiffs cite the deposition of the County's Department of Information Technology employee Hugh Green regarding the back-up system in place at the County. Under the "old" system in place during 2005-2006, "[d]ailies were kept for approximately two weeks. Weeklies were kept until we had a good monthly. Monthlies were kept forever and the year end was kept forever." Smith Decl., Ex 4, Green Tr., at 78:5-8.[3] Thus, a document created or e-mail sent early

---

[2]At oral argument, plaintiffs suggested that in other cases involving it, Nassau County has been able to suspend destruction of e-mails in select departments. Tr. at 7:3-13.

[3]Plaintiffs frequently quote Green's testimony regarding the "new" back up system being used now as opposed to the system in place at the time that the events at issue took place. Regardless, the central portion of plaintiffs' argument remains–daily and weekly data was overwritten after monthly back-ups were created.

in the month and captured on daily and weekly back-up tapes, could theoretically be deleted from the system before the monthly back-up was performed. When the daily and weekly back-ups were routinely overwritten, all record of the document or e-mail would be erased. There is no indication, however, that the gap was in any way intentional. The court finds that Nassau County's failure to preserve all e-mails through this system would be, at most, negligent.

The court finds that Nassau County's actions or, more precisely, inactions, concerning a litigation hold amount to gross negligence, and that its conduct regarding the preservation of electronic information was, at the very least, negligent. Thus, in either case, the second requirement for the imposition of spoliation sanctions is met.

c. Relevance

To satisfy the third prong of the spoliation claim, the plaintiffs must establish that the missing e-mails were relevant evidence, and that the destroyed evidence would have been favorable to them. *Residential Funding Corp.,* 306 F.3d at 109 (citing *Kronisch,* 150 F.3d at 126); *see also Zubulake V,* 229 F.R.D. at 430. In this context, the term "relevance" "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Residential Funding Corp.,* 306 F.3d at 108-09.

Relevance may be demonstrated in two ways. "First, it may be inferred if the spoliator is shown to have a sufficiently culpable state of mind." *Triple 8 Palace,* 2005 WL 1925579, at * 8. Plaintiffs do not argue that relevance has been shown as a matter of law due to Nassau County's gross negligence in failing to institute a litigation hold. While a showing of gross negligence may, in some circumstances, support a claim that missing evidence was relevant to the movant's case, the circumstances in this case do not require such a determination. *Cf. Residential*

8

*Funding Corp.,* 306 F.3d at 109 (citing *Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 267-68 (2d Cir. 1999)); *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir. 1979).

The second way to establish relevance is for the moving party to submit "extrinsic evidence tending to demonstrate that the missing evidence would have been favorable to it." *Triple 8 Palace,* 2005 WL 1925579, at * 8 (citation omitted). In order to obtain an adverse inference, the destroyed evidence must "have been of the nature alleged by the party affected by the destruction." *Id*. In other words, the plaintiffs here must present extrinsic evidence tending to show that the destroyed e-mails would have been favorable to their case. *Zubulake IV,* 220 F.R.D. at 221 (citing *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 77 (S.D.N.Y. 1991)("Where, as here, there is no extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator, no adverse inference is appropriate.")).

Plaintiffs' argument regarding the relevance of the allegedly destroyed materials is limited to a footnote in their application. They state that the documents "surely contained highly relevant information that would be helpful to Plaintiffs' claims." Pls.' ltr., n.6. In support of this conclusion, they have provided five e-mails as extrinsic evidence to show that the deleted e-mails would have helped their case. *See* Smith Decl., Ex. 5. Four of the e-mails were sent to County Executive Thomas Suozzi by individuals, primarily County residents, in January and May 2006, voicing strong opposition to the building of affordable housing in Garden City. The fifth e-mail, dated May 5, 2006, includes comments made by various County officials to a proposed press release entitled "Suozzi Calls for Development of 'Next-Generation' Housing in Garden City."

9

Plaintiffs state that the content of these e-mails "[c]learly establish that other probative contemporaneous documents most likely have been destroyed." Pls. ltr, n.6. The court disagrees for two reasons.

