UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

N° 05-CV-2301 (JFB) (WDW)

---

ACORN (THE NEW YORK ASSOCIATION OF COMMUNITY
ORGANIZATIONS FOR REFORM NOW),
NEW YORK ACORN HOUSING COMPANY, INC.,
VIC DEVITA, AND NATALIE GUERRIDO,

Plaintiffs,

VERSUS

COUNTY OF NASSAU, INCORPORATED VILLAGE OF GARDEN
CITY, AND GARDEN CITY BOARD OF TRUSTEES,

Defendants.

---

**MEMORANDUM AND ORDER**
September 10, 2009

---

JOSEPH F. BIANCO, District Judge:

Plaintiffs The New York Association of Community Organizations for Reform Now, New York ACORN Housing Company, Inc., Francine McCrary, and Vic DeVita (collectively, "plaintiffs"),[1] brought this civil rights action against defendants the County of Nassau, the Incorporated Village of Garden City, and the Garden City Board of Trustees (collectively, "defendants"), alleging that defendants have engaged in a long-standing pattern and practice of preventing African-American and other minority persons from residing in predominantly white communities. Specifically, plaintiffs allege that defendants have engaged in exclusionary zoning procedures that prevented the development of affordable multi-family housing opportunities against the defendants. (Docket Entry No. 51.) By Stipulation and Order filed May 22, 2008, Ghullkie and Hunter dismissed all claims against the defendants. (Docket Entry No. 114.)

---

[1] The original complaint, filed on May 12, 2005, included individual plaintiffs Daphne Andrews, Vernon Ghullkie and Natalie Guerrido, as well. (Docket Entry No. 1.) The Amended Complaint, filed November 30, 2005, dropped Daphne Andrews as an individual plaintiff and added Lisbett Hunter as an individual plaintiff. (Docket Entry No. 24.) By Stipulation and Order dated October 24, 2006, Guerrido dismissed all claims

on a 25-acre parcel of County-owned property in Garden City, New York, in violation of the Fair Housing Act ("the FHA"), 42 U.S.C. § 3601, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and 1983, the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment. On March 10, 2006, the County and the Garden City defendants moved separately to dismiss the action, for lack of standing and failure to state a claim. By Memorandum and Order dated July 21, 2006, this Court denied both motions in their entirety. *See ACORN v. County of Nassau*, No. 05 Civ. 2301 (JFB) (WDW), 2006 WL 2053732 (E.D.N.Y. July 21, 2006). Familiarity with that underlying decision is presumed.

Pending before the Court is plaintiffs' motion, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, to "set aside or modify a portion" of the September 25, 2007 discovery order of Magistrate Judge William D. Wall (hereinafter, "the Order") which granted in part and denied in part plaintiffs' motion to compel testimony withheld by the Garden City defendants on the grounds of legislative privilege. Specifically, Magistrate Judge Wall held: (1) legislative privilege is available to protect inquiry into the actual deliberation and motivations of legislators of the Garden City Board of Trustees in this case; (2) the privilege extends to both documents and testimony reflecting such deliberations and motivations; (3) the privilege extends to the Village Administrator and the Superintendent of the Village's Building Department, to the extent that they were communicating with the Village Board or performing acts in furtherance of their legislative duties (and their presence during conversations does not act as a waiver of the privilege); and (4) the privilege extends to a consulting firm retained by Garden City as a land use/zoning specialist, but did not apply to communications or documents produced or shared with the firm's personnel prior to the issuance of the firm's report to the Village Board (*i.e.*, May 14, 2003). Defendants have submitted 22 documents for *in camera* review that they assert are subject to the privilege.

For the reasons set forth below, this Court finds no error in the thorough and well-reasoned Order issued by Magistrate Judge Wall and, therefore, plaintiffs' motion is denied. This Court requests that Magistrate Judge Wall review the documents *in camera* within the framework set forth in his Order, with the additional instruction that any documents illustrating that racial considerations were part of the legislative deliberations in the zoning decision at issue in this case must be produced because, with respect to any such documents (if they exist), the seriousness of the litigation and the issues involved, including the critical national interest in civil rights enforcement, outweigh the other factors favoring the application of the qualified legislative privilege.

I. BACKGROUND

A. The September 25, 2007 Order

On January 3, 2007, plaintiffs moved, pursuant to Federal Rule of Civil Procedure 37(a), to compel both documentary and testimonial evidence from the Garden City defendants withheld on the grounds of legislative privilege. (*See* Docket Entry No. 58.) Specifically, plaintiffs sought evidence regarding communications between the Garden City Board of Trustees, Garden City employees and the outside consulting firm of Buckhurst Fish & Jacquemart, Inc. ("BFJ") as it related to the re-zoning of the Social Services site. (*See id.* at 1.) Plaintiffs argued that the legislative privilege, as asserted by the Garden City

2

defendants prior to and during the scheduled deposition of BFJ representative Frank Fish, is inapplicable because the public's interest in obtaining the requested information outweighs any governmental interest in protecting the confidentiality of the legislative process. (*See id*. at 2-3.) Plaintiff further asserted that, even if the privilege was properly invoked, it was waived by the Board of Trustees' inclusion of non-legislative personnel in its deliberative communications. (*See id*. at 3.) The Garden City defendants argued that the balancing test weighs in favor of the privilege and that it was not waived by the presence of non-Board employees and BFJ, as the former served as legislative aides and the latter acted as legislative consultants. (*See* Docket Entry No. 60.)

By Order dated September 25, 2007, Magistrate Judge Wall granted in part and denied in part plaintiffs' motion to compel discovery materials withheld by the Garden City defendants on the assertion of legislative privilege related to the Board, as well as Garden City Building Superintendent Filippon, Garden City Administrator Schoelle, and personnel from BFJ. (*See* Docket Entry No. 87, hereinafter the "Order.") Recognizing that the legislative privilege is a qualified one, Magistrate Judge Wall identified the five factors courts consider when weighing the assertion of legislative privilege, specifically:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) (quoting *In re Franklin Nat'l Bank Secs. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)). Magistrate Judge Wall determined that "the most significant factors to be considered" in the instant case were the availability of other evidence and the seriousness of the litigation. (Order at 5.)[2] As to the former, Magistrate Wall determined that it did not weigh in favor of piercing the privilege because plaintiffs could access "the materials and information available [to the Board] at the time a decision was made," and indeed, had already obtained "[s]ubstantial documentary evidence." (*Id*. at 6.) Regarding the latter, Magistrate Wall noted that, although the matter involves alleged race-based discrimination and the alleged violation of plaintiffs' civil rights, plaintiffs had failed to identify any case where "the seriousness of the litigation overrode the assertion of legislative privilege as to testimony regarding a legislator's motivations." (*Id*.) Furthermore, Magistrate Judge Wall stated that "plaintiffs cannot point to any independent evidence of a discriminatory motive that would convince the court that this is an 'extraordinary instance' in which such inquiry should be allowed." (*Id*.) In short, Magistrate Judge Wall concluded that "[a]lthough the court recognizes the difficulty of plaintiffs' burden of proving discriminatory intent, they have not produced a compelling reason sufficient to overcome the legislative privilege." (*Id.*)

---

[2] The Order also noted that the Supreme Court addressed the tension between plaintiffs' need for evidence and a legislator's need to act free of worry about inquiry into deliberations, stating: "[I]n 'some extraordinary instances [legislators] might be called to the stand at trial to testify concerning the purpose of the official action, *although even then such testimony frequently will be barred by privilege*.'" (Order at 5 (quoting *Vill. of Arlington Heights v. Metro. Hous.Dev Corp..*, 429 U.S. 252, 268 (1977) (emphasis added by Order).)

Magistrate Judge Wall next addressed plaintiffs' argument that Garden City employees and BFJ were not entitled to invoke the privilege, as they are not legislators. Noting that the employees at issue both provide reports and recommendations to the Board members related to the passage of legislation and that those Board members are particularly reliant on such assistance because they perform their official duties on a volunteer, part-time basis, Magistrate Judge Wall determined that the employees were entitled to invoke the privilege as "legislative staff members." (*See id.* at 9 ("[The employees] are determined to be legislative staff members and as such, may assert legislative privilege as to their acts performed in furtherance of their legislative duties.").) Regarding BFJ, Magistrate Judge Wall determined that they, too, could invoke the privilege, because in their work on the Social Services re-zoning project, they acted as legislative consultants. However, "[c]ommunications prior to the issuance of the report [we]re more like conversations between legislators and knowledgeable outsiders and [we]re therefore discoverable." (*Id.* at 11.) Magistrate Judge Wall set that temporal marker as May 14, 2003, the date on which BFJ submitted its first report to the Board. (*See* Docket Entry No. 96.) However, Magistrate Judge Wall stated that "if necessary, [he would] make a determination regarding production of post-report documents on a case by case basis after *in camera* review." (Order, at 11.) The 22 documents at issue have been submitted to Magistrate Judge Wall for review pending the outcome of this appeal of his Order.

B. Procedural History

On October 10, 2007, plaintiffs appealed the Order of Magistrate Judge Wall granting in part and denying in part their motion to compel certain documents from the Garden City defendants. On October 19, 2007, the Garden City defendants opposed plaintiffs' appeal. On October 26, 2007, plaintiffs submitted their reply. Oral argument was heard on August 21, 2009. This matter is fully submitted.

II. STANDARD OF REVIEW

Rule 72(a) states that a district court shall only set aside a discovery order of a magistrate judge when it has been shown that the magistrate's order is "clearly erroneous or contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A). Indeed, it is well-settled that "[a] magistrate judge's resolution of discovery disputes deserves substantial deference." *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001); *see also Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 124 F.R.D. 75, 77 (S.D.N.Y. 1989) ("[I]n resolving discovery disputes, the Magistrate is afforded broad discretion, which will be overruled only if abused.") (quotations omitted).

III. DISCUSSION

The Court has carefully reviewed the parties' submissions related to plaintiffs' appeal, as well as the September 25, 2007 Order, and finds no grounds to disturb that ruling, as set forth in more detail below.

A. The Magistrate Judge's Order Properly Applied the Qualified Legislative Privilege to Documents Evincing Legislative Intent

Plaintiffs first object to the Order on the grounds that it improperly extended the legislative privilege beyond subjects addressed in deposition testimony to documentary evidence. Specifically, they argue that the "seriousness of the litigation," *i.e.*, the civil

rights implicated, outweighs any qualified legislative privilege as to documentary evidence. As set forth below, and for the reasons outlined in the Magistrate Judge's Order, the Court concludes that Magistrate Judge Wall did not err in ruling that the legislative privilege would apply not only to testimony into the actual deliberation and motivations of legislators of the Garden City Board of Trustees in this case, but also to documents reflecting the same.

In their objections, plaintiffs rely heavily upon the ruling in *Manzi v. DiCarlo*, 982 F. Supp. 125, 129 (E.D.N.Y. 1997), wherein the magistrate judge permitted plaintiff to examine documents pertaining to the funds allocated to legislator defendants for staff members, despite defendants' assertion of legislative privilege. However, that case is inapposite to the instant matter, as the allocation of funds was deemed to be "within the discretion of the Senate Majority leader and not related to the passage of legislation." *Id*. The court thus determined that, because defendants' "claim of confidentiality appear[ed] to be based, in large part, on the State's interest in preserving the secrecy of an allocation process that has historically been separate from general Senate proceedings and protected from disclosure" and not on the legislative process, the legislative privilege was not implicated. *Id*. The court further ruled that, even if it was related to the legislative process, plaintiff's interest in enforcing her federal rights would outweigh that privilege because it was "not apparent how removal of the confidential designation would disrupt the legislative process." *Id*. at 130. Finally, before ordering the production of the documents, the court in *Manzi* first conducted an *in camera* review of the documentary evidence.

In the instant case, unlike in *Manzi*, the documents that Magistrate Judge Wall found would be precluded directly implicate the legislative process – namely, the Village Board's communications with its consultant on a zoning issue, including any documents that would reflect the deliberations and motivations of the Village Board. For such core documents, the seriousness of the litigation, by itself, is insufficient to overcome the other compelling factors (outlined by Magistrate Judge Wall) that support application of the legislative privilege in this particular case. Thus, the *Manzi* decision provides limited guidance to the issues presented by the instant matter and Magistrate Judge Wall correctly distinguished it.

Plaintiffs further rely upon the ruling in *Rodriguez v. Pataki*, 02-CV-618 (RMB) (FM), 02 Civ. 3239 (RMB) (FM), 2003 WL 22109902, at *2-3 (S.D.N.Y. Sept. 10, 2003) (Maas, M.J.), *aff'd*, 293 F. Supp. 2d 313 (S.D.N.Y. 2003), in which the magistrate judge ordered the production of a single document (out of numerous documents) withheld on the grounds of legislative privilege because it revealed that defendant legislators impermissibly considered race as a factor in legislative redistricting. Plaintiffs argue that because race-based discrimination is also alleged in the instant action, the circumstances herein require the same outcome. However, the court in *Rodriguez* made that determination after it conducted an *in camera* review. *See Rodriguez*, 2003 WL 22109902, at *2. The Court agrees with plaintiffs (and, in fact, defendants conceded this point at oral argument) that, if any of the withheld documents reveal that racial considerations played any role in the legislative deliberations regarding the re-zoning of the Social Services site, then the factors regarding legislative privilege would warrant production of those documents, as in *Rodriguez*. Moreover, the

5

Court also agrees with plaintiffs that, even where the legislative privilege bars questioning or production of documents revealing a legislator's deliberations, it does not also prohibit inquiries into documents and information available to the legislators at the time the decision was made. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 n.20 (1977). Any objection to Magistrate Judge Wall's Order on that basis is ill-founded because Magistrate Judge Wall made clear that documents can only be withheld if they reflect a legislator's deliberation or motivation with respect to the zoning decision.[3]

In sum, the Court concludes that Magistrate Judge Wall did not err in concluding that the qualified legislative privilege applied to testimony and documents reflecting a legislator's deliberations or motivations relating to the Board's zoning decision. Thus, Magistrate Judge Wall shall review the 22 documents to determine whether the documents reflect a legislator's deliberation or motivation relating to the zoning decision. Any such documents can be withheld under the legislative privilege, unless any of the withheld documents reveal that racial considerations played any role in the legislative deliberations regarding the zoning decision, in which case such documents must be produced. This framework will ensure that the factors relating to the qualified legislative privilege are properly balanced, including the "seriousness of the litigation and the issues involved" and

---

[3] Plaintiffs also argue that the legislative redistricting case of *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292 (D. Md. 1992) requires production of the withheld documents, because the three-judge district court panel in that case stated that defendants would be required to "produce any documents prepared by [the Governor's] Committee during the course of its deliberations which [we]re requested by plaintiffs, subject . . . to the assertion of any other privilege . . . ." *Id*. at 302 n.20. In doing so, the panel determined that the legislative privilege was not applicable to any documents generated prior to a bill's first introduction to the floor of the legislature. This determination implicates two issues – one, whether documents reflecting legislative intent can be somehow distinguished from deposition testimony regarding the same, and two, at what point in the legislative process those documents reflect non-discoverable deliberative processes. As to the first issue, the Court sees no reason why documents evincing legislative intent should be more discoverable than deposition testimony reflecting the same, as both implicate the same interests. Regarding the second issue, as the *Rodriguez* court noted in distinguishing its own decision to extend the privilege to certain documents generated by an outside committee prior to the official introduction of a piece of legislation: "the [*Schaefer*] court acknowledged that any changes that may have been made to a proposed redistricting plan once it reaches the floor of the legislature, and the rationale therefore, fall squarely within the legislative or deliberative process privilege. Nevertheless, actions which are legislative do not begin only when a bill reaches the floor of the legislature. As every high school student knows, the process of drafting legislation is also an important part of how a bill becomes law." *Rodriguez*, 280 F. Supp. 2d at 101 (internal citations and quotation marks omitted). The Court finds the *Rodriguez* analysis to be persuasive in this regard and determines, as discussed in further detail *infra*, that the fact-finding and analysis preceding the first draft of a bill can, depending on the circumstances, trigger the privilege before that draft is ultimately introduced. *See, e.g., Kay v. City of Racho Palos Verdes*, No. CV 02-03922 MMM RZ, 2003 WL 25294710, at *11 (C.D. Cal. Oct. 10, 2003) ("Requiring testimony about communications that reflect objective facts related to legislation subjects legislators to the same burden and inconvenience as requiring them to testify about subjective motivations – 'the why questions.' Creating an 'objective facts' exception to the legislative process privilege thus undermines its central purpose.").

6

"the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."

B. The Magistrate's Order Properly Extended the Qualified Legislative Privilege to Non-Legislators Performing Legislative Functions

Plaintiffs also seek reversal of Magistrate Judge Wall's determination that the legislative privilege applies to two non-legislative Garden City employees – the Superintendent of the Village's Building Department (Michael Filippon) and the Garden City Village Administrator (Robert Schoelle) – and BFJ, which was the private consulting firm hired by Garden City in connection with the zoning issues. Specifically, plaintiffs assert that Schoelle and Filippon do not qualify as "legislative staff members" simply because they provided recommendations to legislators regarding the re-zoning of the Social Services site, and that BFJ does not qualify as a legislative committee because it simply served as an outside consultant with expertise in technical zoning matters. As set forth below, the Court concludes that Magistrate Judge Wall did not err in his rulings regarding the application of the legislative privilege to communications between the Village Board and the aforementioned parties.

As noted in the Order, it is well-settled that "[w]here a legislative aide or staff member performs functions that would be deemed legislative if performed by the legislator himself, the staff member is entitled to the same privilege that would be available to the legislator." (Order at 8 (citing *United States v. Gravel*, 408 U.S. 606 (1972).) Because the legislative members in the instant action perform their duties on a part-time volunteer basis and therefore rely upon Schoelle and Filippon for assistance in carrying out their legislative functions, Magistrate Judge Wall concluded that these two Village employees properly qualify as legislative aides and are entitled to assert the privilege insofar as it relates to acts "performed in furtherance of their legislative duties." (*Id*. at 9.) Plaintiffs argue that these individuals may not assert the privilege because they do not claim to be "personal staff member[s] for any particular Garden City legislator."[4] In doing so, plaintiffs stress form over substance, as the appropriate inquiry does not focus on the technical titles of the individuals at issue, but rather the nature of

---

[4] Plaintiffs argue that the decision in *Fla. Ass'n of Rehab. Fac., Inc. v. State of Fla. Dep't of Health and Rehab. Servs.*, 164 F.R.D. 257, 267 (N.D. Fla. 1995) supports their argument in this regard, as the court in that case restricted the legislative privilege "to communications between an elected legislative member and his or her personal staff members involving opinions, recommendations or advice about legislative decisions." *Id*. at 267. However, that court stated that the purpose of extending such a privilege to such individuals was to "protect the confidentiality of communications with the office-holder involving the discharge of his or her office." *Id*. The affidavits submitted by Schoelle and Filippon indicate that their duties as Village employees involve these very types of communications. (*See, e.g.,* Docket Entry No. 69, Ex. 1, Schoelle Aff. ¶¶ 2-3 (duties include making reports to Board for "considering and reviewing potential new legislation"); Ex. 2, Filippon Aff. ¶ 2 ("The Superintendent of a Village Building Department is required to, among other things, make 'recommendations . . . for adoption of new laws.'") (quoting County of Nassau Civil Service job description).) Moreover, the *Florida Association* court refused to extend the privilege to the outside committee at issue because that committee was, by specific statute, excluded from the legislative branch. There is no such clear delineation here. Accordingly, the court's reasoning in the aforementioned case does not require a different outcome in the instant action.

7

the functions that they performed. *See, e.g., Johnson v. Metro. Gov. of Nashville and Davidson County*, Nos. 3:07-0979, 3:08-0031, 2009 WL 1952780, at *4 (M.D. Tenn. July 2, 2009) ("When evaluating whether there is a claim for legislative immunity, courts are to evaluate the 'function' performed by the individual claiming the privilege, that is, whether the function performed was 'legislative' or 'administrative,' not whether the entity in which the individual was operating was necessarily solely a legislative body.") (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998)). Here, Schoelle and Fillippon have submitted sworn statements regarding the nature of their duties as Garden City employees, which include providing assistance to the Board members in performing their legislative functions. *Cf. Almonte v. City of Long Beach*, No. 04-CV-4192 (JS) (JO), 2005 WL 1796118, at *3 (E.D.N.Y. July 27, 2005) (in denying extension of privilege to city manager, noted that "defendants make no effort to show that [the city manager], in the words of *Bogan*, 'performs legislative functions' or took any 'actions [that] were legislative because they were integral steps in the legislative process.'"). Accordingly, these individuals may properly assert privilege related to those duties.[5]

Finally, plaintiffs argue that the privilege should not extend to BFJ because it functioned, at all times relevant to this litigation, solely as a "knowledgeable outsider" and, therefore, its testimony would not intrude into the legislature's prerogatives. As all parties concede, "fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation. As such, fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity." *Government of Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985). The parties disagree as to the extent that BFJ provided these services.[6] Magistrate Judge Wall determined that BFJ's activities prior to the presentation of its first report to the Board were more akin to "conversations between legislators and knowledgeable outsiders" (as in *Rodriguez*, 280 F. Supp. 2d at 101) and were, therefore, discoverable. However, Magistrate Judge Wall further concluded that "[t]aking the presentation of a report upon which legislation

---

[5] Of course, to the extent that these individuals may possess other relevant information that was not acquired pursuant to their legislative functions for the Board, but rather was obtained pursuant to their other job responsibilities for the Village, such information would not be protected by the legislative privilege.

[6] Specifically, plaintiffs argue, that because the outside committee in *Rodriguez* had "greater legislative ties than BFJ," (Order at 10), and the magistrate judge in that case ordered the production of certain documents created by that committee, BFJ, by extension, should produce all of its documents. The Court finds this argument unpersuasive. Although the court in *Rodriguez* found that certain information regarding the operation of a task force with four legislators and two non-legislators was not subject to legislative privilege, the court also denied the motion to compel information to the extent it sought information concerning "the actual deliberations of the Legislature – or individual legislators – which took place outside [the Task Force], or after the proposed redistricting plan reached the floor of the Legislature." 280 F. Supp. 2d at 103. Therefore, neither the facts nor the result in *Rodriguez* suggest that no legislative privilege should attach at all to the Board's communications with BFJ, and Magistrate Judge Wall did not err in establishing a temporal marker (combined with *in camera* review) to distinguish documents that did not implicate legislative processes from those that did.

was based as the necessary starting point of the Board's deliberations," all communications thereafter that reflected any legislative intent were privileged. (Order at 11.) The Court concurs in this analysis. As stated *supra*, "actions which are legislative do not begin only when a bill reaches the floor of the legislature," *Rodriguez*, 280 F. Supp. 2d at 101, and the Garden City defendants have established that communications between the Board members and BFJ that followed the submission of the first report should be protected to the extent that such communications reflected legislative deliberations or motivations (with the exception of communications reflecting racial considerations). Legislators must be permitted to have discussions and obtain recommendations from experts retained by them to assist in their legislative functions, without vitiating or waiving legislative privilege. To hold otherwise under the particular circumstances of this case would impair the legislative function by requiring them to exclude their own retained experts from the critical legislative conversations about the precise issues the experts were hired to address. *See generally Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007) ("Meeting with persons outside the legislature – such as executive officers, partisans, political interest groups, or constituents – to discuss issues that bear on potential legislation, and participating in party caucuses to form a united position on matters of legislative policy, assist legislators in the discharge of their legislative duty. These activities are also a routine and legitimate part of the modern-day legislative process."). Accordingly, those communications are covered by the qualified legislative privilege and subject to the balancing test outlined above, which this Court finds weighs in favor of protection for the reasons outlined by Magistrate Judge Wall.

In sum, having considered plaintiffs' objections, Magistrate Judge Wall did not err in concluding that (1) the legislative privilege extends to the Village Administrator and the Superintendent of the Village's Building Department, to the extent they were communicating with the Village Board or performing acts in furtherance of their legislative duties (and their presence during conversations does not act as a waiver of the privilege), and (2) the privilege extends to the consulting firm retained by Garden City as a land use/zoning specialist, but does not apply to communications or documents produced or shared with the firm's personnel prior to the issuance of the firm's report to the Village Board (*i.e.*, May 14, 2003).

IV. CONCLUSION

The Court recognizes that the allegations in the instant matter, of race-based housing discrimination, are serious indeed, and that the legislative privilege is a qualified one. However, it is plain to the Court from its review of Magistrate Judge Wall's Order, as well as relevant case law, that the Order struck the appropriate balance between the competing interests implicated and, therefore, is not "clearly erroneous" or "contrary to law." Moreover, if Magistrate Judge Wall's *in camera* inspection reveals evidence of racial considerations in the decision-making process, they shall be produced. This framework will ensure that the balance is maintained, and that the privilege is not asserted at the expense of inviolable civil rights.

Accordingly, for the reasons set forth above, plaintiffs' motion seeking to set aside the September 25, 2007 discovery order of Magistrate Judge Wall is denied. Magistrate Judge Wall can now expeditiously review *in camera* the twenty-two documents submitted by the Garden City defendants. The documents will be reviewed within the

framework set forth in the September 25, 2007 Order, with the additional instruction that any documents illustrating that racial considerations were part of the legislative deliberations must also be produced.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 10, 2009
     Central Islip, New York

\* \* \*

Plaintiffs are represented by Frederick K. Brewington, Esq., Law Offices of Frederick K. Brewington, 50 Clinton Street, Ste. 501, Hempstead, New York 11550; Paul B. Sweeney, Kim F. Bridges, Cynthia Dorsainvil Sleet, Jenny Rubin Robertson, Stanley Joseph Brown, Toby William Smith, and Sabrina Helene Cochet, Esqs., Hogan & Hartson LLP, 875 Third Avenue, New York, New York 10022; Peter Joseph Dennin, Esq., Simpson, Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017; and Joseph D. Rich, Esq., Lawyers' Committee for Civil Rights, 1401 New York Avenue, N.W., Ste. 400, Washington, D.C. 20005. Defendant County of Nassau is represented by Andrew Reginald Scott, Ralph J. Reissman, David Bruce Goldin, and Karen Schmidt, Esqs., Nassau County Attorney's Office, One West Street, Mineola, New York 11501. Defendants Incorporated Village of Garden City, and Garden City Board of Trustees are represented by James G. Ryan and Jennifer A. McLaughlin, Esqs., of Cullen & Dykman LLP, 101 Quentin Roosevelt Boulevard, Garden City, New York 11530.