**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MHANY MANAGEMENT INC.,

                                    Plaintiff,

     -and-                                              **MEMORANDUM OF**
                                                        **DECISION AND ORDER**
NEW YORK COMMUNITIES FOR CHANGE,    05-CV-2301 (ADS)(WDW)
INC.,

                                    Intervenor-Plaintiff,

                    -against-

INCORPORATED VILLAGE OF GARDEN
CITY AND GARDEN CITY BOARD OF
TRUSTEES,

                                    Defendants.
---------------------------------------------------------X
<u>**APPEARANCES:**</u>

**Law Offices of Frederick K. Brewington**
*Attorneys for the Plaintiffs*
556 Peninsula Blvd.
Hempstead, New York 11550
          By:     Frederick K. Brewington, Esq., of Counsel

**Lawyers' Committee for Civil Rights Under Law**
*Attorneys for the Plaintiffs*
1401 New York Avenue, NW
Suite 400
Washington, DC 20005
          By:     Joseph D. Rich, Esq.
                  Linda H. Mullenbach, Esq.
                  Abigail E. Shafroth, Esq., of Counsel

**Hogan Lovells US LLP**
*Attorneys for the Plaintiff Mhany Management Inc.*
875 Third Avenue
New York, New York 10022
          By:     Stanley J. Brown, Esq.
                  Peter J. Dennin, Esq.
                  Chava Brandriss, Esq.
                  Andrew J. Sein, Esq.he h
                  Sarah J. Gregory, Esq.

1

Benjamin A. Fleming, Esq.
Carol H. Cheng, Esq. Of Counsel

**Cullen and Dykman, LLP**
*Attorneys for the Defendants Incorporated Village of Garden City and Garden City Board of Trustees*
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
      By:    James G. Ryan, Esq.
              Ariel E. Ronneburger, Esq.
              Thomas B. Wassel, Esq.
              Cynthia Ann Augello, Esq.
              Douglas J. Bohn, Esq.
              Jennifer A. McLaughlin, Esq., of Counsel

**Jones Day**
*Attorneys for the Defendants Incorporated Village of Garden City and Garden City Board of Trustees*
51 Louisiana Ave N.W.
Washington, D.C. 20001
      By:    Michael A. Carvin

**SPATT, District Judge**.

Familiarity with the facts of this case is presumed.

Of relevance here, on December 6, 2013, after an 11-day bench trial commencing on June 17, 2013, this Court concluded that the Plaintiffs established the liability of the Incorporated Village of Garden City (the "Village" or "Garden City") and the Garden City Board of Trustees (collectively the "Garden City Defendants") under (1) the Fair Housing Act ("FHA"), 42 U.S.C. § 361 *et seq.* based on a theory of disparate treatment and disparate impact; (2) 42 U.S.C. § 1981; (3) 42 U.S. C. § 1983; and (4) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. MHANY Mgmt. Inc. v. Inc. Vill. of Garden City, 05-CV-2301 (ADS)(WDW), 2013 WL 6334107 (E.D.N.Y. Dec. 6, 2013)(Spatt, J.).  In particular, the Court found that:

Garden City Defendants acted with discriminatory intent when they eliminated R–M [Multi-Family Residential Group] zoning and endorsed R–T [Residential Townhouse]zoning after they received public opposition to the prospect of affordable housing in Garden City. The Court notes that R–T zoning banned the development of multi-family housing on all but a small portion of the Social Services site—the 3.03 acres located on the western side of County Seat Drive—and then only by special permit. The Court also notes the negative remarks by Garden City residents at public hearings and the flyer against multi-family housing on the Social Services Site. Set against the underlying sequence of events and the considerable impact that this zoning decision would have had on minorities in that community, the Court concludes that some of the expressions by Garden City residents of disapproval for affordable housing reflected race-based animus or at least could have been construed as such by the Board.

Furthermore, the Court finds that the adoption of R–T zoning instead of R–M zoning had a disparate impact on minorities in Garden City and tended to perpetuate segregation in that community.

Id. at *37.

With respect to remedies, the Court recognized that the FHA authorizes injunctive relief. The Court noted that "at a minimum, prohibitive injunctive relief enjoining future FHA violations is appropriate." Id. at *36. "However," the Court reasoned, "because such an injunction merely prohibits what is already prohibited, further relief, perhaps in the form of affirmative relief, appears appropriate." Id. In that regard, the Court noted that "a directive requiring Garden City to join the Nassau Urban Consortium appears eminently reasonable as a starting point." Id. The Consortium is a group of municipalities in Nassau County that are eligible to receive federal funding to support affordable housing development.

At the same time, the Court made clear that "there is no constitutional or statutory right for individual citizens to have housing comply with a particular standard, nor is there a concomitant duty on the part of political entities to provide housing." Id. Ultimately, the Court reserved decision on the issue of remedies and directed the parties to propose remedial plans to be incorporated into the final judgment in this case.

As modified in its reply brief and described in more detail throughout this opinion, the Plaintiffs' proposed remedies for inclusion in the final judgment are as follows: (1) a general injunction prohibiting any discrimination in housing policy in Garden City on the basis of race, color, or national origin; (2) a directive to Garden City to adopt a Fair Housing Resolution to assure equal housing opportunities and nondiscrimination in its zoning and other land use processes; (3) the appointment of a third-party contractor as a Fair Housing Administrator to ensure compliance with the final judgment; (4) rezoning the Social Services Site from R-T zoning to R-M zoning; (5) participation by Garden City in the Nassau County Urban Consortium; (6) promotion of the development of no less than 78 affordable housing units in Garden City; (7) Fair Housing training for Garden City employees whose duties relate to housing or zoning; (8) funding of an Affordable Housing Trust Fund; (9) certain record-keeping requirements; (10) a deadline to file a motion for attorney's fees and costs; and (11) retention of jurisdiction by this Court over this action until Garden City has fulfilled its obligations under the judgment.

In opposition, without conceding liability, the Garden City Defendants contend that at most the Plaintiffs are entitled to have the Social Services Site rezoned R-M. Alternatively, the Plaintiffs suggests (1) a prohibitory non-discrimination injunction; (2) a requirement that any developer of multi-family property consisting of 5 or more units in the Village offer at least 10% of the units to be reserved for families whose income is 40% to 100% of the Nassau-Suffolk County Area Median Income; (3) Fair Housing training for Village officials whose duties relate to housing or zoning; (4) appointment of a Garden City employee or Trustee as a Fair Housing Compliance Officer to ensure compliance with the final judgment; (5) a deadline for compliance;

(6) a deadline to file a motion for attorney's fees and costs; and (7) retention of jurisdiction over this matter by this Court until Garden City has fulfilled its obligations under the judgment.

In this decision, the Court adopts various aspects of the parties' respective proposed judgments, and includes its own changes as well. Within ten days of the date of this order, the Plaintiffs are directed to submit a final judgment in accordance with the terms of this decision. The Defendants shall then have ten days to file objections or an alternative proposed judgment. The Court will subsequently enter a final judgment.

## I.    DISCUSSION

The FHA expressly authorizes courts to award injunctive relief:

> if the court finds that a discriminatory housing practice has occurred . . . the court may . . . grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

42 U.S.C. § 3613(c)(1). "The Court must craft injunctive relief with a view toward the statute's goals of preventing future violations and removing lingering effects of past discrimination. The scope of the injunction is to be determined by the nature and extent of the legal violation." United States v. Space Hunters, Inc., 2004 WL 2674608, at *8 (S.D.N.Y. Nov. 23, 2004) (citing Rogers v. 66–36 Yellowstone Blvd. Coop. Owners, Inc., 599 F. Supp. 79, 83 (E.D.N.Y. 1984)). "[T]he two most common forms of injunctive relief requested under the FHA seek either to prohibit the offending party from engaging in future acts of housing discrimination or to impose upon that party certain affirmative duties to atone for past discrimination and prevent recurrence of such acts." Ueno v. Napolitano, 2007 WL 1395517, at *6 (E.D.N.Y. May 11, 2007). In determining whether or not to grant a request for injunctive relief, "[t]he critical question . . . is

whether a sufficiently flagrant violation of the plaintiffs' civil rights – the guidepost for granting FHA injunctive relief – has occurred." Id. at *4.

In this regard, "[t]he Supreme Court has not required that the 'least restrictive means of implementation' be adopted but has 'recognized that the choice of remedies to redress racial discrimination is 'a balancing process left, within appropriate constitutional or statutory limits, to the sound discretion of the trial court.'" United States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1236 (2d Cir. 1987)(citations omitted).

Here, "[t]o the extent the defendants are concerned that the imposition of *any* injunctive relief is unwarranted, intrusive or burdensome, the court finds such concerns misplaced." Ueno, 2007 WL 1395517, at *7. The Garden City Defendants did not move for reconsideration of the December 6, 2013 order, and in the absence of such a motion, the Court declines to relitigate liability. In other words, "the law has been broken and the defendants cannot now complain of the ensuing consequences." Id.

Further, contrary to the contention of the Garden City Defendants, the Plaintiffs have proved that they are likely to suffer future harm from the "continuing, present adverse effects" of the Defendants' illegal conduct, thereby justifying injunctive relief. City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). In particular, the Court finds that the Plaintiffs proved that the enactment of R-T zoning continues to limit available housing options in Garden City. See Sierra v. City of New York, 535 F. Supp. 2d 448, 450 (S.D.N.Y. 2008)(On motion to dismiss for lack of standing, "[[a]s to injunctive relief, Sierra has made a sufficient (if thin) showing that section 27-2076(b) continues to limit her available housing options."). Although Nassau County has since declined to sell the Social Services Site, the Court notes that R-T zoning, which the Court found was enacted with a discriminatory intent and

purpose, remains in effect as a barrier to the construction of affordable housing in the Village.  In other words, even if the County changed course and decided to sell the property for residential development, Garden City would still need to repeal the R-T controls to make construction of any measurable number of affordable housing units feasible. <u>South–Suburban Hous. Ctr. v. Greater South Suburban Bd. of Realtors, et al.</u>, 935 F.2d 868, 881 (7th Cir. 1991) (finding that an FHA challenge to a street plan for damages, declaratory relief, and injunctive relief was not rendered moot although homes were sold prior to the trial, in part because there was still a viable claim for declaratory and injunctive relief).

The Garden City Defendants contend that, absent a systemic violation throughout the Village, the Court cannot order Village-wide relief and at most the Plaintiffs are entitled to have the Social Services Site rezoned R-M.  The Court disagrees.

As the <u>Ueno</u> court found:

> The FHA sweeps broader than providing assurance that individual litigants are protected from housing discrimination.  Rather, to achieve Congress' goal of eliminating discrimination wholesale, individual litigants like the plaintiffs here should be considered proxies for the public at large, with the latter group being the real focus in crafting "particularly tailored" injunctive relief under the FHA.

<u>Id.</u> at *5.

The Supreme Court decisions in <u>Horne v. Flores</u>, 557 U.S. 433, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (2009) and <u>Missouri v. Jenkins</u>, 515 U.S. 70, 115 S. Ct. 2038, 132 L. Ed. 2d 63 (1995) do not dictate otherwise.

In <u>Horne</u>, the Supreme Court vacated a statewide injunction to the extent it extended beyond the district proven to have violated the Equal Educational Opportunities Act on the ground that "a statewide injunction . . . intruded deeply into the State's budgetary processes" and

"obscured accountability for the drastic remedy," as the state legislature or state courts had the authority to decide that issue and not the lower court. 557 U.S. at 471, 129 S. Ct. at 2607.

Similarly, in <u>Jenkins</u>, a case involving unconstitutional racial segregation, the Supreme Court held that "[a] district court seeking to remedy an intradistrict violation that has 'directly caused' significant interdistrict effects exceeds its remedial authority if it orders a remedy with an interdistrict purpose." <u>Jenkins</u>, 515 U.S. at 97, 115 S. Ct. at 2054.

Put in simpler terms, <u>Horne</u> and <u>Jenkins</u> stand for the proposition that a remedy for a constitutional violation should only bind the party found to be liable. In contrast to the Plaintiffs in those cases, here, the Plaintiff seeks relief only as to the entities held liable, the Garden City Defendants.

Finally, the Garden City Defendants argue that prospective injunctive relief is inappropriate where, as here, the Village did not engage in a policy or practice of discrimination. As the Second Circuit has summarized, "a plaintiff seeking injunctive relief [against a municipality] must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent." <u>Shain v. Ellison</u>, 356 F.3d 211, 216 (2d Cir. 2004)(emphasis added). This is not to say that such injunctive relief demands a history of repeat violations. Rather, the Court finds that the enactment of a zoning ordinance, such as R-T zoning, qualifies as "an official policy or its equivalent" adopted by the Village. <u>Compare</u> <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983) ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, *ordinance*, regulation, or decision.")(emphasis added).

Having addressed the Defendants' arguments disputing the legal basis for injunctive relief, the Court now addresses the specific relief to be incorporated into the final judgment in this case.

A.    <u>Prohibitive Injunctive Relief</u>

As the Court previously stated in this case, "prohibitive injunctive relief enjoining future FHA violations is appropriate." 2013 WL 6334107, at *36, citing <u>Rogers</u>, 599 F. Supp. at 85-86 (approving prohibitive relief, i.e., forbidding a defendant from disobeying the law, and requiring the "defendants to take definite steps via education and advertising towards sustained lawful conduct").

In this regard, the Plaintiffs propose that the following prohibitory injunction be entered against the Garden City Defendants:

> In accordance with the laws of the United States, Garden City, along with their officers, agents, employees, successors, and all persons in active concern or participation with any of them, are permanently enjoined from:
>
> (1). Denying or otherwise making unavailable a dwelling because of race, color or national origin;
>
> (2). Discriminating in the terms, conditions or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color or national origin;
>
> (3). Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right protected by the FHA;
>
> (4). Interfering with the funding, development or construction of any housing because of race, color or national origin; and
>
> (5). Discriminating on the basis of race, color or national origin in any aspect of the administration of its zoning processes relating to residential property.

(Plfs' Amended Proposed Judgment, at § V.)

The Garden City Defendants contend that the proposed prohibitive injunction is violative of Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 65(d), which requires that injunctions be "specific in terms." The Second Circuit has cautioned that "an injunction must be more specific than a simple command that the defendant obey the law." Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 51 (2d Cir. 1996). Thus, without conceding liability, the Garden City Defendants propose the following alternative language:

> In accordance with the laws of the United States, the Village shall not take any action:
>
> (1). Interfering in any way with any person in the exercise of his or her right under the law to secure equal housing opportunity for himself, herself, or others, or any other right enjoyed under the FHA.
>
> (2). Interfering with the development or acquisition of any affordable housing units because of race, color, or national origin.
>
> (3). Discriminating because of race, color, or national origin in any aspect of the enactment or administration of zoning, land use, special permit, or building ordinance laws, polices, practices, requirements, or processes relating to residential property.

(Defs' Alternative Proposed Judgment, at § V.) .

In the Court's view, the language proposed by the Garden City Defendants is more appropriate under the circumstances of this case and complies with Fed. R. Civ. P. 65(d).

Accordingly, the Court directs that the Plaintiffs include in the final judgment the language regarding the prohibitory injunction proposed by the Garden City Defendants Judgment, with no time limitation.

B. Affirmative Injunctive Relief

The FHA "gives the district court the power it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of the Fair

Housing Act." <u>Park View Heights Corp. v. City of Black Jack</u>, 605 F.2d 1033, 1036 (8th Cir. 1979).

That said, the Court is cognizant of the general reluctance of the judiciary to impose affirmative relief. "If the court orders a FHA defendant to provide affirmative relief, such as to pass policies or rules, build housing or take other affirmative steps toward non-discriminatory housing, then such mandates require serious justification," <u>Robinson v. Parkshore Co-op</u>., 01 C 2103, 2002 WL 1400322, at *4 (N.D. Ill. June 27, 2002), because it is a "massive judicial intrusion on private autonomy." <u>Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights</u>, 558 F.2d 1283, 1293 (7th Cir. 1977) . "Indeed, there is no constitutional or statutory right for individual citizens to have housing comply with a particular standard, nor is there a concomitant duty on the part of political entities to provide housing." 2013 WL 6334107, at *36. The Court now addresses the following items of affirmative relief to be included in the final judgment.

1. <u>Fair Housing Training</u>

With regard to Fair Housing training, the Plaintiffs propose that the following language be included in the final judgment:

> A. Garden City shall implement a yearly fair housing training program for all elected Garden City officials, and for all officials and Garden City employees who have duties related to the planning, zoning, permitting, construction, or occupancy of residential housing. The primary purpose of this training program is to educate those persons with respect to the requirements of this Order, the FHA, and state and local fair housing laws.
>
> B. Garden City shall select a qualified third party entity that has experience providing fair housing training to conduct the training, and shall select from the following entities: Plaintiff NYCC, Long Island Housing Services, Inc., the Fair Housing Justice Center or ERASE Racism.
>
> C. Each year, at least one time per calendar year, Garden City shall provide in person training of the requirements of this Order, the FHA, and state and local fair housing laws. All elected officials, and all officials and employees who have duties related to the planning, zoning, permitting, construction, or occupancy of

residential housing shall be required to attend the in-person training within the first year after this Order. All newly elected officials, and all newly appointed officials and hired employees who have duties related to the planning, zoning, permitting, construction, or occupancy of residential housing shall be required to attend the in person training within one year of their election, appointment or hiring.

D. Each person who attends an in-person training session shall sign a form attesting to the fact that he or she completed the training and the date on which it was completed. All training certification forms shall be maintained by Garden City for five years from the date of signature, and made publicly available upon request to the Village Clerk.

(Plfs' Amended Proposed Judgment, at § XII.)

The Court finds that required Fair Housing Training is consistent with established FHA remedies. See United States v. Hous. Auth. of City of Chickasaw, 504 F. Supp. 716, 734 (S.D. Ala. 1980) (requiring the municipality found liable for a FHA violation to institute educational program for employees "to inform them of the provisions of this [Remedial] Order and their duties under the Fair Housing Act"); City of Parma, 661 F.2d at 577 ("We can see no objection to requiring an educational program to acquaint those officials and employees of the City who are responsible for carrying out the terms of the remedial order of their obligations thereunder.").

Accordingly, the Court directs that the Plaintiffs include in the final judgment the language regarding Fair Housing Training in their Amended Proposed Judgment, with the caveat that the trainers be qualified organizations or individuals mutually agreed upon by the parties. In this regard, the Court notes that, despite NYCC's familiarity with the facts of this case, the Court finds that, given its role in this litigation, permitting NYCC to implement aspects of the remedial order could present partiality problems. The Court further notes that this case does not involve complex legal issues that would make it difficult for a third party to conduct the mandated Fair Housing Training.

2. Fair Housing Resolution

The Plaintiffs also propose that Garden City enact a resolution "to assure equal housing opportunities and nondiscrimination in its zoning and other land use processes." (Plfs' Amended Proposed Judgment, at § VI.). The Court finds that a directive to enact such a measure is reasonable and consistent with the purpose of the FHA. Yonkers Bd. of Educ., 635 F. Supp. at 1577-80 (requiring the defendant to enact legislation setting forth a fair housing policy). Accordingly, the Court directs that the Plaintiffs include in the final judgment the language in their Amended Proposed Judgment regarding a Fair Housing Resolution.

3. Re-Zoning the Social Services Site to R-M

While, as noted above, the Court is not limited to site-specific affirmative relief under the FHA, the Court prefers such relief in this case, primarily because such a remedy "fit[s] the nature and extent of the violation [here]." United States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1235 (2d Cir. 1987). The violation of the FHA, and other civil rights provisions, was the specific action by the Garden City Defendants to eliminate R-M zoning and endorse R-T zoning after they received public opposition to the prospect of affordable housing in Garden City. The violation was not, as the Plaintiffs assert, the history of segregation and the absence of affordable housing in Garden City. Rather, the Court considered such factors as relevant to its determination as to whether the Garden City Defendants acted with discriminatory intent and purpose in the re-zoning of the Social Service Site.

Further, while a Town's track record of stalling efforts to build low-income housing is relevant to the imposition of affirmative relief, Huntington Branch, N.A.A.C.P. v. Town of Huntington, 844 F.2d 926, 942 (2d Cir. 1988), aff'd in part sub nom. Town of Huntington, N.Y. v. Huntington Branch, N.A.A.C.P., 488 U.S. 15, 109 S. Ct. 276, 102 L. Ed. 2d 180 (1988), the

Court notes that, in this case, for various reasons, it expressly declined to place significant weight on any history of discrimination in Garden City.

It is true that the district court has "the power it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of the Fair Housing Act." Park View Heights Corp., 605 F.2d at 1036, and one of the effects of the discriminatory action in the re-zoning of the Social Services Site was the perpetuation of existing segregation in Garden City. However, the Court must be careful not to impose overbroad or "unnecessarily restrictive" relief. Uneo, 2007 WL 1395517, at *5.

The Court also notes that "[t]he animating purpose of [discrimination] remedies must always be to put the victims of constitutional injury where they would have been but for the injury." United States v. City of Yonkers, 197 F.3d 41, 56 (2d Cir. 1999), citing Milliken v. Bradley, 433 U.S. 267, 280, 97 S. Ct. 2749, 2757, 53 L. Ed. 2d 745 (1977). In other words, a discrimination remedy "must be designed as nearly as possible 'to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct.'" Milliken, 433 U.S. at 280, 97 S. Ct. at 2757 (citation omitted).

While the Court retains the authority to direct a municipality to rezone a parcel of land that was previously zoned in violation of the FHA, Huntington Branch, N.A.A.C.P. , 844 F.2d at 942, the Court notes that, in this case, the Social Services Site is no longer for sale. Indeed, at some point, the current Nassau County Executive Edward P. Mangano announced plans to relocate the County's Family Court building, currently located in Westbury, New York, to the Social Services Site. The County has since apparently taken no action at the site. Thus, the Court could direct a rezoning only if Nassau County changed course and allows residential

development on the site.  Also, the Court notes that it cannot issue a directive binding Nassau County, which is no longer a party to this case.

Stated otherwise, a directive to the Garden City Defendants to rezone the Social Services Site to zone R-M would not, without further action by third-parties, remedy the FHA and constitutional violations in this case.  However, the Court does not foreclose such a directive because, in the Court's view, unlike other potential remedies, the opportunity to place a competitive bid for affordable housing on the Social Services Site would place the Plaintiffs – in particular, the developer, Mhany – in substantially the same position they were in before the unlawful discriminatory zoning action by the Garden City Defendants.

Accordingly, the Court directs that the Plaintiffs include in the final judgment the following language, or its equivalent:

> In the event Nassau County announces that the Social Services Site will be sold for residential development within one year of the date of this judgment, Garden City shall, within thirty days of that announcement, begin the process of rezoning the Social Services Site with the R-M zoning designation so as to allow for residential multifamily development on the Social Services Site as of right, with no additional permitting or variance process required.

To be clear, the Court is not directing Nassau County, nor could it direct Nassau County to sell the Social Services Site for residential development.  That ultimate action is left to the discretion of the County.

The Court will next address the two conditional measures of affirmative injunctive relief with which Garden City must comply *in the event* the Nassau County does not announce for sale the Social Services Site for residential development within one year of the date of the judgment.

### i.    Participation in the Nassau County Urban Consortium

The Plaintiffs propose that Garden City join and participate in the Nassau County Urban Consortium as follows:

Within sixty days of this Order, Garden City shall apply to become a member of the Nassau County Urban Consortium ("Consortium").

A.  Participation: Once accepted as a member of the Consortium, Garden City shall participate in Consortium activities in good faith.

(Plfs' Amended Proposed Judgment, at § IX).

As noted above, this Court previously concluded that "a directive requiring Garden City to join the Nassau Urban Consortium appears eminently reasonable as a starting point." 2013 WL 6334107, at *36, citing <u>Smith v. Town of Clarkton</u>, 682 F.2d 1055, 1065 (4th Cir. 1982)(ordering the Defendant found liable under the FHA to rejoin a regional housing cooperative).

The Garden City Defendants contend that <u>Smith</u> is distinguishable because, unlike the Town in that case, Garden City has not previously been a member of such a coalition. However, the Court finds that ordering a municipal entity to join a housing coalition is not significantly more intrusive than requiring a municipal entity to rejoin a housing coalition.

Beyond Garden City joining the Nassau County Consortium, the Plaintiff requests that, as a member of that coalition, Garden City be enjoined from:

1. Refusing funds from [the Department of Housing and Urban Development], such as Community Development Block Grants ("CDBG") and HOME Investment Partnerships Program ("HOME") funds, intended for provision of affordable housing (as defined by the relevant HUD program), in Garden City;

2. Failing to use funds obtained from HUD for affordable housing (as defined by the relevant HUD program); and

3. Applying residency preferences, such as a preference for current or past residents of Garden City, to housing programs Garden City participates in as a member of the Consortium.

(Plfs' Amended Proposed Judgment, at § IX.)

However, the Court finds that these additional obligations of participation in the Nassau County Consortium go far beyond the rulings in this case and are unnecessary to achieve the objectives set forth. Accordingly, the Court directs that the Plaintiffs include in the final judgment the language regarding the Nassau County Urban Consortium that they include in their Amended Proposed Judgment, without the above-mentioned additional obligations.

ii. <u>Construction of Affordable Housing</u>

At the trial, Ismene Speliotis, Executive Director of NYAHC/MHANY, concluded that it would have been financially feasible to build 45 to 78 affordable housing units on the Social Services Site under the R-M zone. Using the latter figure, the Plaintiffs Amended Proposed Judgment requires Garden City to "take all the necessary steps to ensure" the development of 78 affordable housing units in Garden City within five years, but specifies that Garden City need not do the building itself. The Plaintiffs also propose that the housing units "be located within Garden City Public School District attendance boundaries" and provides that at least 75% of the units must be two-bedroom units or larger. The Plaintiffs would further obligate the Garden City Defendants to, among other things, conduct an annual survey of Garden City to identify publicly and privately owned sites that are viable for residential development, including new construction or rehabilitation projects. The Plaintiffs would also require Garden City to give Mhany the right of first consideration if Garden City chooses to sell Garden City-owned land for the development of the 78 affordable housing units. Finally, the Plaintiffs propose that Garden City could fulfill its requirements under the judgment if it donated suitable land for the development of the 78 affordable housing units.

The Garden City Defendants counter-propose a requirement that any developer of multi-family property consisting of 5 or more units in the Village offer at least 10% of the units at affordable rates. The Garden City Defendants define "affordable housing" as that for which a family whose income is 40% to 100% of the Nassau-Suffolk Statistical Area Median Income pays no more than 30% of its income. The Garden City Defendants note that while this requirement would be similar to the provisions of the Long Island Workforce Housing Act, New York General Municipal Law § 699, *et seq.* ("LIWHA"), it would differ in two respects. First, under the Garden City proposal, a developer would be required to provide housing for those with lower incomes than does the LIWHA. Indeed, while the LIWHA requires a developer of five or more units of multi-family housing to make available 10% of those units to families with, at a maximum, 130% of the Nassau-Suffolk Area Median Income, the Garden City proposal would limit such units to families, with a maximum, of 100% of the Nassau-Suffolk Area Median Income. Second, under the Garden City proposal, a developer could not "buy-out" of this requirement, as is permitted by the LIWHA.

In the Court's view, the Plaintiffs' proposed steps that Garden City must take to promote the building of the 78 housing units go too far. As this Court previously found, "'federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies.'" 2013 WL 6334107, at *26, quoting Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir. 1995) (quoting Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir. 1986) (alterations in Zahra)).

With this principle in mind, the Court finds that the Garden City Defendants'
counter-proposal to require new residential developers to set aside at least 10% of their
units at affordable rates is reasonable, with one caveat. The Court directs that the final
judgment adopt the Plaintiffs' definition of "affordable housing" "as housing for which a
family whose income is 80% or less of the Nassau-Suffolk Metropolitan Statistical Area
Median Income . . . pays no more than 30% of its income." (Plfs' Amended Proposed
Judgment, at § IV(A).)  Thus, the Court directs that the Plaintiffs include in the final
judgment the language regarding the construction of "affordable housing" used by the
Garden City Defendants in the Alternative Proposed judgment, but with the Plaintiffs'
definition of "affordable housing."

### 4. Appointment of a Fair Housing Compliance Officer

Given that the language regarding Garden City's duty to promote affordable
housing adopted by this Court is not as far reaching as the Plaintiffs propose, the Court
finds that the appointment of a Fair Housing "Administrator" with the duties described in
the Amended Proposed Judgment is not necessary.  Rather, the Court finds that
appointment of a Fair Housing Compliance Officer, as described by the Garden City
Defendants in their Alternative Proposed Judgment, is appropriate.  Indeed, while
oversight is appropriate, Baltimore Neighborhoods, Inc. v. LOB, Inc., 92 F. Supp. 2d
456, 473 (D. Md. 2000)("The use of special masters to administer relief in fair housing
cases is an accepted practice"), the powers that the Plaintiffs would bestow on the
proposed Fair Housing Administrator are overly broad and unnecessary in light of the
more limited housing relief fashioned by the Court.

Thus, the Court directs that the Plaintiffs include in the final judgment the language regarding appointment of a Fair Housing Compliance Officer used by the Garden City Defendants in their Alternative Proposed Judgment, including the reporting requirements and enforcement guidelines. Also to be included is the caveat that the officer be a third-party independent contractor retained by Garden City, rather than a current employee of the Village.

     5. <u>Funding</u>

In the Plaintiff's original proposed judgment, they requested that the Court direct the Garden City Defendants to contribute a total of $1,500,000 to an "Affordable Housing Trust Fund" to finance the relief ultimately required in the final judgment. In their Amended Proposed Judgment, the Plaintiffs request an "Affordable Housing Trust Fund," but remove that figure without replacing it.

At this time, it is not yet clear what forms of relief will ultimately apply to the Garden City Defendants, as some of the relief is conditional on Nassau County's independent choice as to whether to sell the Social Services Site for residential development. The only mandatory affirmative injunctive relief is the passage of a Fair Housing Resolution; implementation of Fair Housing Training; and employment of a Fair Housing Compliance Officer. The other forms of relief – rezoning the Social Services Site, joining the Nassau County Urban Consortium, and the enforcement of affordable housing requirements for new developers in Garden City – are only triggered if the County does not announce plans to sell the Social Services Site for residential development within a year of the date of the judgment.

The Court directs that the Plaintiffs' include in the final judgment a directive to Garden City to take reasonable measures to fund the relief required by that judgment.

C.  Miscellaneous Directives in the Final Judgment

Pursuant to Fed. R. of Civ. P. 54(d)(2)(B), the Plaintiffs will have fourteen

days from the date the judgment is entered to file a petition for attorney's fees and costs.  See 42

U.S.C. § 3613(c) and 42 U.S.C. § 1988(b).  The Court directs the Plaintiffs to include in the final

judgment such a directive.  The Court also directs the Plaintiffs to include in the final judgment

the language in Section XVII of their Amended Proposed Judgment as it relates to the retention

of jurisdiction over the judgment by this Court.

## II.    CONCLUSION

For the foregoing reasons, within ten days of the date of this order, the Plaintiffs are

directed to submit a proposed final judgment in accordance with the terms set forth in this

decision and order.  The Defendants shall then have ten days to file objections or an alternative

proposed judgment.  The Court will subsequently enter a final judgment.

Absent further negotiation by the parties as to the terms of the judgment, the

judgment must include, as described herein, (1) a prohibitory non-discrimination

injunction; (2) Fair Housing Training; (3) a directive to Garden City to pass a Fair

Housing Resolution; (4) appointment of a third-party Fair Housing Compliance Officer by

the Village; and (5) expenditure of reasonable sums to fund the relief required by the

judgment.  The duties imposed by this mandatory relief shall expire within four years of

the date from the judgment, except for the prohibitory injunction which has no time

limitation.

The judgment must also include a directive that, if Nassau County announces the sale of

the Social Services Site within one year of the date of the judgment, then Garden City shall begin

the process of rezoning the Social Service Site from R-T to R-M controls.  If Nassau County

does not make such an announcement, Garden City shall also be required, as described herein, to (1) join the Nassau County Urban Consortium and (2) enforce certain affordable housing requirements for new developers in Garden City. The duties and obligations imposed by this conditional relief shall expire within five years from the date of the judgment.

Finally, as previously stated, the judgment shall also include, a date for the Plaintiffs to move for attorneys' fees and the retention of jurisdiction by this Court.


**SO ORDERED.**
Dated: Central Islip, New York
March 17, 2014

_Arthur D. Spatt_

ARTHUR D. SPATT
United States District Judge