UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MHANY MANAGEMENT INC., *et al.,*

                           Plaintiffs,                          **ORDER**
                                                    CV 05-2301 (ADS)(ARL)
         -against-

COUNTY OF NASSAU, et al.,

                           Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

Presently before the Court, on referral for all purpose from District Judge Spatt, are the

Renewed and Supplemental Motions for Attorneys' Fees and Costs by Mhany Management Inc.

and New York Communities for Change, Inc. ("NYCC") (collectively "Plaintiffs") pursuant to

42 U.S.C. § 1988(b) and 42 U.S.C. § 3613(c)(2).   For the reasons set forth below, the Court

Orders that Plaintiffs be awarded $5,089,525.59 in attorneys' fees and $183,425.74 in costs, for a

total award of $5,272,951.35.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case and only

includes those facts that are necessary for resolution the instant motion.

### I.      The Present Motion

Plaintiffs brought this civil rights action against defendants the County of Nassau (the

"County"), the Incorporated Village of Garden City, and the Garden City Board of Trustees

(together with the Incorporated Village of Garden City, the "Garden City Defendants").

Plaintiffs were seeking injunctive and declaratory relief, costs and attorneys' fees.   By

Memorandum and Order dated February 15, 2012, Judge Spatt granted the County's motion for summary judgment dismissing all claims against it; denied the Garden City Defendants' motion for summary judgment and granted NYCC's motion to amend.   ECF No. 315.   Judge Spatt conducted an 11-day trial commencing on June 17, 2013.   In a Memorandum and Order dated December 6, 2013, the Court concluded that Plaintiffs had established the liability of the Garden City Defendants under (1) the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. (the "FHA") based theories of disparate treatment and disparate impact; (2) 42 U.S.C. §1981; (3) 42 U.S.C. §1983; and (4) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.   ECF No. 413.   The appropriate remedy was the subject of much debate and, on April 22, 2014, the Court entered a detailed final judgment providing, *inter alia*, pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), Plaintiffs had fourteen days from the date of the judgment to file a petition for attorneys' fees and costs.   ECF No. 431, at 10.   On May 5, 2014, the Garden City Defendants appealed the final judgment to the Second Circuit.   ECF No. 436. Plaintiffs appealed the Court's dismissal of the County on May 16, 2014.   ECF No. 446.

Plaintiffs filed their first motion for attorneys' fees on May 15, 2014 ("Initial Application").   ECF No. 438.   By Order dated September 11, 2014, Judge Spatt granted the Garden City Defendants' motion to defer ruling on the motion for attorneys' fees until after the Second Circuit ruled on the parties' cross appeals.   ECF No. 468.   On July 28, 2016, the Second Circuit affirmed, in part, and vacated, in part, the final judgment, and, remanded the case for further proceedings.   ECF No. 499.   The Second Circuit upheld Judge Spatt's ruling that Plaintiffs had standing, the case was not moot and that Plaintiffs had demonstrated that the Garden City's zoning change was the result of intentional discrimination.   *See MHANY Mgmt.,*

2

*Inc. v. Cty. Of Nassau*, 819 F.3d 581, 624 (2d Cir. 2016).   The Second Circuit remanded Judge

Spatt's disparate impact holding with instructions that the Court determine whether Plaintiffs

proved at trial that the "substantial legitimate, non-discriminatory interests" proffered by Garden

City in support of its zoning shift "could be served by another practice that has a less

discriminatory effect."   24 C.F.R. § 100.500(c)(3).   Following a round of briefing, the Court

affirmed the Garden City Defendants' liability under a disparate impact theory.   ECF No. 550.

The Second Circuit also vacated Judge Spatt's grant of summary judgment to the County on

Plaintiffs' "steering" claims under Section 804(a) of the FHA and Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000d.   *Mhany Mgmt.*, 819 F.3d at 624.

Plaintiffs renewed their motion for attorneys' fees on December 8, 2018.   ECF No. 562.

By Order dated January 23, 2018, Judge Spatt denied Plaintiffs' motion for initial attorneys'

fees, noting that "[]he Court sees no reason as to why it should waste judicial resources and

consider two separate motions for attorneys' fees months apart."   ECF No. 575.   The Court

terminated Plaintiffs' motion with leave to renew their motion for initial attorneys' fees when

filing their motion for supplemental attorneys' fees.   *Id.*   Plaintiffs filed their renewed motion

for attorneys' fees on March 23, 2018, containing the request for initial attorneys' fees as well as

supplemental attorneys' fees ("Supplemental Application").   ECF No. 581.   By Order dated

March 26, 2018, Judge Spatt referred the matter to the undersigned for all purposes.

**II.    Details Regarding the Fee Dispute**

    **A.    Plaintiffs' Motion for Fees**

3

In the Initial Application, Plaintiffs requested attorneys' fees in the amount of $5,363,550.50[1] and costs of $204,566.72.   In the Supplemental Application, Plaintiffs requested supplemental attorneys' fees in the amount of $1,131,277.50.[2]   Plaintiffs also requested costs in the amount of $25,334.94.   Thus, total attorneys' fees sought equal $6,494,828.00 and total costs equal $229,901.66, for a grand total of $6,724,729.66.

### 1.    Plaintiffs' Counsel

Over the entirety of this action, Plaintiffs have been represented by three separate law firms -- Hogan Lovells US LLP ("Hogan Lovells"), the Lawyers' Committee for Civil Rights Under Law ("LCCRUL") and the Law Offices of Frederick K. Brewington ("Brewington"). In support of its fee application, Plaintiffs rely upon the following declarations and attached contemporaneous time records and invoices:

- Declaration of Stanley J. Brown, member of the law firm Hogan Lovells, dated May 15, 2014 ("Brown 2014 Decl.");

- Declaration of Joseph D. Rich, co-founder of the Fair Housing and Community Development Project at LCCRUL, dated May 13, 2014 ("Rich 2014 Decl.");

- Declaration of Frederick K. Brewington, principal in the law Offices of Frederick K. Brewington, dated May 14, 2014 ("Brewington 2014 Decl.");

---

[1] This amount reflects the reductions in attorney hours set forth in Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Pl. Reply") at 10.   ECF 462.   As discussed in detail below, Plaintiffs agreed to a reduction in hours in response to issues raised by Defendants' expert.

[2] This amount reflects the reductions in attorney hours set forth in Plaintiffs' Reply Memorandum of Law In Further Support of Their Renewed Initial Fee Motion and Supplemental Fee Motion ("Pl. Supp. Reply") at 10.   ECF 592.   As discussed in detail below, Plaintiffs agreed to a reduction in hours in response to issues raised by Defendants' expert.

- Reply Declaration of Benjamin A. Fleming, attorney at the law firm of Hogan Lovells, In Further Support of Plaintiffs' Motion for Attorneys' Fees and Costs, dated September 3, 2014 ("Fleming 2014 Reply Decl.");

- Supplemental Declaration of Stanley J. Brown, member of the law firm Hogan Lovells, dated March 23, 2018 ("Brown 2018 Decl.");

- Supplemental Declaration of Joseph D. Rich, co-director of the Fair Housing and Community Development Project at LCCRUL, dated March 20, 2018 ("Rich 2018 Decl.");

- Declaration of Frederick K. Brewington, principal in the law Offices of Frederick K. Brewington, dated March 19, 2018 ("Brewington 2018 Decl.");

- Reply Declaration of Benjamin A. Fleming, attorney at the law firm of Hogan Lovells, In Further Support of Plaintiffs' Renewed Initial Fee Motion and Supplemental Fee Motion, dated May 11, 2018 ("Fleming 2018 Reply Decl.").

### 2.  Hogan Lovells

Hogan Lovells has represented the current Plaintiffs, and former Plaintiffs in this litigation from the outset on a pro bono basis.   Brown 2014 Decl. at ¶ 8.   Hogan Lovells is an international law firm, formed in 2010 by the merger of Washington D.C. based Hogan & Hartson and London based Lovells.   Hogan Lovells has offices in 49 cities and employs approximately 2,700 attorneys.   *See* Rich 2014 Decl. ¶ 48; hoganlovells.com.   This matter was handled by the firm's New York office, located in the Southern District of New York.   *See* Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Pl. Initial Mem.") at 5.

5

### a.   Timesheets and Hours Billed

In the Initial Application, Hogan Lovells is seeking attorneys' fees based upon 14,278 hours of work by Hogan Lovells' attorneys and 1,121 hours of work by the firm's paralegal and other staff.   Brown 2014 Decl. ¶ 25.   In the Supplemental Application, Hogan Lovells is seeking attorneys' fees based upon approximately 2,422 hours of work by Hogan Lovells attorneys and 64 hours of work by paralegals and other staff.   Brown 2018 Decl. ¶ 30.   To support these requests, Hogan Lovells has submitted contemporaneous time records for work performed over the course of the litigation.   Brown 2014 Decl. ¶ 25; Brown 2018 Decl. ¶ 30. Hogan Lovells seeks an award of attorneys' fees for the work of over 30 different attorneys and six paralegals.

### b.   Adjustments to Hours Billed

After Hogan Lovells determined the total number of hours expended on this case in the Initial Application, it made the following adjustments to the number of hours spent litigating the case: (1) isolated and eliminated time specifically associated with claims against the County; (2) reduced all time entries prior to February 15, 2012[3] by one-third to reflect potential work associated with claims against the County; (3) eliminated time of any attorney who recorded fewer than 90 hours on the litigation; (4) removed all time spent on the matter by summer associates and summer interns; (5) eliminated time entries where the narrative description of the work was not sufficiently detailed; (6) eliminated time entries where the time appeared more than was appropriate to the task; (7) eliminated time entries that appeared duplicative; (8)

---

[3] This is the date Judge Spatt dismissed all claims against the County.   *See* ECF 315.

reduced the time billed by attorneys that were newly assigned to the case; (9) eliminated time spent by attorneys, paralegals or other staff on work solely related to file maintenance; and (10) identified travel time and reduce it by half.   Brown 2014 Decl. ¶¶ 30-39. As a result of these adjustments, Hogan Lovells removed 6,200 attorney hours and 2,800 paralegal hours resulting in a reduction of the fees requested of $2,352,391.   *Id*. at ¶¶ 27-28.

In addition, in response to objections raised by Defendants' expert, Plaintiffs removed 209.78 hours from their Initial Application, all of which in some way involved County-related issues.   Fleming 2014 Reply Decl. ¶ 11.   Plaintiffs also removed 47.17 hours from the Initial Application for media related activities.   *Id.* at ¶ 14.

In the Supplemental Application, Hogan Lovells also adjusted attorney hours in the manner described above.   Brown 2018 Decl. ¶¶ 33-42. As a result of these adjustments to the fees requested in the Supplemental Application, Hogan Lovells removed 575 attorney hours and 303 paralegal hours.   *Id*. at ¶ 31.

c.   **Rates**

Hogan Lovells seeks compensation at the following hourly rates: (1) $650 per hour for Attorney Feinberg (with 41 years of experience); (2) $475 per hour for all other Hogan Lovells' partners; (3) $325 per hour for all Hogan Lovells' associates; and (4) $150 per hour for paralegals.   Brown 2014 Decl. ¶ 44; Brown 2018 Decl. ¶ 46.   Hogan Lovells is proposing a bi-level "blended" rate be applied over the span of the litigation to all firm attorneys.   As proposed by Hogan Lovells in this matter, all partner level work with the exception of Attorney Feinberg, regardless of experience level, shall be compensated at $475 per hour and all associate work, regardless of years of practice, shall be compensated at a rate of $325 per hour.   *Id*. at ¶ 47.

7

### 3.  LCCRUL

LCCRUL is a nonprofit organization established in 1963 at the request of President John F. Kennedy.   Rich 2014 Decl. ¶ 2.   The mission of LCCRUL is to secure equal justice under law for those most vulnerable to discrimination in the United States.   *Id*.   LLCRUL represents clients in civil rights litigation in various subject areas, including housing, employment, voting and education.   *Id*.   LCCRUL typically requires the assistance of pro bono resources of the private bar in litigating high impact and complex litigations.   *Id*.   As a tax-exempt, non-profit civil rights organization LCCRUL does not bill its clients for its legal services, but when seeking fees under the civil rights statutes, LCCRUL typically uses the rates set forth in the Laffey Matrix, a document prepared by the U.S. Attorney's office of the District of Columbia.   *See* Rich 2014 Decl. ¶ 19.

LCCRUL was first contacted about representing Plaintiffs in this matter in 2004 by a representative of the Fair Housing Justice Center, after Brewington had indicated it lacked the necessary resources to pursue the matter independently.   Reply Declaration of Joseph D. Rich, dated September 2, 2014 ("Rich 2014 Reply Decl.") ¶ 4.   LCCRUL agreed to represent Plaintiffs in early 2005 and circulated a notice to law firms that typically provide assistance to LCCRUL seeking pro bono assistance.   *Id*. at ¶ 6.   LCCRUL had considerable difficulty in obtaining pro bono assistance from the firms it contacted.   In addition to distributing notice to firms on its list, LCCRUL counsel personally contacted 20 firms located in New York seeking assistance.   All declined.   *Id*. at ¶ 7.   Finally, the LCCRUL executive director stepped in and made a series of phone calls in an effort to personally appeal to several firms, urging them to agree to provide assistance.   *Id*. at ¶ 8.   In April 2005, Hogan & Hartson, predecessor to Hogan

Lovells, finally agreed to provide assistance to LCCRUL in connection with this matter on a pro bono basis.  *Id*. at ¶ 9.

### a.  Timesheets and Hours Billed

In the Initial Application, LCCRUL is seeking attorneys' fees based upon 2,440.25 hours of work by LCCRUL attorneys.   Rich 2014 Decl. ¶ 26.   In the Supplemental Application, LCCRUL is seeking attorneys' fees based upon approximately 355.7 hours of work by LCCRUL.   Rich 2018 Decl. ¶ 13.   To support these requests, LCCRUL has submitted contemporaneous time records prepared using a program called Business Portal from 2009-2018. Rich 2014 Decl. ¶ 17; Rich 2018 Decl. ¶ 12.   Prior to 2009, LCCRUL attorneys maintained time records using a different program -- Time Matters.   *Id*. at ¶ 18.   In the transition from the Time Matters program to the Business Portal program in 2009, many of the time records were inadvertently lost, and therefore attorney time from that period is not included in the Initial Application.  *Id.*

### b.  Adjustment to Hours Billed

LCCRUL made the following adjustments to the number of hours spent litigating the case to reflect its billing judgment: (1) eliminated the hours of the following attorneys because of the loss of time records prior to 2009: Attorneys Hooks, Wiggins, Birch and Rich; (2) eliminated time of any attorney who recorded fewer than 50 hours on the litigation; (3) eliminated any time that could be identified as pertaining solely to issues concerning the County and reduced all time entries prior to February 15, 2012 by one-third to reflect potential work associated with claims against the County; (5) eliminated time entries where the narrative description of the work was not sufficiently detailed; (7) eliminated time entries that appeared duplicative or the work

9

appeared administrative in nature; and (10) identified travel time and reduced it by half.   Rich 2014 Decl. ¶ 24.    Thus, in addition to not claiming any time for the period from 2004-2009 (other than for one associate, whose time records were not lost), LCCRUL excluded an additional 1,097 hours of the total of 3,211 hours worked on the case.   Rich 2014 Decl. ¶25.

In the Supplemental Application, LCCRUL adjusted attorney hours as follows: (1) eliminated any time identified as relating to claims against the County; (2) reduced the number of hours spent working on the appeal and cross appeal in this case by one-third to reflect work for the County; (3) reduced travel time by one-half; (4) eliminated time devoted to press work; and (5) eliminated all time entries by summer associates or interns.   Rich 2018 Decl. ¶ 12. These adjustments resulted in a reduction of 589.8 hours.   *Id.*

### c.  Rates

LCCRUL seeks compensation for partner level work at $ 475 per hour, counsel at $325 per hour and associates ranging from $325-$250, depending upon years of practice.   Although LCCRUL does not charge clients for its work, LCCRUL determines the hourly rates charges by referring to the Laffey Index described above and also assessing "the rates charged by private attorneys in the relevant market based on the prevailing rates charged by attorneys of similar experience, reputation and skill."   Rich 2014 Decl. ¶ 20

### 4.  Brewington

Frederick K. Brewington graduated from Northeastern University School of Law in 1982 and has owned his own practice in the Eastern District of New York since 1987.   *See Cruz v. Henry Modell & Co.,* No. CV 05-1450 (AKT), 2008 U.S. Dist. LEXIS 25339 (Mar. 31, 2008). Brewington was initially contacted by Plaintiffs in this matter to represent them, however,

Attorney Brewington indicated that he and his firm did not have adequate resources to handle a

case of this magnitude and complexity by itself.   Rich 2014 Reply Decl. ¶ 4; Reply Declaration

of Frederick K. Brewington, dated September 1, 2014 ("Brewington 2014 Reply Decl.") ¶ 3.   In

addition, Brewington advised Plaintiffs that there was a need for outside assistance on this

matter.   *Id.*   As a practioner on Long Island in the area of civil rights for the past 25 years,

Attorney Brewington was well acquainted with the major law firms on Long Island and advised

that all would either have a conflict or be unwilling to face the potential political fallout from

agreeing to proceed against the Village of Garden City and the County.   *Id*. at ¶¶5-14.

Brewington ultimately served as local counsel to Hogan Lovells and LCCRUL in this action.

Rich 2014 Decl. ¶ 4.

### a.   Timesheets and Hours Billed

In the Initial Application, Brewington is seeking attorneys' fees based upon 435 hours of

work by Brewington attorneys.   Brewington 2014 Decl. ¶ 1.   In the Supplemental Application,

Brewington is seeking attorneys' fees based upon approximately 89.7 hours of work by

Brewington attorneys.   Brewington 2018 Decl. ¶ 18.   To support these requests, Brewington

has submitted contemporaneous time records for worked performed over the course of the

litigation.   Brewington 2014 Decl. ¶ 3; Brewington 2018 Decl. ¶ 2.   Attorney time records are

entered weekly into a computerized billing system by Brewington billing staff.   Brewington

2014 Decl. ¶ 3.

### b.   Adjustment to Hours Billed

After Brewington determined the total number of hours expended on this case in the

Initial Application, it made the following adjustments to reflect the number of hours spent

11

litigating the case: (1) eliminated time specifically associated with claims against the County; and (2) removed all time entries for attorneys who performed fewer than 50 hours of work on this matter.   Brewington 2014 Decl. ¶1.   No adjustments were made to the hours requested by the Supplemental Application.

### 5.  Plaintiffs' Expert

Plaintiffs also submit the declaration of Randolph M. McLaughlin in support of the Initial Application.   *See* Declaration of Randolph M. McLaughlin, tenured professor at Pace University School of Law, dated May 14, 2014 ("McLaughlin Decl.").   ECF 443.   Mr. McLaughlin was retained by Plaintiffs to render an expert opinion with regard to Plaintiffs' motion for fees.   *Id.*  Mr. McLaughlin is a licensed attorney in the State of New York, a tenured professor of law at Pace University School of Law, and of counsel to the law firm Newman Ferrera LLP and co-chair of the firm's civil rights practice.   *Id.* ¶ 2.   After having reviewed the procedural history of this case, including the pleadings, motions and decisions of the Court, and having examined the time records maintained by Plaintiffs and the relevant case law on reasonable hourly rates and reasonable compensable hours, Mr. McLaughlin concluded that the fees sought herein were reasonable.   *Id*. at ¶¶ 17, 18.

### B.  Defendants' Objections

In opposition to the Initial Application, Defendants raise several objections, including: (1) Plaintiffs' fee request is unreasonable in light of the relief ultimately awarded to Plaintiffs; (2) the billing rates Plaintiffs propose are unreasonable; (3) Plaintiffs' attorney fee request should be reduced further due to unsuccessful claims against the County and under Section 1862; (4) the hours expended were excessive and duplicative; (5) many of the billing entries are presented in

block billing format (lumping two or more tasks into a single billing entry); and (6) the fee

request should be reduced due to inappropriate billing.   Defendants Incorporated Village of

Garden City and the Garden City Board of Trustees Memorandum In Opposition To Plaintiffs'

Application For Attorneys' Fees And Costs ("Def. Initial Opp."), ECF 453.   Defendants also

object to the fee request in the Supplemental Application on the grounds that (1) Plaintiffs cannot

recover for monitoring efforts and any such recovery must be reduced as improper and

duplicative of the duties of the Fair Housing Compliance Officer (" FHCO"); (2) the hours

expended were duplicative and the matter was overstaffed; (3) block billing and vague entries

warrant a reduction in fees; (4) Plaintiffs continue to improperly charge the Garden City

Defendants for work done in connection with the claims against the County; and (5) the billing

rates Plaintiffs propose are unreasonable in this District .   Defendants Incorporated Village of

Garden City and the Garden City Board of Trustees' Memorandum of Law in Opposition to

Plaintiffs' Renewed Initial Fee Motion and Supplemental Fee Motion ("Def. Opp. To Renewed

Motion"), ECF 590.   In support of its objections, Defendants proffer, *inter alia*, two

Declarations of Judith Bronsther, an attorney and president of Accountability Services, Inc. who

was retained by Defendants to analyze the fees and costs claimed by Plaintiffs.   ECF 452, 589.

Ms. Bronsther concludes that much of the total sum of $5,639,692.97 sought by Plaintiffs, in fees

was either not necessary or not reasonably incurred in the prosecution of this action.   ECF 453

at 1.     Ms. Bronsther concludes that Plaintiffs' fee award should be reduced to $2,319,124.11.

*Id.*   Declaration of Judith Bronsther, president of Accountability Services, Inc., dated July 1,

2014 ("Bronsther 2014 Decl."); Declaration of Judith Bronsther, president of Accountability

Services, Inc, dated April 26, 2018 ("Bronsther 2018 Decl.");

13

## DISCUSSION

### I.    Applicable Standard

"In the United States, parties are ordinarily required to bear their own attorney's fees"

unless Congress has authorized the award of attorney's fees to the prevailing party in a statute.

*Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. of Health & Human Res.,* 532 U.S.

598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).   42 U.S.C. § 1988(b) is such a statute.   It

provides that:

> In any action or proceeding to enforce a provision of [Section 1983] . . . the court,
> in its discretion, may allow the prevailing party . . . a reasonable attorneys' fee as
> part of the costs.

42 U.S.C. § 1988(b).   "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney

to undertake the representation of a meritorious civil rights case."   *Perdue v. Kenny A. ex rel.*

*Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010).   Additionally, the fee-

shifting provision of the FHA authorizes an award of attorneys' fees and costs to the prevailing

party to ensure that federal rights are enforced.   *See* 42 U.S.C. § 3613(c)(2); *Hensley v.*

*Eckerhart*, 461 U.S. 424, 429 (1983) (noting that in civil rights actions, "a prevailing plaintiff

should ordinarily recover an attorney's fee unless special circumstances would render such an

award unjust") (citations and internal quotation marks omitted).   Here, the Garden City

Defendants do not dispute that Plaintiffs are the prevailing parties in this action.

The Supreme Court has emphasized that the "determination of fees should not result in a

second major litigation.   The fee applicant . . . must, of course, submit appropriate

documentation to meet the burden of establishing entitlement to an award.   But trial courts need

not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826,

838, 131 S. Ct. 2205, 180 L. Ed.2d 45 (2011) (internal quotation marks and citations omitted);

*see also Hensley*, 461 U.S. at 437 (holding that "[a] request for attorney's fees should not result

in a second major litigation.   Ideally, of course, litigants will settle the amount of the fee").

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing

perfection.   So, trial courts may take into account their overall sense of a suit, and may use

estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

Where a party is entitled to fees, the district court calculates the "presumptively

reasonable fee" by the "lodestar" method, which entails determining the "number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461

U.S. at 433; *see also Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011)

("Both this Court and the Supreme Court have held that the lodestar – the product of a

reasonable hourly rate and the reasonable number of hours required by the case – creates a

'presumptively reasonable fee.'") (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and citing *Perdue*, 559 U.S. 542).   In

*Arbor Hill*, the Second Circuit held that in calculating a "presumptively reasonable fee," courts

must consider a multitude of case-specific factors in order to establish a reasonable hourly rate

that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the

number of hours reasonably spent on the case.   522 F.3d at 184, 190-91.   These factors include

"complexity and difficulty of the case, the available expertise and capacity of the client's other

counsel (if any), the resources required to prosecute the case effectively[,] the timing demands of

the case, [and] whether an attorney might have an interest in achieving the ends of the litigation

15

or might initiate the representation himself," *id.* at 184 – as well as the twelve factors the Fifth

Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).   The

*Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the

questions involved; (3) the skill required to properly perform the relevant services; (4) the

preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary

fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or

the circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and

length of the professional relationship with the client; and (12) fee awards in similar cases.   488

F.2d at 717-19.[4]   The Supreme Court has repeatedly stated that "'the most critical factor' in

determining the reasonableness of a fee award 'is the degree of success obtained.'"   *Farrar v.*

*Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436).

Fee awards should "generally be documented by contemporaneously created time records

that specify, for each attorney, the date, the hours expended, and the nature of the work done."

*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *see also Toussie v. County of*

*Suffolk*, No. 01-CV-6716, 2012 U.S. Dist. LEXIS 127143, 2012 WL 3860760, at *5 (E.D.N.Y.

Sept. 6, 2010) ("The party seeking attorney's fees 'bears the burden of establishing entitlement to

an award,' and '[t]he applicant should exercise billing judgment' with respect to hours worked

and should maintain billing time records in a manner that will enable a reviewing court to

---

[4] Although the *Perdue* decision cast doubt on the usefulness of the *Johnson* factors as a
methodology for determining attorneys' fees, 559 U.S. at 551, reference to the *Johnson* factors is
still useful in calculating a presumptively reasonable fee in this Circuit.   *See Echevarria v.*
*Insight Med., P.C.*, 102 F. Supp. 3d 511, 515 n.2 (S.D.N.Y. Apr. 29, 2015).

identify distinct claims") (quoting *Hensley*, 461 U.S. at 437).   "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S. Ct. 1933, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application'."   *Kirsch*, 148 F.3d at 173 (quoting *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Toussie*, 2012 WL 3860760, at *5 ("Counsel for the party seeking fees must 'make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary,' and failure to do so can result in denial of fees altogether")(citation omitted).   A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were "based on different facts and different legal theories."   *Hensley*, 461 U.S. at 434.

## II.   Analysis

Plaintiffs seek attorneys' fees in the amount of $6,494,828.00 and costs of $229,891.66. This amount includes fees requested for work performed by attorneys and staff at Hogan Lovells, LCCRUL and Brewington.   This matter has been litigated for 13 years, with two motions to dismiss and for summary judgment, 27 fact depositions, four expert depositions, multiple discovery motions and appeals of discovery motions, settlement and mediation attempts, an eleven-day trial, appeals and cross appeals.   There are over 600 entries on the docket sheet for this matter.

### A.   Attorneys' Fees

17

### 1.     Reasonable Hourly Rates

To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.    A reasonable hourly rate is typically determined using the forum rule.   *See Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 644, 199 L. Ed. 2d 528 (2018).   Under the forum rule, the Court is guided by the hourly rates normally employed by lawyers with comparable skill, experience and reputation in this district.   *Moore v. Diversified Collection Servs., Inc.*, No. 07-CV-397, 2013 U.S. Dist. LEXIS 56246, 2013 WL 1622949, at *2 (E.D.N.Y. Mar. 19, 2013), *report and recommendation adopted by*, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); *Mary Jo C. v. Dinapoli*, No. 09-CV-5635, 2014 WL 7334863, at *4 (E.D.N.Y. Dec. 18, 2014).   The prevailing approach is that "'current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.'"   *Moore*, 2013 WL 1622949, at *3 (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) and citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)).   The reasonable hourly rate is the rate "a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184.

"[I]n order to receive an attorney's fee award based on higher out-of-district rates, a litigant must overcome a presumption in favor of the forum rule, by persuasively establishing that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. N.Y. City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009).   "Indeed, the 'touchstone' of the forum rule doctrine, as well as for awarding attorneys' fees in civil rights cases, is that 'district courts should award fees just high enough to attract competent counsel.'"   *Restivo*, 846 F.3d at 590 (quoting *Simmons*,

18

575 F.3d at 176).   "[T]o rebut the presumption that the forum rule applies, the party seeking

higher fees 'must make a particularized showing, not only that the selection of out-of-district

counsel was predicated on experience-based, objective factors, but also of the likelihood that use

of in-district counsel would produce a substantially inferior result.'" *Id*.; *Kindle v. Dejana*, 308 F.

Supp. 3d 698, 704 (E.D.N.Y. 2018) ("the forum rule's presumption concerning the range of

reasonable rates within the district 'may be rebutted—albeit only in the unusual case—if the

party wishing the district court to use a higher rate demonstrates that his or her retention of an

out-of-district attorney was reasonable under the circumstances as they would be reckoned by a

client paying the attorney's bill'") (quoting *Arbor Hill*, 522 F.3d at 191).   Relevant factors

include whether counsel has "special expertise in litigating the particular type of case, if the case

is of such nature as to benefit from special expertise," whether any "in-district counsel possessed

such expertise," and whether "local counsel possessing requisite experience were unwilling or

unable to take the case." *Id*. at 175-76.

Plaintiffs argue that the forum rule should not be applied in the case because this case

"was complex both factually and legally" and "prosecuting this case successfully has required

very significant resources, and – given that Plaintiffs are non-profit organizations – has required

attorneys who were willing to assume a long-term and significant commitment pro bono."   Pl.

Initial Mem. at 6.   According to Plaintiffs, selection of out-of-district counsel was not only

desirable but essential since no other firm was in the position to expend the resources necessary.

*Id.* at 7.   To support this position, Plaintiffs rely on the testimony of Attorney Rich indicating

that his firm had a difficult time finding a firm willing to take on this matter pro bono.   Rich

2014 Reply Decl. ¶ 7.   Further support is provided by the testimony of Attorney Brewington

indicating his firm was initially approached to handle this matter, but he was forced to decline because his firm lacked the resources to handle a matter this large on its own.   Brewington 2014 Reply Decl. ¶ 3; Rich 2014 Reply Decl. at ¶ 4.   Additionally, according to Brewington, the larger firms in the Eastern District of New York, who may have had the resources available to litigate this matter were not in in position to take it on either due to conflicts or fear of political fallout.   Brewington 2014 Reply Decl. ¶¶ 5-15.

According to Defendants, Plaintiffs' counsel have failed to counter the presumption of the forum rule, because Plaintiffs offer no explanation "as to why the additional retention of Hogan Lovells was necessary, in light of the many highly capable large to mid-size firms located in the Eastern District, or why the LCCRUL, located in Washington D.C. was retained instead of a similar organization located in the eastern District of New York."   Def. Opp. To Renewed Motion at 21.   However, Plaintiffs have offered an explanation for both of these selections, an explanation conveniently ignored by Defendants.   First, Attorney Brewington testified he was approached first regarding possible representation in this matter and turned down the business because his firm lacked the interest to handle a litigation of this size.   Brewington 2014 Reply Decl. ¶ 3.   Second, it appears the larger firms on Long Island had conflicts or lacked the resources to litigate a matter this size.   *Id.*   Next, even among New York City firms it was difficult to find a firm willing to invest the resources necessary to handle this matter pro bono. Rich 2014 Reply Decl. ¶ 7.   Finally, similar public interest firms in the Eastern District of New York such as Long Island Housing Services and ERASE Racism, were newly formed and lacked the resources and experience necessary to litigate this action.   Brewington 2014 Reply Decl. ¶¶ 17-19.   These factors weigh in favor of awarding out-of-district rates because "a 'reasonable' fee

20

is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue,* 559 U.S. at 552.

Defendants also contend that, while Attorneys Rich and Brewington are experienced in the civil rights area, the attorneys at Hogan Lovells lack such experience and thus, a departure for the standard fees in the Eastern District is not warranted.   This Court does not agree.   Hogan Lovells is a well-known and respected firm experienced at litigating complex matters.   The staffing resources and litigation expertise available at a firm the size of Hogan Lovells provided Plaintiffs the optimal combination.   In light of the contentious nature of this litigation it is likely that without the resources available at Hogan Lovells Plaintiffs would have achieved an inferior result.   *See Restivo,* 846 F.3d at 590.

Absent a departure from the forum rule, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $300 to $450 for partners in law firms, $200 to $325 for senior associates, and $100 to $200 for junior associates.   *See Castcapa Constr., LLC v. TMB Servs., L.L.C,* No. 17-CV-1023 (NGG) (SJB), 2018 U.S. Dist. LEXIS 14833, 2018 WL 623546 (E.D.N.Y. Jan. 30, 2018) (Junior associates are "typically compensated at between $100 to $200 per hour"); *Thomas v. City of New York*, No. 14 CV 7513, 2017 U.S. Dist. LEXIS 199235, 2017 WL 6033532, at *5 (E.D.N.Y. Dec. 1, 2017) ("An hourly rate of $450 remains within the range of rates found reasonable for partners with twenty or more years of experience in this District."); *Smart v. City of New York*, No. 15 CV 1405, 2017 U.S. Dist. LEXIS 24602, 2017 WL 933080, at *3 (E.D.N.Y. Feb. 17, 2017) ("In recent years, fees have been awarded in the Eastern District of New York at an hourly rate of $300 to $450 for partners and $100 to $325 for associates in civil rights cases."), *report and recommendation adopted*,

21

2017 U.S. Dist. LEXIS 33221, 2017 WL 928472 (E.D.N.Y. Mar. 8, 2017).   With respect to

work done by paralegals and other non-attorneys, courts in this district have awarded rates

between $70 and $100 per hour.   *See Castcapa Constr*, 2018 U.S. Dist. LEXIS 14833; *Thomas*,

2017 U.S. Dist. LEXIS 199235 at *6; *Advantedge Corp. v. Krajicek*, No. 16 CV 1643

(WFK)(RML), 2017 U.S. Dist. LEXIS 218709 at * 10 (E.D.N.Y. Oct. 2, 2017).

Upon consideration of all of the factors prescribed by the Second Circuit, including those

identified in *Johnson*, and recognizing the significant results Plaintiffs' counsel achieved for

their clients after many years of litigation combined with the difficulty faced by Plaintiffs in

identifying counsel to handle this protracted matter on a pro bono basis the Court finds in some

instances a departure from the prevailing rates in the Eastern District has been justified.

Nonetheless, certain of the rates sought by Plaintiffs' counsel are not consistent with the rates

awarded in this District and a departure is not warranted.   A detailed analysis of the rates

awarded is below.

Hogan Lovells Attorneys

| ATTORNEY | GRAD. LAW SCHOOL | YEARS ON MATTER | RATE REQUESTED | RATE AWARDED | HOURS REQUESTED[5] | TOTAL FEES |
|---|---|---|---|---|---|---|
| | | | | | | |

[5] To the extent that an attorney is listed in both the Initial Application and the Supplemental Application the hours listed in this chart reflect the total hours billed as adjusted by the two Fleming Reply Declarations, which reduced the number of hours requested in Plaintiffs' Initial Application and Supplemental Application to address concerns raised by Defendants' expert and correct errors in removing hours.

| Feinberg | 1972 | 2014-2018 | $650 | $625 | 314.5 | $196,562.50 |
|---|---|---|---|---|---|---|
| Brown | 1969 | 2005-2018 | $475 | $475 | 1,719.68 | $816,848.00 |
| Sweeney | 1992 | | $475 | $400 | 673.5 | $269,400.00 |
| Donofrio | | | $325 | $100 | 194 | $19,400.00 |
| Dennin[6] | 2002 | 2005-2015 | $475/325 | $400/300 | 517.6/586.1 | $382,870.00 |
| Robertson | 2000 | 2005-2010 | $325 | $300 | 253.34 | $76,002.00 |
| Brandenburg | 2006 | | $325 | $300 | 116.5 | $34,950.00 |
| Borkin | 2006 | | $325 | $300 | 106 | $31,800.00 |
| Wasick | 1999 | 2006-2013 | $325 | $300 | 192.56 | $57,768.00 |
| Brandriss | 2008 | 2008-2018 | $325 | $300 | 2,455.3 | $736,590.00 |
| Garcia | 2008 | | $325 | $300 | 339.15 | $101,745.00 |
| Henriquez | 2008 | | $325 | $300 | 389.75 | $116,925.00 |
| Sein | 2008 | 2008-2011 2012-2014 | $325 | $300 | 1,288.91 | $386,673.00 |
| Cheng | 2010 | 2010-2015 | $325 | $300 | 585 | $175,500.00 |
| Cochet | 2005 | 2005-2011 | $325 | $300 | 626.03 | $187,809.00 |
| Smith | 2004 | 2005-2010 | $325 | $300 | 440.75 | $132,225.00 |
| Marton | 2009 | | $325 | $300 | 287.45 | $86,235.00 |
| Mobassaleh | 2005 | | $325 | $300 | 222.25 | $66,675.00 |
| Bridges | 2002 | 2005-2008 | $325 | $300 | 802.38 | $240,714.00 |
| Gove | 2002 | | $325 | $300 | 108 | $32,400.00 |
| Sakae | 2001 | 2004-2005 | $325 | $300 | 123 | $36,900.00 |
| Sleet | 2005 | | | $300 | 209 | $62,700.00 |
| Strangways | 2002 | 2008-2010 | $325 | $300 | 106.5 | $31,950.00 |
| Fleming | 2011 | 2011-2018 | $325 | $300 | 1253.2 | $375,960.00 |

---

[6] Worked on the matter as an associate and partner.   Requesting different billing rates for each.

23

| Reed | 2012 | 2012-2016 | $325 | $300 | 465.75 | $139,725.00 |
|---|---|---|---|---|---|---|
| Wilson | 2013 | 2013-2015 | $325 | $300 | 171.5 | $51,450.00 |
| Gregory | 2010 | 2010-2014 | $325 | $300 | 1,344.3 | $403,290.00 |
| Rabinowitz | 2010 | | $325 | $300 | 197.15 | $59,145.00 |
| Estes | 2008 | 2014 | $325 | $300 | 55 | $16,500.00 |
| MacElod | 2012 | 2013-2016 | $325 | $300 | 234.2 | $70,260.00 |
| Yamusah | 2016 | | $325 | $300 | 58 | $17,400.00 |
| Coppola | 2017 | 2017 | $325 | $300 | 54.7 | $16,410.00 |
| Sparks | para | | $150 | $150 | 156.5 | $23,475.00 |
| Schepp | para | | $150 | $150 | 72.7 | $10,905.00 |
| Masino | para | | $150 | $150 | 183.95 | $27,592.50 |
| Strickland | para | | $150 | $150 | 77.65 | $11,647.50 |
| Torres | para | | $150 | $150 | 485.6 | $72,840.00 |
| Lugo | Lit support | | $150 | $150 | 208.35 | $31,252.50 |
| **Total** | | | | | | $5,608,494.00 |
| **Less one-third portion of time before 2/15/12**[7] | | | | | | ($814,871.08) |
| | | | | | | $4,793,622.92 |

Hogan Lovells seeks the following hourly rates for its partners: $650 for Attorney

Feinberg, $475 for Attorney Brown, $475 for Attorney Sweeny and $475 for Attorney Dennin,

for the years he worked as a partner.   "The highest rates in this district are reserved for expert

trial attorneys with extensive experience before the federal bar, who specialize in the practice of

civil rights law and are recognized by their peers as leaders and experts in their fields."  *Medina*

*v. Donaldson*, No. 10 CIV. 5922 VMS, 2015 U.S. Dist. LEXIS 1217, 2015 WL 77430, at *6

(E.D.N.Y. Jan. 6, 2015).   However, the highest rates awarded in this district are "$400.00 to

---

[7] *See* Fleming 2014 Reply Decl., Schedule A.

$450.00 per hour for the most experienced trial attorneys." *Anderson v. Cty. of Suffolk*, CV 09-

1913 (GRB), 2016 U.S. Dist. LEXIS 48891, 2016 WL 1444594 (E.D.N.Y. Apr. 11, 2016); *see*

*also Solnin v. Sun Life & Health Ins. Co.,* 08-cv-2759 (DRH)(AYS), 2018 U.S. Dist. LEXIS

168047 at * 8 (E.D.N.Y. Sept. 28, 2018).   As set forth in the Brown Declarations, Attorneys

Feinberg and Brown both have significant trial and appellate experience which sets them apart

from other experienced litigators. Brown 2014 Decl. ¶ 49; Brown 2018 Decl. ¶ 50, 51.   Because

Plaintiffs have justified a departure from the forum rule for the attorneys at Hogan Lovells, the

reasonable rate for Attorney Feinberg shall be set at $625 and the reasonable rate for Attorney

Brown shall be set at $475 per hour.   With respect to Attorneys Sweeny and Dennin, both

significantly junior partners, a rate of $400 per hour (above what is typically awarded in the

Eastern District) is reasonable.

     Hogan Lovells has requested reimbursement for all associate hours at $325 per hour.

Brown 2014 Decl. ¶44.   This represents a "blended rate" for all associates.   *Id.*   The Second

Circuit has not endorsed the use of a blended rate.   *See, e.g., CIT Bank, N.A. v. Locastro,* No.

17-CV-1701 (AMD) (JO), 2018 U.S. Dist. LEXIS 131021 * 21 (E.D.N.Y. Aug. 2, 2018); *First*

*Keystone Consultants, Inc. v. Schlesinger Elec. Contrs., Inc.,* No. 10-CV-696(KAM)(SMG),

2013 U.S. Dist. LEXIS 34362 at * 21 (E.D.N.Y. Mar. 12, 2013); *see also McDonald ex rel.*

*Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98, 99 (2d Cir.

2006).   Nevertheless, district courts in this Circuit have awarded attorney's fees based on

blended rates in a number of cases involving law firms employing multiple attorneys, where

higher-and lower-billing attorneys worked together on a case.   *See, e.g.*, *Pig Newton, Inc. v. Bds.*

*of Dirs. of the Motion Picture Indus. Pension Plan*, No. 13 Civ. 7312 (KPF), 2016 U.S. Dist.

LEXIS 22395 (S.D.N.Y. Feb. 24, 2016); *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 U.S. Dist. LEXIS 34362, 2013 WL 950573, at *7 (E.D.N.Y. Mar. 12, 2013); *Jackson Hewitt, Inc. v. Excellent Prof'l Servs.*, LLC, No. 08CV5237 (JG)(RER), 2010 U.S. Dist. LEXIS 141055, 2010 WL 5665033, at *4 (E.D.N.Y. Nov. 8, 2010), *adopted*, 2011 U.S. Dist. LEXIS 8795, 2011 WL 317969 (E.D.N.Y. Jan. 31, 2011).   The use of a blended rate is appropriate in this circumstance, since 26 associates at all different levels worked on this matter over the course of 13 years.

The majority of the associates involved with this matter graduated from top law schools, many with honors, and have significant experience litigating complex matters.   Brown 2014 Decl. ¶¶ 52-58, schedule B; Brown 2018 Decl. ¶¶ 53-61.   None of the associates, however, have any particular experience in the civil rights area or other special expertise other than general experience handling complex litigation.   Nevertheless, in light of this Court's determination that Plaintiffs have rebutted the presumption that the forum rule applies, a blended rate of $300 is in line with hourly rates awarded in cases involving attorneys in the Southern District of New York. *See, e.g.*, *Raymond James & Assocs. v. Vanguard Funding, LLC*, No. 1:17-cv-03327 (VSB) (SDA), 2018 U.S. Dist. LEXIS 64896 at * 13 (S.D.N.Y. Apr. 16, 2018) (awarding $275 per hour for junior associates); *Euro Pac. Capital, Inc. v. Bohai Pharms. Grp., Inc.*, 15-CV-4410 (VM) (JLC), 2018 U.S. Dist. LEXIS 39135 at * 31, 2018 WL 1229842 (S.D.N.Y. Mar. 9, 2018) (awarding $250 per hour for associates with between one and eight years' experience); *Pig Newton*, 2016 U.S. Dist. LEXIS 22395 (awarding a blended rate of $385 – for partners and associates-in a common fund case); *Rubenstein v. Advanced Equities, Inc.*, No. 13-CV-1502 (PGG), 2015 U.S. Dist. LEXIS 16726, 2015 WL 585561, at *6-7 (S.D.N.Y. Feb. 10, 2015)

26

(finding hourly rate of $525 reasonable for partners with between 20 and 30 years' experience and "blended" rate of $350 reasonable for associates with experience ranging from one to nine years).

There is one exception, with respect to Attorney Donofrio, Hogan Lovells has failed to provide even that barest of support for the hourly rate requested and therefore Hogan Lovells has failed to carry their burden that even $300 an hour is a reasonable rate.   Accordingly, the Court will presume Attorney Donofrio has only minimal experience and will set the hourly rate for each at that of a junior associate in this district -- $100 per hour.   *See, e.g., Cruz v. Henry Modell & Co.,* No. CV 05-1450 (AKT), 2008 U.S. Dist. LEXIS 25339 (E.D.N.Y. Mar. 31, 2008) (awarding between $0 and $150 per hour for work of attorneys where "Plaintiff has not provided any supporting evidence as to the backgrounds and experience of these individuals or any evidence in support of the requested hourly rates for them").

As discussed above, the typical fee for non-attorneys in this district ranges from $70-$100.   In the Southern District of New York "the prevailing rate for paralegals is between $100 and $200 per hour." *TufAmerica Inc. v. Diamond,* No. 12-CV-3529 (AJN), 2016 U.S. Dist. LEXIS 30645, 2016 WL 1029553, at *6 (S.D.N.Y. Mar. 9, 2016); *see also Raymond James & Assocs. v. Vanguard Funding, LLC*, 2018 U.S. Dist. LEXIS 64896 (S.D.N.Y. Apr. 16, 2018) (the hourly rates for paralegals set at $125 per hour); *Euro Pac. Capital, Inc. v. Bohai Pharms. Grp., Inc*., 2018 U.S. Dist. LEXIS 39135 (S.D.N.Y. Mar. 9, 2018) (awarding paralegal and managing clerk $150 per hour).   Hogan Lovells requested hourly rate falls squarely in the middle of the range.   Non-attorneys shall be compensated at a rate of $150 per hour.

| LCCRUL Attorneys | | | | | | |
|---|---|---|---|---|---|---|
| ATTORNEY | GRAD. LAW SCHOOL | YEARS ON MATTER | RATE REQUESTED | RATE AWARDED | HOURS BILLED[8] | TOTAL FEES |
| Rich | 1968 | 2005-2014 | $475 | $475 | 1,347.47 | $640,048.25 |
| Mullenbach | 1979 | 2011-2012; 2014 | $475 | $475 | 134.61 | $63,939.75 |
| Martinson | 2008 | 2012-2014 | $325 | $325 | 484.65 | $157,511.25 |
| Shaforth | 2008 | 2009-2010 | $250 | $250 | 200.67 | $50,167.50 |
| Emeagwali | 2010 | 2010-2011 | $250 | $250 | 48.02 | $12,005.00 |
| DeSario | 2003 | 2005-2006 | $250 | $250 | 153.12 | $38,280.00 |
| Silverstein | 2013 | 2014-2018 | $325 | $325 | 53.4 | $17,225.00 |
| Crook | 2006 | 2014-2015 | $325 | $325 | 33.1 | $10,757.50 |
| **Total** | | | | | | $989,934.25 |

"A reasonable hourly rate 'does not depend on whether the attorney works at a private law firm or a public interest organization.'" *Eueda v. Preesha Operating Corp.*, No. 14 cv 3143 (ADS)(SIL), 2017 U.S. Dist. LEXIS 103010 (E.D.N.Y. June 30, 2017) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 84 n.2 ).   Therefore, the hourly rate to be applied to hours worked by attorneys at the LCCRUL shall be calculated using the same analysis as described above.   Attorneys Rich and Mullenbach are both experienced litigators with extensive civil rights experience.   Rich 2014 Decl. ¶¶ 6,7,14.   Because Plaintiffs have justified a departure from the forum rule for the attorneys at LCCRUL, the reasonable rate for Attorneys Rich and Mullenbach shall be set at $475 per hour.   Attorneys Martinson, Silverman and Cook were all of counsel to LCCRUL.   Each of these attorneys has specialized experience litigating

---

[8] To the extent that an attorney is listed in both the Initial Application and the Supplemental Application the hours listed in this chart reflect the total hours billed. LCCRUL reduced its time by one third to account for work on behalf of the County prior to February 15, 2012 in the Initial Application and the hours listed here reflect that reduction.   Rich 2014 Decl. ¶26.

fair housing claims.   Rich 2014 Decl. ¶ 15, Rich 2018 Decl. ¶¶ 6-7.   Accordingly, the hourly

rate for these attorneys shall be set at $325.   The remaining associates at LCCRUL are junior

associates and a reasonable rate for an out-of-district attorney shall be set at $250 per hour.

| Brewington Attorneys | | | | | | |
|---|---|---|---|---|---|---|
| ATTORNEY | GRAD. LAW SCHOOL | YEARS ON MATTER | RATE REQUESTED | RATE AWARDED | HOURS BILLED[9] | TOTAL FEES |
| Brewington | 1982 | 2005-2018 | $500 | $450 | 453.60[10] | $204,120.00 |

Attorney Brewington seeks reimbursement at an hourly rate of $500 per hour.   In recent

cases within this District, where Mr. Brewington is well known, his hourly rate has been set at

$450 per hour.   *See, e.g., Anderson v. Cty. of Suffolk*, CV 09-1913 (GRB), 2016 U.S. Dist.

LEXIS 48891, 2016 WL 1444594 (E.D.N.Y. Apr. 11, 2016).   Where, as here, Mr. Brewington's

role is described as that of local counsel, the is no justification for an award higher than that

amount.   Accordingly, Attorney Brewington's hourly rate is set at $450 per hour.

## 2.     Reasonable Hours

"In calculating the number of reasonable hours, the court looks to its own familiarity with

the case and its experience with the case and its experience generally as well as to the evidentiary

submissions and arguments of the parties."   *Clark v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)

(internal quotation marks and citation omitted); *Kindle*, 308 F. Supp. 3d at 704. The plaintiff

---

[9] To the extent that an attorney is listed in both the Initial Application and the Supplemental Application the hours listed in this chart reflect the total hours billed.

[10] This amount reflects a reduction in hours of 29.87, which as discussed below, is a reduction of one-third from the hours requested to reflect hours devoted to the appeal of County related-claims.

must show contemporaneous time records, detailing, "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children,* 711 F.2d at 1148. The Court must assess the reasonableness of the time expended and adjust those portions of an invoice that reflect "excessive, redundant or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434 (1983); *Kindle*, 308 F. Supp. 3d at 705. "If the court determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court may make reductions to individual entries, or elect to account for such over-billing in an across-the-board percentage deduction." *Manzo v. Sovereign Motors Cars., Ltd.,* No. 08-CV-1229 (JG)(SMG), 2010 U.S. Dist. LEXIS 46036, 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). "The Court is not, however, required to set forth item-by-item findings concerning what may be countless objections to individual billing items." *Regan v. Conway*, 768 F. Supp. 2d 412, 418 (E.D.N.Y. 2011).

### a. Reasonableness in Light of Success Achieved

The Garden City Defendants contend that the lodestar amount should be reduced to reflect the degree of success that Plaintiffs achieved. It is the Garden City Defendants' position that despite Judge Spatt's decision finding them liable for unlawful racial discrimination under four separate statutes on two separate legal theories, issuance of a permanent injunction in Plaintiffs' favor and the Second Circuit's affirmance of Judge Spatt's decision on appeal Plaintiffs' fee request is unreasonable because "Plaintiffs did not achieve the broad, sweeping relief they sought." *See* Def. Opp. To Renewed Motion at 8. The Court finds this argument lacks merit, and the fee award shall not be reduced on this basis.

The Garden City Defendants also contend that Plaintiffs' attorneys' fees should be reduced due to unsuccessful claims against the County and under Section 1982.   *See* Def. Initial Opp. 16-18.   "In resolving whether an attorney's potential fee should be reduced based upon the degree of Plaintiff's ultimate success at trial, 'the Court must determine 'whether the claims on which plaintiff [ ] failed are sufficiently related to the prosecution of claims on which he succeeded, such that the time spent on the failed claims should be compensated.'"   *Cabrera v. Schafer*, No. CV 12-6323 (ADS) (AKT), 2017 U.S. Dist. LEXIS 24606 (E.D.N.Y. Feb. 17, 2017) (quoting *Tatum v. City of N.Y.*, No. 06-CV-4290, 2010 U.S. Dist. LEXIS 7748, 2010 WL 334975, at *10 (S.D.N.Y. Jan. 28, 2010); s*ee also Hensley*, 461 U.S. at 435 (finding that a fee award may require reduction where a plaintiff "has achieved only partial or limited success"); G.*B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 428 (S.D.N.Y. 2012) ("[C]ourts may make adjustments to the presumptively reasonable fee based on [ ] the degree of success obtained by the prevailing party").   "A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories.'" *Kirsch,* 148 F.3d at 173 (quoting *Hensley*, 461 U.S. at 434).   However, when a plaintiff's claims for relief involve common facts and legal issues, a court should not reduce fee requests due to unsuccessful claims if the successful and unsuccessful claims are "inextricably intertwined and involve a common core of facts or are based upon related legal theories." *Quaratino v. Tiffany & Co*., 166 F.3d 422, 425 (2d Cir. 1999) (citations and internal quotation marks omitted); *Reed v. A.W. Lawrence & Co*., 95 F.3d 1170, 1183 (2d Cir. 1996) ("Where the district court determines that the successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or

31

[are] based on related legal theories,' it is not an abuse of discretion for the court to award the entire fee.") (quoting *Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1259 (2d Cir. 1987)).   Because all of Plaintiffs' claims here arise out of a common set of facts, Plaintiffs' fee request shall not be reduced on this basis alone.

In addition, Plaintiffs have taken steps to remove time from their fee application relating solely to claims against the County.   In both the Initial and Supplemental Applications, Hogan Lovells and LCCRUL eliminated time entries that clearly related to claims against the County. Brown 2014 Dec. ¶ 30; Brown 2018 Decl. ¶ 33; Rich 2014 Decl. ¶ 24; Rich 2018 Decl. ¶ 12. Hogan Lovells and LCCRUL have also reduced all time entries prior to February 15, 2012 – the date the Court dismissed all claims against the County – by one-third.   Brown 2014 Dec. ¶ 30; Brown 2018 Decl. ¶ 34; Rich 2014 Decl. ¶ 24; Rich 2018 Decl. ¶ 12.   In addition, in response to issues raised by Defendants' expert, Hogan Lovells reduced the fee request by over 200 hours. *See* Fleming 2014 Reply Decl. ¶ 10; Fleming 2018 Reply Decl. ¶5, Schedule A. These reductions are sufficient to adjust the fee award for the unsuccessful claims.

Brewington reduced its fees by removing any entries from the Initial Application that related to claims against the County, however, it did not reduce its fees by one-third for the hours in connection with the appeal.   Brewington is requesting reimbursement for 89.7 hours for the period May 14, 2014 through March 15, 2018. Brewington 2018 Decl. ¶ 20.   Since Attorney Brewington did not adjust his hours to reflect work done for the County an across the board reduction of one-third will be applied, thus his hours shall be reduced to 59.83.

### b.  Recovery of Fees for Monitoring Effort

Defendants also contend that Plaintiffs cannot recover for monitoring efforts.   Def. Opp. To Renewed Motion 8-13.   According to Defendants, Plaintiffs billed 114 hours ($37,506) in connection with the selection of the FHCO and 586 hours (roughly $229,000) of time since the FHCO, Mr. LaPinta, was appointed to the role.   Bronsther 2018 Decl. at ¶ 28.   The Garden City Defendants argue that "[b]ecause the Judgment did not contemplate Plaintiffs' monitoring of the Village" Plaintiffs should not be permitted to recover any attorneys' fees for monitoring activity. Def. Opp. to Renewed Motion at 9.

"Several courts have held that, in the context of . . . 42 U.S.C. § 1988, post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986) (citing *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984); *Bond v. Stanton*, 630 F.2d 1231, 1233 (7th Cir. 1980); *Miller v. Carson*, 628 F.2d 346, 348 (5th Cir. 1980); *Northcross v. Board of Education*, 611 F.2d 624, 637 (6th Cir. 1979), *cert. denied*, 447 U.S. 911 (1980)); *see also New York Ass'n for Retarded Children*, 711 F.2d at 1145 (§1988 action); *Grier v. Goetz*, 421 F. Supp. 2d 1061, 1076 (M.D. Tenn. 2006) ("[W]hen post-decree monitoring work protects the relief awarded under the consent decree, ensures compliance with the decree, or is critical to the vindication of the plaintiff's rights under the consent decree, compensation for the activity is proper within the trial court's discretion") (citing *Delaware Valley*, 478 U.S. at 561)); *Wilder v. Bernstein*, 975 F. Supp. 276, 280 (S.D.N.Y. 1997) (finding post-judgment monitoring of consent decree is compensable under § 1988), *reconsideration denied*, 982 F. Supp. 264 (S.D.N.Y. 1997).

However, "a plaintiff must at least show that its post-judgment monitoring work was "necessary to enforce the remedy ordered by the District Court[.]"  *United States v. Tennessee*, 780 F.3d 332, 339 (6th Cir. 2015) (quoting *Delaware Valley*, 478 U.S. at 559).   "Whether a plaintiff's post-judgment monitoring is necessary, of course, depends on the facts of the particular case."  *Tennessee,* 780 F.3d at 339.   Here, Plaintiffs argue that the post-judgment monitoring work was necessary because (1) the Judgment contemplates that the Plaintiff will monitor compliance with the Judgment, (2) its efforts were not duplicative of the work done by the FHCO, and therefore, were, necessary and (3) its regular meetings with the FHCO were necessary to insure compliance and, in fact, it is because of these regular meeting that Plaintiffs were able to petition the Court to extend the Final Judgment's terms because of delays in implementing Court-ordered relief.   Pl. Supp. Reply at 3-5.

The Judgment provides "[t]he FHCO may not be a current or past employee or elected official of Garden City, but rather, shall be a third-party independent contractor mutually agreed upon by the parties."   ECF No. 431 at 7-8.   Thus, to the extent Defendants object to fees incurred in connection with the FHCO selection process, that objection is rejected, since Plaintiffs' participation in the selection process is contemplated by the Judgment.

The Judgment further provided that "[t]he parties shall work cooperatively with one another and in good faith and should use their best efforts to effectuate the purposes of this Judgment." *Id.* at 10.   It is clear the Judgment contemplates some monitoring by Plaintiffs, however, the number of hours devoted to monitoring by Plaintiffs' counsel is excessive.   The FHCO was paid a total of $254,404.00.   Declaration of Ariel E. Ronneburger, dated April 27, 2018 ¶ 2.   And Plaintiffs request $266,466.75 in attornys'While it appears to the Court that the

34

Judgment did contemplate some monitoring of compliance with the Judgment by Plaintiffs, it is inconceivable that Plaintiffs attorneys' fees could be roughly equal to the fees paid to the FHCO. The Garden City Defendants request a 25% reduction in fees.   Def. Opp. To Renewed Motion at 14.   As discussed below, the Court need not engage in an item by item reduction of fees but rather the Court has discretion to deduct a percentage of hours across the board.   *See, e.g., Anello v. Anderson*, 191 F. Supp. 3d 262, 283 (W.D.N.Y. 2016) ("[T]he district court is not obligated to undertake a line-by-line review of [an] extensive fee application . . . In that regard, [a] court has discretion to impose an across-the-board reduction if an attorney has billed excessive, redundant, or unnecessary hours").   Accordingly, this excessive billing shall be factored into the Court's analysis regarding the appropriate across the board reduction.

### c.   Impermissible Billing Practices

Defendants have identified a number of billing practices employed by each of the Plaintiffs' law firms which, according to Defendants, require a drastic reduction in fees. According to Defendants, the lodestar should be reduced further because billing entries were in block format, were vague, excessive, duplicative and the matter was over staffed.   *See* Def. Initial Opp. at 19-24; Def. Opp. to Renewed Motion at 14-18.   In support of its position, Defendants rely on the Reports of their Expert, Judith Bronsther.   In response, in both the Initial Application and Supplemental Application, Plaintiffs have removed certain time entries challenged by Defendants' expert.   Fleming 2014 Reply Decl. ¶¶ 10-17; Fleming 2018 Reply Decl. ¶¶ 5-8.   With respect to the remainder of Defendants' challenges Plaintiffs argue that block billing is permissible, (Pl. Supp. Reply at 9), the hours, while substantial, were not excessive and have already been voluntarily reduced by 30% (Pl. Reply at 6) and Defendants'

35

challenges regarding vagueness are not supported by a cursory review of the entries in context
(Pl. Reply at 7-8).

Where, as is the case here, "the billing records are voluminous, it is less important that
judges attain exactitude, than that they use their experience with the case, as well as their
experience with the practice of law, to assess the reasonableness of the hours spent." *E.S. v.
Katonah-Lewisboro Sch. Dist.,* 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) (quoting *Do Yea Kim
v. 167 Nail Plaza, Inc.*, 05 CV 8560 (GBD) (GWG), 2009 U.S. Dist. LEXIS 1992, 2009 WL
77876, at *4 (S.D.N.Y. Jan. 12, 2009) (citation and internal quotation marks omit)).   The Court
is not required to "'set forth item-by-item findings concerning what may be countless objections
to individual billing items[.]'" *Reiter v. Metro. Transp. Auth. of State of N.Y.*, No. 01 CIV
2762G, 2007 U.S. Dist. LEXIS 71008, 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007)
(quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).   "[T]he court has discretion
simply to deduct a reasonable percentage of the number of hours claimed as 'a practical means of
trimming fat from a fee application.'" *Kirsch*, 148 F.3d at 173 (quoting *New York Association for
Retarded Children*, 711 F.2d at 1146); *Anello v. Anderson*, 191 F. Supp. 3d at 283 ("[T]he
district court is not obligated to undertake a line-by-line review of [an] extensive fee application
... In that regard, [a] court has discretion to impose an across-the-board reduction if an attorney
has billed excessive, redundant, or unnecessary hours.") (internal citations omitted); *see also
Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 344
(S.D.N.Y. 2016) ("'It is common practice in this Circuit to reduce a fee award by an across-the-
board percentage where a precise hour-for-hour reduction would be unwieldy or potentially
inaccurate.'") (quoting *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v.*

*Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2005 U.S. Dist. LEXIS 28880, 2005 WL

3099592, at *7 (S.D.N.Y. Nov. 17, 2005), *reconsideration denied*, 2009 U.S. Dist. LEXIS

106384, 2009 WL 3816976 (S.D.N.Y. Nov. 10, 2009)).

Indeed, where counsel relies on vague, excessive entries or block billing practices making

it difficult to assess reasonableness, an across-the-board fee reduction is warranted.   *See*

*Anderson*, 2016 U.S. Dist. LEXIS 48891 (recognizing that where "counsel relies on vague

entries and block billing, courts are unable to review hours for reasonableness" and noting that

"[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *Solnin*,

2018 U.S. Dist. LEXIS 168047 ("An across-the-board fee reduction is warranted when counsel

relies on vague entries, excessive billing, or block billing practices that make it difficult for the

court to assess reasonableness").   Plaintiffs are correct that block billing is not prohibited in the

Second Circuit.   *See Restivo,* 846 F.3d at 592 ("Although block billing is not preferred, it is

permissible so long as the records allow the court to conduct a meaningful review of the hours

requested").   And, a review of the time records complained of by Defendants reveals, for the

most part, adequately described time entries, there are nonetheless, certain time entries that are

unquestionably vague.   For example, Defendants expert identified descriptions such as

"document review" and "work on draft briefs" and prepare for trial" with no further explanation.

*See* Bronsther 2014 Decl. Ex. C at 53-58

Moreover, "the Court is aware that 'within large-scale litigation . . . there are inherent

inefficiencies and redundancies that occur with respect to the time expended on a case employing

numerous attorneys, which are outside the scope of compensable attorneys' fees.'" *In re Eastman

Kodak ERISA Litig.,* 213 F. Supp. 3d 503, 507 (W.D.N.Y. 2016) (quoting *Severstal Wheeling,*

37

*Inc. v. WPN Corp.*, No. 10 Civ. 954 (LTS)(GWG), 2016 U.S. Dist. LEXIS 53563 at *15, 2016 WL 1611501 (S.D.N.Y. Apr. 21, 2016)); *see also Kindle*, 308 F. Supp. 3d at 714 ("a ten percent (10%) across-the-board the fee cut is appropriate in order to mitigate instances of duplicative and unnecessary billing, which, despite counsel's best efforts, is an inherent issue in protracted litigation involving the retention of and contemporaneous work performed by multiple law firms").   While Hogan Lovells and LCCRUL did take steps to cut down on excessive hours and overstaffing by removing the time of attorneys that did not devote significant blocks of time to the matter, eliminating time entries that appeared duplicative and reducing the time billed by attorneys that were newly assigned to the case, it is impossible given the more than 30 attorneys involved with this matter to remove all inefficiencies and redundancies.

Here, in light of the voluntary reductions already taken, the length of the litigation, and the complexity of the issue involved balanced against the impermissible billing practices, including excessive billing for FHCO monitoring described above, the Court finds that a 15% reduction in fees is appropriate.

Thus, the Court awards attorneys' fees in the amount of $5.089,525.59.

B.     **Costs**

Lastly, the award requested includes initial costs of $204,566.72 and supplemental costs of $25,324.94.   "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."   *Field Day, LLC v. County of Suffolk,* No. CV 04-2203(DRH)(ETB), 2010 U.S. Dist. LEXIS 137430, 2010 WL 5491025, at *8 (E.D.N.Y. Sept. 9, 2010) (internal quotation marks and citations omitted), *report and*

*recommendation adopted by*, 2010 WL 5490990 (E.D.N.Y. Dec. 30, 2010); *see also Larson v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 365 (E.D.N.Y. 2008) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") (internal quotation marks and citations omitted).   Court filing fees, process servers, printing and photocopying, messenger services, postage, telephone costs, transcripts, travel, transportation, meals and other "[o]ut of pocket litigation costs are generally recoverable if they are necessary for the representation of the client." *AW Indus., Inc. v. Sleep Well Mattress, Inc.*, No. 07-CV-3969(SLT)(JMA), 2009 U.S. Dist. LEXIS 15567, 2009 WL 485186, at *6 (E.D.N.Y. Feb. 26, 2009) (internal quotation marks and citation omitted).

The breakdown of costs requested by firm is as follows:

| Initial Fee Application | Costs Requested |
|---|---|
| | $204,566.72 |
| | |
| Hogan Lovells | $188,999.87 |
| | |
| Photocopying | $ 26,370.23 |
| Shipping | $   5,573.22 |
| Research | $ 28,826.26 |
| Discovery Vendors | $ 13,021.43 |
| Courtroom Tech. Costs | $   3,974.06 |
| Temporary office space | $ 24,778.08 |
| Hotel Costs | $ 37,639.96 |
| Expert Fees | $ 37,030.75 |
| Mediation Fees | $ 11,785.88 |
| | |
| | |
| LCCRUL | $ 20,449.25 |
| | |
| Shipping | $       15.78 |
| Research | $   2,597.52 |
| Travel | $ 17,835.95 |

| | |
|---|---|
| Brewington | $   1,117.60 |
| | |
| Photocopying | $      937.00 |
| Shipping | $          1.62 |
| Travel | $      175.70 |
| | |
| Supplemental Fee Application | |
| | $ 25,334.94 |
| | |
| Hogan Lovells | $ 21,321.24[11] |
| | |
| Outside Prof. Services | $   1,445.30 |
| Travel Costs | $      350.00 |
| Transcript Fees | $ 19,526.04 |
| | |
| LCCRUL[12] | $   3,524.70 |
| | |
| Research | $      566.16 |
| Travel[13] | $   2,313.29 |
| Contract Item | $          5.14 |
| Court Costs | $      216.00 |
| | |
| Brewington | $      439.00 |
| | |
| Photocopying | $      439.00 |
| | |

[11] In the Brown 2018 Decl., Hogan Lovells requests $20,781.24 in total costs, however the invoices provided total $21,321.24. *Compare* Brown 2018 Decl. ¶64 *with* Brown 2018 Decl., Ex. 3.   The total of the invoices shown on Exhibit 3 is the total supporting the total costs requested.
[12] The invoices provided by LCCRUL do not total this amount. Adding the categories as listed here comes to 3,224.72, *but see* footnote related to travel expenses.
[13] This number should be lower.   According to Exhibit 2, LCCRUL reduced travel expenses by $891.50 to reflect travel related to the County, however, totaling the entries designated as County related equals $1,015.63, therefore travel expenses should be $2,313.29.

### 1. Copying, Printing, Travel, Telephone and Research

"Courts have identified the following non-exhaustive list of expenses as those ordinarily charged to clients, and therefore, recoverable: photocopying, travel, telephone costs, and postage." *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 401 (S.D.N.Y. 2000). Plaintiffs and their respective attorneys have submitted detailed records of photocopying, printing and binding, travel expenses, e-discovery vendor charges and legal research, all of which are routinely recoverable as costs. *See* Brown 2014 Decl.; Rich 2014 Decl.; Brewington 2014 Decl.; Fleming 2014 Reply Decl.; Brown 2018 Decl.; Rich 2018 Decl.; Brewington 2018 Decl.; Fleming 2018 Reply Decl.

With respect to photocopying, the standard reimbursement rate is roughly ten cents per page. *See, e.g.*, *Cabrera*, 2017 U.S. Dist. LEXIS 24606 at * 56 (going rate in the district is ten cents per page); *United States v. City of New York*, No. 07-CV-2067 (NGG)(RLM), 2013 U.S. Dist. LEXIS 125461, 2013 WL 5542459 (E.D.N.Y. Aug. 30, 2013) (reducing photocopying costs to ten cents per page), *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2012 U.S. Dist. LEXIS 127890, 2012 WL 3878144, at *5 (S.D.N.Y. Aug. 6, 2012) (declining to award twelve cents per page and reducing the award to ten cents per page).   Here, Hogan Lovells requests copying fees of $26,370.23 in the Initial Application and $1,445.20 in the Supplemental Application.   Brown 2014 Decl. ¶ 65; Brown 2018 Decl. ¶ 65, Ex. 3.   With respect to the Initial Application, between April 2005 and April 2014 Hogan and Lovells copied 226,116 pages in-house at a rate of ten cents per page for black and white copies and thirty cents per page for color copies.   Hogan Lovells then reduced by one-third the total charges to reflect work related to the County, resulting in in-house copying costs of $15,956.73.   Brown 2014 Decl., Exh. B.   Also

41

included in the Initial Application were copying costs of $10,413.50 paid to outside vendors, which reflects copying costs of twelve cents per page.   *Id.*   The total of the invoices was also reduced by 1/3 to reflect work related to the County resulting in a requested reimbursement of $10,413.50.   *Id.* at 73.   The total cost of copying identified in the Initial Application by Hogan Lovells is $26,370.20.   The Court finds these costs reasonable.

In the Supplemental Application, Hogan Lovells requests $126.45 for copying charges and postage paid to the Village of Garden City.   The invoices provided by the Incorporated Village of Garden City do not contain the per page charge for the copies.   *See* Brown 2018 Decl. Exh. 3.   The Supplemental Application also contains a request for printing costs of $1,318.75. These costs were also reduced by one-half to reflect the portion of the Second Circuit brief relating to the County.   *See id.* at ¶ 66.   The Court finds these costs reasonable.

Brewington has requested $937.00 for copying costs in the Initial Application and $439 copying costs in the Supplemental Application.   Brewington 2014 Decl., Ex. A; Brewington 2018 Decl., Ex. A.   In the Initial Application, Brewington requests reimbursement of $937 for 3,748 copies at 25 cents per page.   This is well above the standard reimbursement rate of ten cents per page, and therefore this request will be reduced to $374.80.   Similarly, in the Supplemental Application, Brewington requests reimbursement for copying costs at 25 cents per page for 1,756 pages.   Brewington 2018 Decl., Exh. A at 13.   Once again, this request will be reduced to reflect the standard reimbursement rate of ten cents per page, for a total of $175.60. Thus, the total awarded to Brewington for copying costs shall be $550.40.

Each of the three firms has sought reimbursement for shipping and postage costs in the Initial Application and not in the Supplemental Application.   The costs sought by LCCRUL and

Brewington, $15.78 and $1.62, respectively, are reasonable and shall be awarded by the Court. With respect to the costs for shipping and postage sought by Hogan Lovells, $5,573.22, this represents the totals of invoices for postage and federal express deliveries, reduced by one-third for all amounts incurred before February 15, 2012.   Brown 2014 Decl. ¶¶ 74-80.   Upon review of the invoices provided, this request appears reasonable and shall be awarded by the Court.

Hogan Lovells and LCCRUL also request reimbursement of costs incurred for research. In the Initial Application, Hogan Lovells seeks reimbursement of $28,826.26 for research costs. This amount does not included amounts for legal research on the Lexis or Westlaw databases because the firm pays a flat fee for legal research on these sites which includes an allowance for pro bono research.   Brown 2014 Decl. ¶¶ 81-83.   The research included in the application pertains to out-or-pocket expenses for library fees for book borrowing, Pacer, Courtlink and Accurint.   The firm reduced the application by 1/3 for charges incurred before February 15, 2012.   *Id*. at ¶ 88.   The Court finds this request reasonable, particularly given the nature of the searches that included searching court filings from as far back as the 1970s.   *See, e.g*., *Id.,* Ex. D Tab 9.

LCCRUL has also requested reimbursement for research expenses in the Initial and Supplemental Application.   Rich 2014 Decl., Ex. 3; Rich 2018 Decl., Ex. 2.   In the Initial Application, LCCRUL sought costs associated with research of $2,597.52, however, the invoices provided total $2,497.52, so at the outset any potential award must be reduced to $2,497.52. Next, while LCCRUL reduced its fee application for the period prior to February 15, 2012 by one-third to represent work relating to the County, they did not reduce the costs requested in the same manner.   Thus, based on the invoices provided, $964.14 of the research costs were

incurred prior to February 15, 2012.   Reducing that amount by one third leaves recoverable

costs of $645.98.   Adding $645.98 to research costs incurred after February 15, 2012 equals

total recoverable research costs of $2,179.36.   In the Supplemental Application, LCCRUL

requests research costs of $566.15.   *See* Rich 2018 Decl., Exh. 2. This amount appears

reasonable.

Court filing fees are generally recoverable as costs if necessary for the representation of

the client.   *See Bank of Am., N.A. v. Viders,* CV 10-0025(DRH)(ARL), 2011 U.S. Dist. LEXIS

116796, 2011 WL 4527419 (E.D.N.Y. July 26, 2011).   LCCRUL requests reimbursement of

$216.00 in the Supplemental Application, however, Exhibit 2, to the Supplemental Declaration

of Joseph D. Rich in support of Supplemental Motion for Attorneys' Fees is illegible and the

Court is unable to determine the appropriateness of this request, accordingly, this request is

denied.   In addition, LCCRUL requests reimbursement of $5.14 for "contract items."   The

invoice provided is not sufficiently specific and thus the request is denied.

In the Initial Application, Hogan Lovells requests reimbursement of mediation fees

totaling $11,785.88.   Mediation fees among the reasonable out of pocket expenses incurred by

attorney and passed along to their clients.   *See Leser v. U.S. Bank N.A.,* 09-CV-2362

(KAM)(MDG)*,* 2013 U.S. Dist. LEXIS 67468, 2013 WL 1952306 (E.D.N.Y. May 10, 2013)

("mediator's fee appears to be among the 'reasonable out-of-pocket expenses incurred by

attorneys and ordinarily charged to their clients'") (citation omitted); *Anwar v. Fairfield*

*Greenwich Ltd*., No. 09-CV-118(VM), 2012 U.S. Dist. LEXIS 78929, 2012 WL 1981505, at *3

(S.D.N.Y. June 1, 2012) (reimbursing expenses such as "mediation fees, expert witness fees,

electronic legal research, photocopying, postage, and travel expenses, each of which is the type

44

'the paying, arms' length market' reimburses attorneys" (quoting *In re Global Crossing Sec. &
ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004)); *In re Flag Telecom Holdings,* No. 02-CV-
3400 (CM)(PED), 2010 U.S. Dist. LEXIS 119702, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)
(mediation fees typically awarded as costs).   Hogan Lovells has provided invoices from the
multi-day mediations session with JAMS totally $11,785.88.   The Court finds these amounts
reasonable and Hogan Lovells shall be awarded costs in that amount.

With respect to e-discovery vendor costs, Hogan Lovells has submitted invoices totaling
$19,532.14 and reduced the amount sought for reimbursement by one-third to the extent the
charges were incurred before February 2012 reflecting work relating to the County.   Brown
2014 Decl. ¶¶ 91-96.   The amount sought by Hogan Lovells for Discovery Vendors in the Initial
Application is $13,021.43.   Discovery vendor costs are the type of costs typically passed along
to the client, and thus are recoverable.   *See, e.g., Sykes v. Mel Harris & Assocs., LLC,* 09 Civ.
8486 (DC), 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016); *Leser v. U.S. Bank N.A.,*
2013 U.S. Dist. LEXIS 67468.   The Court finds this amount to be reasonable and will award
costs in that amount.

Finally, in the Initial Application, each of the three firms seeks reimbursement of travel
costs.   In the Initial Application, Hogan Lovells requests $37,639.96 for hotels room used
during the course of the eleven-day trial before Judge Spatt.   Brown 2014 Decl. ¶110.   In the
Supplemental Application, Hogan Lovells requests reimbursement of $350 travel costs, and the
LCCRUL seeks $2,437.42.[14]   While, travel costs may be denied where a party chooses out-of-

---

[14]   Brewington does not request reimbursement of travel expenses in the Supplemental
Application.

district attorneys, *Pall Corp. v. 3M Purification* Inc., CV 97-7599 (RRM)(ETB); CV 03-0092 (RRM)(ETB), 2012 U.S. Dist. LEXIS 76755, 2012 WL 1980403 (E.D.N.Y. June 1, 2012), the Garden City Defendants do not object to the reimbursement of travel expenses.   In light of the substantial experience of the firms retained by Plaintiffs the Court will not reject these costs on this basis alone.

In the Initial Application, Hogan Lovells is requesting hotel cost of $37,639.96 incurred over the course of the eleven-day trial.   According to the invoices provided, Hogan Lovells incurred charges for rooms and boardrooms.   These charges appear excessive.   For example, Hogan Lovells was billed for 81 room nights for the period June 27, 2014 through July 3, 2014. Brown 2014 Decl., ex. G.   Hogan Lovells argues this stay was necessary because of the distance between the Courthouse in Central Islip and Manhattan, where the firm is located.   Additional Hogan Lovells points out that it is not seeking reimbursement for meals and other travel expenses that would typically be passed along to the client. Brown 2014 Dec. ¶ 103. While it may have been more convenient for Plaintiffs' counsel to locate in Central Islip during the trial it was not essential that they do so.   Lawyers when on trial routinely commute from New York City to Central Islip.   Moreover, the Court finds a charge for more than 81 nights of hotel stay for an eleven-day trial to be unreasonable.   Hogan Lovells shall be awarded four hotel rooms for 11 days at the rate set forth in Exhibit G of $140 per night for a total of $6,160.   Hogan Lovells also requests reimbursement of travel costs of $350 in the Supplemental Application, representing roundtrip travel to Washington D.C. by train. The Court finds this amount reasonable.

In the Initial Application, LCCRUL requests reimbursement of travel costs totaling $17,835.95.   Rich 2014 Decl., Ex. 3.   These expenses were incurred between August 20, 2009 and July 4, 2013.   These expenses were not reduced to reflect amounts attributable to the County, thus this request will be reduced by one-third, leaving $11,950.09 in recoverable costs. In the Supplemental Application, LCCRUL requests reimbursement of travel expenses totaling $2,437.42.   According to the invoice provided, total travel expenses for the period equaled $3,328.92.   LCCRUL then reduced the requested reimbursement by $891.50 to reflect charges related to the County portion of the litigation.   However, the total of the entries designated as County related comes to $1,015.63, so travel expenses should be $2,313.29.   *See* Rich 2014 Decl. Ex. 3.   These expenses for both the Initial and the Supplemental Application were incurred predominantly by Mr. Rich and include, airfare, train tickets, rental cars, lodging and meals.   These amounts appear reasonable and reimbursement of $11,950.09 requested in the Initial Application and $2,313.29 requested in the Supplemental Application shall be awarded.

Brewington requests reimbursement of travel costs totaling $175.70.   A review of the invoices provided indicated Brewington incurred travel expenses of $173, comprised of $43 on 5/31/2013, $65 on 6/10/2013 and another $65 on 6/10/2013.   A review of the time records for those days indicates Brewington attended meetings with co-counsel, however, there is no indication as to why travel would be necessary since Brewington is located in the Eastern District of New York.   Thus, this request is denied.

## 2.  Expert Fees

In the Initial Application, Hogan Lovells requests $37,030.75 in expert fees.   Brown 2014 Decl. ¶¶ 111-118.   Defendants' expert did not challenge Plaintiff's request for

47

reimbursement of expert fees, nor did the Garden City Defendants challenge this request in their opposition to the fee application.   With respect to Hogan Lovells's request for reimbursement of expert fees, subsection (c) to § 1988 provides:

> In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

42 U.S.C. § 2000e-5(k); *see also United States v. City of New York*, No. 07-CV-2067 (NGG)(RLM), 2013 U.S. Dist. LEXIS 125461, 2013 WL 5542459 (E.D.N.Y. Aug. 30, 2013) ("An award of fees under Title VII explicitly includes award of expert fees").   The party seeking reimbursement for expert fees bears the burden of proving reasonableness.   *Matteo v. Kohl's Dep't Stores, Inc.,* No. 09 CV 7830, 2012 U.S. Dist. LEXIS 151568, 2012 WL 5177491, at *5 (S.D.N.Y. Oct. 19, 2012).   "Courts consider various factors in determining the "reasonableness" of an expert's fee, including: 1) the educational background and training of the expert; 2) the field in which the witness has expertise; 3) the rates of comparable experts; 4) the nature and complexity of the discovery involved; 5) the cost of living in the geographic area; 6) the fee being charged to the party retaining the expert; 7) fees traditionally charged by the expert on related matters; and 8) any other factors that would be of assistance to the court."   *Brown v. Green 317 Madison, LLC*, No. 11 CV 4466 (ENV), 2014 U.S. Dist. LEXIS 40248 (E.D.N.Y. Feb. 4, 2014) (citing *Frederick v. Columbia Univ*., 212 F.R.D. 176, 177 (S.D.N.Y. 2003); *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 645 (E.D.N.Y. 1997)).   A review of the Affidavit submitted by Nancy McArdle, Plaintiffs' expert on housing demography, census data, racial segregation and patterns of racial change indicates this fee is reasonable.   *See* Affidavit of

Nancy McCardle, researcher and author, dated May 12, 2014.   This expert prepared a 25-page

report, was deposed in 2008 and testified in Court over the course of two days of the trial.   *Id.* at

¶ 6.   Judge Spatt cited her report in his decision on Defendants' motion for summary judgment

and at trial.   *Id.* at ¶ 7.   In total, Plaintiffs' expert spent more than 700 hours working on this

litigation.   *Id.* at ¶ 8.   Her billing rate was $65 per hour.   *Id.*   The Court finds this fee

reasonable. accordingly, Hogan Lovells will be awarded costs of $37,030.75 in expert fees.

### 3.   Trial Transcripts

The Garden City Defendants' object to Hogan Lovells' request for reimbursement of

daily trial transcript fees.   Bronsther 2018 Decl., Ex. A at 74.   Hogan Lovells, argues that the

trial transcript was necessary and important for this 11-day bench trial because there were

numerous issues that were briefed overnight.   *See* Fleming 2018 Reply Decl. ¶ 10 (citing ECF

381, 382, 385, 386, and 392).   "To assess the losing party with the premium cost of daily

transcripts, necessity - beyond the mere convenience of counsel - must be shown."   *Hogan v.*

*Novartis Pharms. Corp.,* No. 06-260 (BMC), 2012 U.S. Dist. LEXIS 165820, 2012 WL 5898473

(E.D.N.Y. Nov. 20, 2012) (quoting *Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir.1973)).   "On

balance, courts have occasionally concluded that circumstances warranted the awarding of costs

for a daily trial transcript, particularly upon consideration of factors including the amount of

representation, the length of the trial, and the complexity of the issues in the case." *Id*. (citing

*Galella*, 487 F.2d at 999).   Here, Plaintiffs argue that the trial transcripts were used to brief

numerous issues that had to briefed overnight.   *See* ECF Nos. 381-82, 385-86, 392.   The Court

is satisfied that these transcripts were necessary to the briefing on the issues to be argued before

the start of trial the next day. *See Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009

U.S. Dist. LEXIS 89981, 2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009) (costs associated with daily copy reasonable where defendant sought daily copy as well).   Invoices relating to trial transcripts total $18,927.09.   Hogan Lovells also seeks reimbursement of $275.40 for the transcription of testimony of Defendants' expert which took place in October 2009 as well as $323.55 for the transcription of a hearing before Judge Spatt on June 17, 2016.   Accordingly, Hogan Lovells shall be awarded $19,526.04.

### 4.   Courtroom Technology

Hogan Lovells has requested reimbursement of $ 3,974.06.   Brown 2014 Decl. ¶¶ 97-101.   "The use of technology to improve the presentation of information to the jury and/or to the bench should be supported" and that "[c]omputers, computer graphics, digitized documents and other technological advancements have become important tools to the modern-day trial lawyer." *Dibella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005) ("blow-ups, digital presentations of scanned documents, and other computer graphics serve the same function as exhibits and other papers used at trial, and there is no logical reason to differentiate between the former and the latter in terms of their taxability as costs").   Thus, "[a]s long as the cost is reasonable and the devices aid in the efficient and effective presentation of evidence, a prevailing party should be allowed to recover their expense." *Id*.   In the instant matter, a screen and projector at trial were helpful to the bench in focusing on the salient documents and concepts and in aiding the efficient and effective presentation of evidence.   Thus, Hogan Lovells is entitled to recover its reasonable costs incurred in the amount of $3,974.06.

### 5.   Temporary Office Space

In the Initial Application, Hogan Lovells seeks reimbursement for costs associated with creating a temporary office space in a hotel located closer to the Courthouse than the firm's office space in Manhattan.   Brown 2014 Decl. ¶104.   According to Hogan Lovells, this space was necessary to prepare witnesses and documents on a nightly basis.   *Id*.   In order to equip the space, Hogan Lovells rented equipment, including laptops, printers, a dedicated computer server and a projector, from outside vendors.   *Id.* at ¶ 105-107.   Hogan Lovells is requesting reimbursement of $24,778.08.

A review of the invoices provided at Tab G to the Brown 2014 Decl. reveals that these expenses are generally considered "overhead" for the firm, such as binders, pencils and dictionaries and are not properly recoverable as costs associated with the litigation.   Recovery is not permitted for those expenditures associated with "routine office overhead." *Molefi v. Oppenheimer Trust*, No. 03 CV 5631, 2007 U.S. Dist. LEXIS 10554, at *25 (E.D.N.Y. Feb. 15, 2007) (quoting *Pinner v. Budget Mortgage Bankers*, Ltd., 336 F. Supp. 2d 217, 222 (E.D.N.Y. 2004)); *see also Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, 2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009) ("Payment is not permitted, however, for items that constitute routine office overhead"); *SEC v. Goren*, 272 F. Supp. 2d 202, 214 (E.D.N.Y. 2003) (citing *New York State Nat'l Org. for Women v. Terry*, 737 F. Supp. 1350, 1363 (S.D.N.Y. 1990) ("However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed")).   Such costs must be "absorbed within the attorney's hourly rate."   *Fink v. City of New York*, 154 F. Supp. 2d 403, 415 (E.D.N.Y. 2001) (quoting *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987)).

51

While Plaintiffs argues it was necessary to recreate an office in Central Islip for the duration of the trial, the Court notes that the distance between the Central Islip courthouse and Hogan Lovells' New York offices is routinely traveled by residents of Long Island who work in New York City.   The establishment of this temporary offices was a convenience and not a necessity for the trial in this action and shall be disallowed.

### i.  Summary

In light of the foregoing, the Court finds the following costs reasonable and therefore will award Plaintiffs' Counsel the following costs sought in the Initial and Supplemental Applications:

Hogan Lovells Out of Pocket Costs Awarded

| Category | Amount |
|---|---|
| **Initial Application** | |
| Photocopying | $26,370.23 |
| Shipping | $5,573.33 |
| Research | $28,826.26 |
| Mediation Costs | $11,785.88 |
| Discovery Vendors | $13,021.43 |
| Mediation Fees | $11,785.88 |
| Travel | $6,160.00 |
| Expert Fees | $37,030.75 |

| | |
|---|---|
| Courtroom Technology | $3,974.06 |
| **Supplemental Application** | |
| Photocopying | $126.45 |
| Printing | $1,318.75 |
| Trial Transcript | $19,526.04 |
| Travel | $350.00 |
| | |
| **Total** | $165,849.06 |

LCCRUL Out of Pocket Costs Awarded

| Category | Amount |
|---|---|
| **Initial Application** | |
| Shipping | $15.78 |
| Research | $2,179.36 |
| Travel | $11,950.09 |
| **Supplemental Application** | |
| Research | $566.15 |
| Travel | $2,313.29 |
| | |
| **Total** | $17,024.67 |

53

Brewington Out of Pocket Costs Awarded

| Category | Amount |
|---|---|
| **Initial Application** | |
| Photocopying | $374.80 |
| Shipping | $1.62 |
| **Supplemental Application** | |
| Photocopying | $175.60 |
| | |
| **Total** | $ 552.02 |

## CONCLUSION

For the foregoing reasons, the Court awards Plaintiffs attorneys' fees and costs in the amount of $5,272,951.35, to be distributed between the three firms in the manner described above.

Dated: Central Islip, New York
　　　November 27, 2018

　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　ARLENE ROSARIO LINDSAY

55