```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MHANY MANAGEMENT INC., et al.,

                        Plaintiffs,                                     REPORT AND
                                                                        RECOMMENDATION
                                                                        CV 05-2301 (GRB)(ARL)
        -against-


COUNTY OF NASSAU, et al.,

                        Defendants.
----------------------------------------------------------------------X
```

**LINDSAY, Magistrate Judge:**

Presently before the Court, on referral District Judge Brown, is a motion (1) to enforce the April 22, 2014 Final Judgment and Order ("Final Order"), ECF No. 431, as amended at the June 17, 2016 conference before District Judge Spatt, (2) to compel Defendants, the Incorporated Village of Garden City ("Garden City") and the Garden City Board of Trustees (together with Garden City, "Defendants") to comply the Final Order and (3) to direct that the duration of Defendants' obligations under certain sections of the Final Order be extended. The motion was filed by Mhany Management Inc. ("Mhany") and New York Communities for Change, Inc. ("NYCC") (collectively "Plaintiffs"). For the reasons set forth below, the undersigned respectfully recommends that Plaintiffs' motion be denied.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case and only includes those facts that are necessary for resolution the instant motion.

Plaintiffs brought this civil rights action against defendants the County of Nassau (the "County"), Garden City and the Garden City Board of Trustees. Plaintiffs were seeking injunctive and declaratory relief, costs and attorneys' fees arising out of claims that Garden City

discriminatorily re-zoned approximately twenty-five acres of County-owned land located in Garden City (the "Social Services Site") to prevent affordable housing from being built, which would likely be occupied by minorities. By Memorandum and Order dated February 15, 2012, Judge Spatt granted the County's motion for summary judgment dismissing all claims against it; denied Defendants' motion for summary judgment and granted NYCC's motion to amend. ECF No. 315. Judge Spatt conducted an 11-day trial commencing on June 17, 2013. In a Memorandum and Order dated December 6, 2013, the Court concluded that Plaintiffs had established the liability of Defendants under (1) the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. (the "FHA") based upon theories of disparate treatment and disparate impact; (2) 42 U.S.C. §1981; (3) 42 U.S.C. §1983; and (4) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. ECF No. 413.

In March 2014, the Court rendered a decision, setting the parameters of the Final Order. *Mhany Mgmt. v. Incorporated Village of Garden City*, 4 F. Supp. 3d 549 (E.D.N.Y. 2014). First, the Court determined that an injunction prohibiting future discrimination in housing was appropriate. *Id*. at 554-55. In doing so, Judge Spatt rejected Plaintiffs' request for a broad, sweeping injunction and rather, adopted the following language suggested by Defendants:

> In accordance with the laws of the United States, the Village shall not take any action:
>     (1). Interfering in any way with any person in the exercise of his or her right under the law to secure equal housing opportunity for himself, herself, or others, or any other right enjoyed under the FHA.
>     (2). Interfering with the development or acquisition of any affordable housing units because of race, color, or national origin.
>     (3). Discriminating because of race, color, or national origin in any aspect of the enactment or administration of zoning, land use, special permit, or building ordinance laws, polices, practices, requirements, or processes relating to residential property.

*Id*. at 555.

Next, the Court determined that Plaintiffs were entitled to affirmative injunctive relief. *Id*. at 555-58. In doing so the Court noted that "the Court is cognizant of the general reluctance of the judiciary to impose affirmative relief. 'If the court orders a FHA defendant to provide affirmative relief, such as to pass policies or rules, build housing or take other affirmative steps toward non-discriminatory housing, then such mandates require serious justification,' because it is a 'massive judicial intrusion on private autonomy.'" *Id*. at 555 (quoting *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1293 (7th Cir. 1977)).  Judge Spatt pointed out that "there is no constitutional or statutory right for individual citizens to have housing comply with a particular standard, nor is there a concomitant duty on the part of political entities to provide housing." *Id*. (citation omitted).  Taking these principles into consideration, Judge Spatt then ordered that (1) Garden City officials be required to participate in Fair Housing training; (2) Garden City enact a "fair housing resolution"; and that (3) Garden City re-zone the Social Services Site to allow for multi-family residential development (if the County decided to sell the property within a year).  *Id*.  Judge Spatt stated that "while a Town's track record of stalling efforts to build low-income housing is relevant to the imposition of affirmative relief, *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 942 (2d Cir. 1988), aff'd in part sub nom*. Town of Huntington, N.Y. v. Huntington Branch, N.A.A.C.P.*, 488 U.S. 15, 109 S. Ct. 276, 102 L. Ed. 2d 180 (1988), the Court notes that, in this case, for various reasons, it expressly declined to place significant weight on any history of discrimination in Garden City." *Id.* at 558.  With respect to the Court's affirmative relief requirement that the Social Services Site be rezoned, the Court pointed out that "a directive to the Garden City Defendants to rezone the Social Services Site to zone R-M would not, without further action by third-parties, remedy the FHA and constitutional violations in this case." *Id*.

Judge Spatt next announced two conditional measures of "affirmative injunctive relief with which Garden City must comply in the event the Nassau County does not announce for sale the Social Services Site for residential development within one year of the date of the judgment." *Id*.  The Court concluded that if the County did not decide to sell the property within a year, Garden City must apply to become a member of the Nassau County Urban Consortium ("Consortium"), and once accepted, "participate in Consortium activities in good faith." *Id*. at 558.  Plaintiffs had requested that, as a member of the Consortium, Garden City be enjoined from:

> 1. Refusing funds from [the Department of Housing and Urban Development], such as Community Development Block Grants ("CDBG") and HOME Investment Partnerships Program ("HOME") funds, intended for provision of affordable housing (as defined by the relevant HUD program), in Garden City;
>
> 2. Failing to use funds obtained from HUD for affordable housing (as defined by the relevant HUD program); and
>
> 3. Applying residency preferences, such as a preference for current or past residents of Garden City, to housing programs Garden City participates in as a member of the Consortium.

(Plfs' Amended Proposed Judgment, at § IX.).  The Court rejected this request, holding that "these additional obligations of participation in the Nassau County Consortium go far beyond the rulings in this case and are unnecessary to achieve the objectives set forth." *Id*. at 558-59.

In addition, in the event the County decided not to sell the Social Services Site, Judge Spatt determined that Garden City must adopt a proposal to require new residential developers to set aside at least 10% of their units at affordable rates, and defined affordable housing as housing for which a family whose income is 80% or less of the Nassau-Suffolk Metropolitan Statistical Area Median Income pays no more than 30% of its income. *Id*. at 558-60.  In connection with this requirement of the Final Order, Plaintiffs had requested the Court require

> Garden City to 'take all the necessary steps to ensure' the development of 78 affordable housing units in Garden City within five years, but specifies that Garden City need not do the building itself. The Plaintiffs also propose that the housing units "be located within Garden City Public School District attendance boundaries" and provides that at least 75% of the units must be two-bedroom units or larger. The Plaintiffs would further obligate the Garden City Defendants to, among other things, conduct an annual survey of Garden City to identify publicly and privately owned sites that are viable for residential development, including new construction or rehabilitation projects. The Plaintiffs would also require Garden City to give Mhany the right of first consideration if Garden City chooses to sell Garden City-owned land for the development of the 78 affordable housing units. Finally, the Plaintiffs propose that Garden City could fulfill its requirements under the judgment if it donated suitable land for the development of the 78 affordable housing units.

*Id.* at 559. Judge Spatt opined that "[i]n the Court's view, the Plaintiffs' proposed steps that Garden City must take to promote the building of the 78 housing units go too far. As this Court previously found, federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies." *Id*. (citation and internal quotation omitted). Accordingly, Judge Spatt rejected Plaintiffs' proposal.

Garden City was also ordered to appoint a Fair Housing Compliance Officer ("FHCO") to oversee compliance with the Final Order, to fund the relief required by the Final Order, and to file compliance reports. *Id*. at 560. The Court ordered that the Consortium obligation and Affordable Housing requirements would expire five years after coming into effect. *Id*. at 561. The Final Order reflecting this decision was entered by the Court on April 22, 2014. ECF No. 431.

There were significant delays in implementing the required relief. The FHCO was not appointed until August 25, 2014, when the Court selected Anthony LaPinta as FHCO, since the parties could not agree on a candidate. *See* ECF Nos. 459, 472 ¶ 2. Garden City did not hold its first fair housing training until June 2015, since the parties also could not agree on a trainer, and,

5

had to turn to the FHCO to select one. *See* ECF No. 472 ¶¶ 9-11. Additionally, pursuant to the terms of the Final Order, there was a waiting period of one year following entry of the Final Order, to allow the County to evaluate its decision to sell the Social Services Site, which delayed Garden City's application to join the Consortium. On April 16, 2015, Garden City submitted an executed Cooperation Agreement to the Consortium in order to become a member. Ronneburger Dec. ¶ 26. In October 2015, six months after Garden City had asked to join the Consortium, the U.S. Department of Housing and Urban Development ("HUD") notified the County that Garden City had been accepted into the Consortium for the 2016-17 program year, not to begin until September 1, 2016. Brandriss Dec. ¶ 10.

On June 5, 2014, Garden City enacted a Fair Housing Resolution, which adopted a fair housing policy for Garden City as it relates to zoning and land use to assure equal opportunities and nondiscrimination in its zoning and other land use processes, ensuring (among other things) compliance with the Fair Housing Act ("FHA") and the Equal Protection Clause of the United States Constitution, and the interpretation of zoning and/or land use processes in a manner calculate to assure equal housing opportunities and nondiscrimination as required by law. Ronneburger Dec. ¶ 6. It was not until July 21, 2016, Garden City enacted Local Law 4–2016, which incorporated the Fair Housing Resolution, and which satisfied the Final Order's Affordable Housing requirements. Brandriss Dec. ¶17.

In the meantime, on May 5, 2014, Defendants appealed the final judgment on liability to the Second Circuit, but, did not contest the nature of the relief set forth in the Final Order. ECF No. 436. On May 16, 2014, Plaintiffs appealed the Court's dismissal of the County without raising any objection to the relief provided in the Final Order. ECF No. 446. On July 28, 2016, the Second Circuit affirmed, in part, and vacated, in part, the final judgment, and, remanded the

6

case for further proceedings. ECF No. 499. The Second Circuit affirmed Judge Spatt's decision that Plaintiffs had "more than established a prima facie case" of disparate impact discrimination under the FHA, however, remanded for consideration of whether Plaintiffs had proved that there were no less discriminatory means by which Garden City could have accomplished its zoning goals. *Id*. at 624-25. On remand, Judge Spatt found that Plaintiffs had done so. *MHANY Mgmt., Inc. v. Nassau*, No. 05-cv-2301 (ADS)(ARL), 2017 U.S. Dist. LEXIS 153214, 2017 WL 4174787, at *12 (E.D.N.Y. Sept. 19, 2017).

In February 2016, the FHCO filed a declaration seeking judicial intervention with respect to issues he felt required further attention by Garden City to implement the Final Order. ECF No. 473. Plaintiffs and Defendants both responded to the declaration of the FHCO. Defendants responded that while it would "fully participate in Consortium activities in good faith," the FHCO's requests, it believed, "far exceed[ed] anything required of the Village by the terms of the Judgment." Brandriss Dec., Ex. 48 at p. 4. Plaintiffs also responded to the FHCO's Declaration, joining in the FHCO's requests and urging the Court to go further than the FHCO's recommendations. Plaintiffs requested that the Village's four year requirement of Consortium membership under the Final Order begin running in September 2016, when Garden City's membership in the Consortium officially began (as opposed to the date of the Final Order itself), and that the Affordable Housing Requirement to be extended until four years after Garden City "properly implemented" the Affordable Housing Requirements set forth in the Final Order. ECF No. 479.

On June 17, 2016, Judge Spatt held a conference to address the issues raised by the FHCO. At that conference, Judge Spatt noted that certain of the requests were "unduly burdensome and unnecessary" and held that any relief sought regarding Garden City's good faith

7

participation in the Consortium was "premature and at this time unnecessary" because the Final Order required that Garden City participate in good faith "[o]nce admitted" as a member of the Consortium and since Garden City had not yet been admitted the Court was willing to give Garden City a chance to demonstrate its good faith before ordering any affirmative relief." Brandriss Dec., Ex. 8 at pp. 15, 18.  Judge Spatt ruled that "[t]o the extent that Garden City would fail to meet its obligation as a member of the Consortium the parties are free to bring their concern back to the court. *Id*. at 19.  With respect to Garden City's participation in the Consortium, however, Judge Spatt noted that in its earlier decision "the Court denied the plaintiffs' request requiring Garden City to use and participate in the programs offered by the consortium, reasoning that, 'these additional obligations of participation in Nassau County Consortium go far beyond the rulings in this case and are unnecessary to achieve the objectives set forth."[1]  *Id*. at 16.

With respect to the FHCO's various requests regarding the Affordable Housing Requirement—including "[a]ppointing needed task forces and individuals conducting relevant studies, drafting needed legislation, participating in appropriate meetings, establishing recommended procedures, and appropriating funds to complete needed studies or to hire consultants to develop needed regulations" the Court denied the FHCO's request, stating that Garden City had adopted a resolution tracking the language of the Final Order and it was required to do no more.  *Id*. at 15. Judge Spatt reiterated that "in considering the particular remedies for Garden City's violation of federal law, the Court explicitly rejected proposals by the

---

[1] In support of the FHCO's requested changes to the Final Order, Plaintiffs had argued that "by joining the Consortium the Village has already itself agreed to seek and accept federal housing funds. See Cooperation Agreement at 2 (stating that the Village will "participate in the [CDBG] . . . and the HOME Investment Partnership Program"). The Village's representation that it will "participate in various Consortium activities" (Response at 4) – which it must do in "good faith" – necessarily includes seeking grants through the CDBG and other federal housing programs and using any federal grants awarded to implement the programs proposed."  ECF No. 479 at 6.  This position was rejected by Judge Spatt.

8

plaintiffs which would have required Garden City to promote the building of affordable housing units." *Id*. at 22.

In addition, Judge Spatt noted that he had rejected Plaintiffs' earlier proposal that Defendants be required, among other things, "to conduct an annual survey of Garden City to identify publicly and privately owned sites that are viable for residential development, including new construction or rehabilitation projects" in favor of requiring Garden City to revise its zoning code to provide for affordable housing. According to Judge Spatt, Garden City represented that it was in the process of revising its zoning code to incorporate this requirement and the other incentives such as density bonuses that it is obligated by the judgment to offer developers and that was all that was required of Garden City under the Final Order. *Id*. at 22.

At the conference, Judge Spatt agreed with certain of the FHCO's recommendations and, (1) extended Garden City's obligation to provide annual fair housing training from April 22, 2018 to a point in time in which Garden City has conducted at least four compliance training sessions; (2) extended Garden City's obligation to join and participate in the Consortium from April 22, 2019 to September 1, 2020, four years after its membership in the Consortium commenced; (3) extended Garden City's obligation to require affordable housing from April 22, 2019 to four years after Garden City revises its zoning code to incorporate the affordable housing requirements of the judgment; (4) extended Garden City's obligation to expend reasonable sums of money to comply with the Final Order from April 22, 2019 to, "when the last of Garden City's duties and obligations under the judgment, except for the non-discrimination injunction, which has no time limit" expires; and (5) extended the appointment of Mr. LaPinta from April 22, 2018 to, "when the last of Garden City's duties and obligations under the judgment, except for the non-discrimination injunction which has no time limit." Brandeis Dec., Ex. 8 at 30-31.

9

Presently before the Court is Plaintiffs' motion to (1) enforce the Court's April 22, 2014 Final Order (2) compel Defendants to comply with the Court's Final Order and (3) direct that the duration of Defendants' obligations under certain sections of the Final Order be extended. In support of that motion, Plaintiffs have submitted a memorandum of law, along with a declaration of Chava Brandriss, counsel for Plaintiffs, attaching exhibits. In addition, along with their reply memorandum, Plaintiffs have submitted a declaration from Anthony LaPinta, the FHCO, dated February 24, 2021, ECF No. 652, as well as a declaration from Thomas Silverstein, counsel for Plaintiffs, dated March 26, 2021. Defendants have provided an opposing memorandum of law, a declaration of Robert A. Benrubi, the consultant hired by Garden City to assist with its participation in the Consortium, dated October 29, 2020 and a declaration Ariel E. Ronneburger, attorney for Defendants, attaching documents as well as a sur-reply memorandum addressed to the declarations submitted by Plaintiffs on reply along with sur-reply declarations by Benrubi and Ronneburger.

## DISCUSSION

Plaintiffs here have filed a motion to (1) enforce the Court's April 22, 2014 Final Order (2) compel Defendants to comply the Court's Final Order and (3) direct that the duration of Defendants' obligations under certain sections of the Final Order be extended. A motion to enforce is an appropriate procedural vehicle for parties to seek compliance with a court order. *See, e.g., Pena v. New York State Div. for Youth*, 708 F.2d 877 (2d Cir. 1983) (affirming where district granted motion to enforce and did not apply contempt standards); *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977) (same); *Vassell v. Reliance Sec. Group*, 328 F. Supp. 2d 454, 462 (S.D.N.Y. 2004) ("[The] motion is properly characterized as a motion to enforce the judgment

10

previously entered."); *Martens v. Smith Barney, Inc.,* No. 96 Civ. 3779, 2003 U.S. Dist. LEXIS 11587, at *10-12 (S.D.N.Y. July 9, 2003); *see also Universal Outdoor, Inc. v. City of New Rochelle,* 286 F. Supp. 2d 268, 273 (S.D.N.Y. 2003) (recognizing that parties seeking redress for violations of a court order can do so in ways other than a contempt action). "'Federal courts have broad discretion to fashion remedies as equity requires, to ensure compliance with their orders.'" *Abdi v. McAleenan,* No. 17 Civ. 721, 2019 U.S. Dist. LEXIS 72762, 2019 WL 1915306, at *2 (W.D.N.Y. Apr. 30, 2019) (quoting *Cordius Tr. v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009)); *see also Nat'l Law Ctr. on Homelessness & Poverty v. US. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) ("[W]hen it comes to a court's enforcement and monitoring of its own orders, the court is the judge and jury.").

### I. Enforcing the Judgment and Compelling Good Faith Participation in the Consortium

Plaintiffs argue that Defendants have failed to comply with the Final Order by failing to participate in the Consortium in good faith, which includes failing to affirmatively further fair housing by failing to fulfil its obligations under the Cooperation Agreement, failing to use federal funds allocated to Consortium members and refusing to accept recommendations of the FHCO. Pl. Mem. at 30-42. Each of the contentions have been contested by Defendants. Def. Mem. at 28-42. As discussed below, Plaintiffs support for each of its arguments that Defendants have failed to comply with the Final Order boils down to nothing more than an attempt to require Defendants to undertake certain activities, such as compiling a list of properties available for affordable housing within Garden City and applying for federal funding, which Plaintiffs proposed in 2014 and which Judge Spatt expressly declined to include in the Final Order and which the FHCO requested again in 2016 and were once again rejected by Judge Spatt. Plaintiffs' efforts to revisit the relief provided in the Final Order should be rejected. To recast their argument, Plaintiffs respond by asserting that Defendants "seem to imply, that undertaking such activities could not help fulfill Garden City's

obligation to participate in the Consortium in good faith." Pl. Reply at 5. Plaintiffs seek to impose new obligations upon Garden City by implying that such actions are necessary to demonstrate good faith despite the fact that Judge Spatt rejected the very same proposals at the time the Final Order was entered. The failure to undertake such actions, standing alone is insufficient to demonstrate a lack of good faith.

### A. Failure to Affirmatively Further Fair Housing

According to Plaintiffs, "Garden City's failure to affirmatively further fair housing is both procedural and substantive. For example, the Consortium requires its members to prepare and submit an annual FHAS." Pl. Mem. at 31. From a procedural perspective, Plaintiffs argue that Garden City "has totally disregarded the Consortium's procedural requirements for compliance with the duty to affirmatively further fair housing by not even filling out the required yearly form more than once." *Id*. at 32. Defendants counter that "[c]ontrary to Plaintiffs' misrepresentations, there is no annual requirement to submit a FHAS to the Consortium. Rather, as detailed in the 2019 Nassau County Urban Consortium Fiscal Year 2019 Annual Action Plan, a member municipality must complete an FHAS detailing the actions each Consortium member will take to affirmatively further fair housing, and progress reports must be submitted on a yearly basis detailing actions taken by the member municipality." *See* Def. Mem. at 28, citing Brandriss Dec., Ex 19, at p. 63. Garden City has provided the Court with copies of the Progress Reports submitted in 2018, 2019, and 2020. *See* Ronneburger Dec., Exs. I, J, and K. Thus, Defendants have not "procedurally" failed to further fair housing.

Substantively, Plaintiffs argue that "the Second Circuit has held that the duty to affirmatively further fair housing requires that '[a]ction must be taken to fulfill, as much as possible, the goal of open, integrated residential housing patterns and to prevent the increase of segregation.' *Otero v. New York City Hous. Auth.*, 484 F.2d 1122, 1136 (2d Cir. 1973)." However, Defendants point out that in 2020 HUD enacted a Rule defining "affirmatively further" as "any action rationally related to

promoting any attribute or attributes of fair housing", defining fair housing as "housing that, among other attributes, is affordable, safe, decent, free of unlawful discrimination and accessible as required under civil rights laws." 24 C.F.R. § 5.150.  Def. Mem. at 55.  Defendants argue that under either definition they have satisfied their obligation to participate in the Consortium in good faith.  *Id*.  Defendants point to the approval of the site plan for 555 Stewart Avenue, which when built, will incorporate affordable housing into Garden City, the passage of the Garden City Affordable Housing Law which, according to Defendants, exceeds the requirements of the Final Order and state law requirements and incorporates the Affordable Housing Requirements into the Village Code, and its submission of the required FHAS in 2017, which detailed Garden City's inclusionary zoning law and set forth Garden City's commitment to working with developers of multi-family housing for the development of affordable housing in compliance with that law.  In addition, Defendants assert that they hired Robert Benrubi, the former Executive Director of the Nassau County Office of Urban Development (whose responsibilities included program establishment as to assist the Consortium and to develop affordable housing), in August 2016 as a consultant to assist Garden City "in its Consortium membership and perform other duties, as necessary, to support the Village in its efforts to comply with the Judgment." ECF No. 551, at ¶ 16.

Plaintiffs reject each of these actions as insufficient, complaining that Defendants cannot rely on actions taken which also satisfy other portions of the Final Order, and suggest "[a]mong other things, a municipality could use its own general revenue from tax proceeds to fund affordable housing development; it could create a dedicated fee or tax with proceeds going to affordable housing; or it could donate publicly owned land to a nonprofit affordable housing developer to build affordable housing assisted by non-Consortium-administered subsidies, such as Low Income Housing Tax Credits." Pl. Mem. at 33.  However, according to Judge Spatt "there is no constitutional or statutory right for individual citizens to have housing comply with a particular

13

standard, nor is there a concomitant duty on the part of political entities to provide housing." *Mhany Mgmt.,* 4 F. Supp. 3d at 555. Judge Spatt refused to order Defendants to undertake building or promoting affordable housing. Brandriss Dec., Ex. 8, at p. 22.

In addition, Plaintiffs argue that "[a] municipality acting in good faith would typically compile an inventory of possible sites, both privately and municipally owned, including sites not traditionally thought of as sites for residential development, and assess the appropriateness of those sites for an affordable housing development." Pl. Mem. at 33. Judge Spatt rejected Plaintiffs' proposal of this obligation on Garden City not once, but twice. *See Mhany Mgmt.,* 4 F. Supp. 3d at 559; Brandriss Dec., Ex. 8, at p. 22. Indeed, in discussing the FHCO's requests regarding the Affordable Housing Requirement, including the identification of sites for affordable housing Judge Spatt opined that imposing such an obligation went "beyond what the final judgment requires and are akin to affordable housing requirements that the Court [had] already rejected." *Id*. at 23.

Thus, the only two specific objections Plaintiffs have lodged with respect to Defendants good faith participation in the Consortium are nothing more than a rehash of previously suggested, and rejected, components of the Final Order.

**B.     Failing to Make Use of Federal Funds**

Plaintiffs' repeated suggestion that Defendants have failed to participate in the Consortium in good faith because Defendants have failed to apply for funding as a Consortium member must be rejected. Plaintiffs have proposed funding obligations before, and they have been rejected outright by Judge Spatt. *See, e.g.*, *Mhany Mgmt.,* 4 F. Supp. 3d at 558-59; Brandriss Dec., Ex. 8 at 16 (Judge Spatt noted that in its earlier decision "the Court denied the plaintiffs' request requiring Garden City to use and participate in the programs offered by the consortium, reasoning that, 'these additional obligations of participation in Nassau County Consortium go far beyond the rulings in this

14

case and are unnecessary to achieve the objectives set forth"). Having failed to convince Judge Spatt that a mandate to apply for funding should be included in the Final Order, Plaintiffs now, through a back door argument, seek to impose this very obligation on Defendants arguing that this is required to demonstrate good faith. This argument fails.

Despite Plaintiffs argument to the contrary, Defendants have demonstrated that Garden City would not be eligible for either HOME or CDBG funding. In a letter dated October 3, 2016, the FHCO "recognize[d] that a village without any significant low and moderate income areas or households is not competitive for significant funding through the Consortium." Brandriss Dec, Ex. 10. Moreover, in accordance with the FHCO and Professor Nolon's request for a memorandum from Mr. Benrubi regarding CDBG funds, such a memorandum was provided to the FHCO by the Village's counsel on February 28, 2018.[2] Ronneburger Dec, Ex. T. This memorandum detailed the affordable housing activities which can be funded using CDBG funds and discussed how the demographics of the Village make it problematic for it to obtain such funds. *See id.*

However, even if such funds could be available to Garden City, the undersigned cannot recommend requiring Defendants to apply for such funds given that this step was clearly excluded from the Final Order.

### C. Failure to Accept Recommendations of the FHCO

With respect to Plaintiffs' claim that Defendants have failed to accept any recommendations of the FHCO, Defendants point out that while Garden City did not accept all of the FHCO's recommendations, it did "undertake several the FHCO's requests, including repeated analyses discussing funding options, appointing a Village representative to the Consortium, and creating an information packet on available funding for developers of affordable housing." Def. Mem. at 40.

---

[2] Plaintiffs claim that to their "knowledge, Mr.Benrubi never delivered such a memorandum to the FHCO." Pl. Mem. at 20.

Additionally, Defendants noted that the FHCO had requested the public dissemination of information on the Final Order on Garden City's website, including a summary of this litigation, a copy of the Final Order, a copy of the Fair Housing Resolution, an explanation of the role of FHCO, and how to contact the FHCO regarding fair housing matters. To comply with this request, Garden City added a "Fair Housing" tab on its website, at which the bulk of the information suggested by the FHCO can be found. Def. Mem. at 19-20. Defendants also agreed to the hiring of Professor Nolan to assist the FHCO, at the FHCO's suggestion. Ronneburger Dec., ¶ 39.

Plaintiffs do not refute Defendants' position in their reply, but rather repeat their assertion that Defendants have failed to fulfill their obligations by failing to compile an inventory of available properties and apply for federal funding for affordable housing projects. Pl. Reply Mem. at 2-8. As discussed above, Defendants had no obligation to undertake either of these projects, and their failure to do so does not amount to a lack of good faith.

In light of the foregoing, the undersigned respectfully recommends that Plaintiffs' motion to enforce the judgment and compel Defendants' compliance be denied.

## II. Extension of the Duration of the Affordable Housing Requirement

Plaintiffs ask the Court to extend the Affordable Housing Requirements of the Final Order until Defendants "demonstrate to the Court with admissible evidence that residents have actually begun to live in the Affordable Housing units constructed as a result of the Judgment." Pl. Mem. at 44. Plaintiffs also ask the Court to extend Garden City's obligations to fund the relief required by the Judgment (Judgment X); maintain a FHCO (Judgment XI.A); retain and preserve records relating to Judgment compliance (Judgment XI.B); and file annual compliance reports (Judgment XI.C). Pl. Mem. at 44-45. In response, Defendants contend that "[t]here is no basis to require the Village to operate for some indefinite, and completely unpredictable period of time under amended requirements of a Judgment it has already complied with fully." Def. Mem. at 44.

16

In support of their position that an extension is necessary, Plaintiffs argue that the compliance timeline for Affordable Housing does not accurately reflect the amount of time residential development projects take to complete as evidenced by the lengthy delays associated with two projects proposed in Garden City.[3]  Pl. Mem. at 44.  Defendants argue that any delay in the completion of those projects is outside of Garden City's control and that "the Village should not be held to comply with a Judgment indefinitely until the occurrence of events over which it has not control."  Def. Mem at 44.  In his initial decision, Judge Spatt held that "Garden City shall also be required, as described herein, to (1) join the Nassau County Urban Consortium and (2) enforce certain affordable housing requirements for new developers in Garden City. The duties and obligations imposed by this conditional relief shall expire within five years from the date of the judgment."  It is important to keep in mind that these obligations were imposed upon Garden City to remedy discriminatory zoning changes on the Social Service Site which could not be remedied by rezoning the site because the site was no longer for sale. *Mhany Mgmt.*, 4 F. Supp. 3d. at 558 ("The Court will next address the two conditional measures of affirmative injunctive relief with which Garden City must comply in the event the Nassau County does not announce for sale the Social Services Site for residential development within one year of the date of the judgment. Participation in the Nassau County Urban Consortium [and] Construction of Affordable Housing"). In his decision, Judge Spatt carefully crafted the applicable time periods for these conditional measures and did not require Defendants to comply with these conditional measures without time restriction, as he did for other portions of the Final Order.

At the conference in June 2016, Judge Spatt extended those deadlines as follows:  Garden City's obligation to join the Consortium was extended from April 22, 2019 to September 1, 2020,

---

[3] Plaintiffs also contend that the impact of Covid-19, resulting in record high unemployment and reduced wages for low income individuals should also be considered by the Court.  Pl. Mem at 44.  However, as noted by Defendants, this does not provide a justification for extending the terms of the Final Order, which must be predicated on the conduct of Defendants, rather than a societal need for affordable housing.

17

four years after its membership in the Consortium commenced and extended Garden City's obligation to require affordable housing from April 22, 2019 to four years after Garden City revises its zoning code to incorporate the affordable housing requirements of the judgment.[4] Brandriss Dec., Ex. 8, at p. 30-31. Garden City joined the Consortium on September 2016, and therefore, its obligation to participate in the Consortium, as required by the Final Order terminated on September 1, 2020. Additionally, on July 21, 2016, Garden City enacted Local Law 4–2016, which incorporated the Fair Housing Resolution, and which satisfied the Final Order's Affordable Housing requirements. Brandriss Dec. ¶17. Thus, at the very latest, Defendants' obligation with respect to this requirement of the Final Order was satisfied in February 2020.

At the June 2016 conference, Judge Spatt opined that certain of the extension requests made by the FHCO were warranted because "it is undisputed that there have been delays in implementation of some of Garden City's obligations." Brandriss Dec., Ex. 8, at p. 29-30. Here, however, Plaintiffs have not identified any delays in implementation but rather argue that the deadlines should be extended because people have not yet begun to live in affordable housing within the Garden City. Pl. Mem. at 44. Judge Spatt set the specific deadlines discussed above in the Final Order, as amended at the June 2016 Conference, following an eleven-day bench trial challenging allegedly discriminatory zoning actions in relation to a specific parcel. Judge Spatt did not condition Defendants' satisfaction of these requirements upon "when residents have actually begun to live in the Affordable Housing units constructed as a result of the Judgment," as

---

[4] At the June 2016 conference Judge Spatt also extended the time for Defendants to provide training. Plaintiffs do not seek an extension of this time period, nor could they as Defendants have demonstrated that this obligation has been fulfilled. See Ronneburger Dec. ¶ 12 ("Pursuant to the terms of the Judgment, as extended by Judge Spatt in 2016, annual training sessions were held on or about June 18, 2015, July 9, 2015, July 27, 2016, August 24, 2016, September 21, 2016, June 6, 2017, June 27, 2017, June 12, 2018, and June 26, 2019").

suggested by Plaintiffs. Rather, Judge Spatt set the deadlines upon Garden City's completion of specifically identified tasks. The deadlines Plaintiffs presently seek to extend relate to requirements set forth in the Final Order which Garden City has fulfilled. Plaintiffs have offered no actions left unfulfilled by Garden City which would warrant the extension of those deadlines. Indeed, Plaintiffs' extension request seeks to alter the relief provided by the Final Order rather than simply extending the deadline.[5] Accordingly, the undersigned respectfully recommends that Plaintiffs' request for an extension be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
February 22, 2022

                                                                                 /s/
                                                ARLENE R. LINDSAY
                                                United States Magistrate Judge

---

[5] In his decision setting forth the parameters of the Final Order, Judge Spatt rejected Plaintiffs' proposal that Garden City be required to ensure that affordable housing be developed within five years. *Mhany Mgmt.,* 4 F. Supp. 3d at 559.