First, no context for the five e-mails is provided other than that they "provide examples of highly relevant communications" and "appear to have spared destruction only because they happened to have been printed out." Pls. ltr, n.6. Nassau County claims that it has produced "over 26,000 pages of responsive hard-copies of whatever electronically-stored documents were available." Def.'s ltr., p 2. Plaintiffs have not indicated that the five e-mails were the only ones produced from the pertinent time period, or that these are merely samples from a larger pool. Additionally, contrary to plaintiffs' characterization of the five e-mails as having been "spared" destruction, the County claims that those documents were discovered by one of its attorneys during an "actual e-mail search." Tr. at 16:10-12. There is neither allegation nor proof that County employees affirmatively acted to "sanitize" the record by purposefully deleting documents or e-mails. The court is unable to conclude that the mere existence of the five e-mails provided by plaintiffs supports a conclusion that other documents must have existed.

Second, the five e-mails do not support plaintiffs' claim in this case that Nassau County conspired with Garden City to prevent zoning for affordable housing in that village. Four of the five e-mails contain complaints from Garden City residents. It is hardly a secret that there was community opposition to a zoning change in Garden City that would allow the affordable housing project to be built, and the court cannot conclude that the existence of more such e-mails would have been favorable to plaintiffs. The fifth e-mail is an internal document in which various officials comment upon a proposed press release. According to plaintiffs, the portion of

this e-mail stating that "[i]t makes our action a little more 'palatable' to the 'suburban' mentality and it shows that the site is near a commercial site, shopping and public transportation, which is the way these types of developments are going throughout the country. And, we don't need to 'declare war' on Garden City, do we?" supports their claim that the County had a policy of placing affordable housing in commercial areas. Pls' Ltr n.6. While the statement suggests that the County may have been sensitive to community opinion, it does not support plaintiffs' argument that the County conspired with Garden City. The court cannot make the leap urged by plaintiffs that the existence of these five e-mails "clearly establish that other probative contemporaneous documents most likely have been destroyed." Pls' ltr n.6.

While it is certainly theoretically possible that some electronic data may have been deleted, there is no reason to believe that those materials would have provided any additional support for plaintiffs' claims. The court finds that the plaintiffs have not sufficiently demonstrated that any destroyed or lost materials would have been favorable to them, and thus, to the extent plaintiffs' motion seeks an adverse inference instruction, it is denied.

Given the court's finding regarding the County's grossly negligent conduct in failing to implement a litigation hold, some sanction against the County is warranted. *See, e.g., Turner,* 142 F.R.D. at 77-78 (noting that "[e]ven when rejecting an adverse inference, courts impose monetary sanctions"). An award of costs serves both a remedial and punitive purpose – it will compensate plaintiffs for having to make this motion, and it will discourage the County from repeating its cavalier decision to forego implementing a litigation hold while a motion to dismiss is pending. Accordingly, plaintiffs are awarded the costs of making the motion, including reasonable attorneys' fees.

**II. Failure to Search for Electronic Documents**

Plaintiffs also ask the court to sanction Nassau County for failing to search electronic documents for discoverable materials. Plaintiffs argue that the County's response to interrogatory No. 6 that it "does not possess either the resources of the technology to locate and access non-e-mail electronic documents created by such programs as Word, Excel or PowerPoint" makes it clear the County has never conducted a search for electronic documents responsive to plaintiffs' demands. Pls' Ltr at 3. At oral argument, counsel for the County indicated that while it does not have the technical capability to electronically search all its employees, it did instruct "the primary custodians and about fifteen other individuals" to search their electronic documents and produce "all emails, hard copies and non email electronic documents." Tr. at 11:13-15.

Plaintiffs have not provided any case law suggesting that a "manual" search of electronic files does not satisfy a party's discovery obligations. Defense counsel's oral representations regarding the number of persons told to conduct a search are not, however, consistent with the number of such persons listed in the County's interrogatory responses. Accordingly, Nassau County is directed to review its prior responses and supplement them, if necessary. If the County determines that the prior responses are complete, it should provide plaintiffs with a letter to that effect. In either event, the County must comply no later than **March 20, 2009.**

Plaintiffs' motion is granted in part and denied in part. Plaintiffs' counsel may submit documentation to support the court's award of costs, including attorneys' fees, of bringing this motion.

Dated: Central Islip, New York
March 9, 2009

**SO ORDERED:**

 /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge